UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF INDIANA ex rel. Thomas P. Fischer, | ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| v. | ) ) No. 1:14-cv-01215-RLY-DLP |
| COMMUNITY HEALTH NETWORK, INC., *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER

This matter comes before the Court on Plaintiff-Relator's Motion for Leave to
File Second Amended Complaint, Dkt. [108]. On March 17, 2020, Defendant
Community Health Network, Inc.[1] filed a response in opposition. (Dkt. 115). On
March 24, 2020, the United States of America and the State of Indiana filed
Statements of Interest. (Dkts. 120, 121). On March 31, 2020, Plaintiff-Relator filed a
reply in support of the Motion for Leave to Amend. (Dkt. 47). On April 14, 2020,
with this Court's permission, Community Health Network filed a sur-reply in
opposition to Plaintiff-Relator's request for leave. (Dkt. 129). The Motion is now
fully briefed and ripe for decision. For the reasons discussed below, Plaintiff-
Relator's Motion is **GRANTED**.

---

[1] Community Health Network, Inc. is the only Defendant that has been served with a Complaint and
entered counsel appearances in this matter.

# I.   BACKGROUND

In October 2015, Community Health Network, Inc. ("CHN") recruited Plaintiff-Relator Thomas P. Fischer ("Relator") from his private practice to serve as CHN's Chief Financial Officer. (Dkt. 1 at 6). CHN is a non-profit health system located in Indianapolis, Indiana which includes hospitals, surgery centers, urgent care centers, and patient facilities. (Id. at 7). CHN employs over 350 physicians through subsidiaries and affiliates, primarily through its subsidiary Community Physician Network ("CPN"). (Id.).

In December 2012, CHN promoted Relator to serve as its Chief Operating Officer and Chief Financial Officer. (Id. at 6-7). In this dual role, Relator became aware of significant, unexpected monetary losses at CPN. (Id. at 45). As a result, he began asking CPN management for explanations regarding the losses and expressed concern that he believed the losses were directly tied to CHN paying physicians "commercially unreasonable rates." (Id. at 46). Starting in July 2013, Relator began requesting financial information regarding Visionary Enterprises, Inc. ("VEI")[2] surgery centers and continued expressing concern about excessive physician compensation to a number of individuals, including CHN senior management. (Id. at 47). On November 27, 2013, CHN terminated Relator from his positions. (Id. at 48).

On July 21, 2014, Relator, on behalf of the United States of America (the

---

[2] VEI is a for-profit subsidiary of CHN which acquires and manages ambulatory surgical centers on behalf of CHN. (Dkt. 1 at 8). Ownership in many of the surgical centers is shared with CPN physicians. (Id)

"Government") and the State of Indiana (the "State"), initiated this *qui tam* lawsuit pursuant to the False Claims Act ("FCA")[3] against Defendants Community Health Network, Inc., Community Health Network Foundation Inc., Community Physicians of Indiana, Inc., VEI, Community Surgery Center-North, Community Surgery Center-South, Community Surgery Center-East, Community Surgery Center-Hamilton, Community Surgery Center-Kokomo, Community Surgery Center-Northwest, Hancock Surgery Center, Community Endoscopy Center, and Community Digestive Center (collectively, the "Community Defendants"). (Id. at 2). The original Complaint consists of two main parts.

First, Relator alleged that the Community Defendants knowingly defrauded the Government and State by engaging in a fraudulent scheme to pay physicians improper and excessive compensation to ensure that they referred patients, including Medicare and Medicaid patients, to CHN. (Id. at 4, 31-39). This fraudulent scheme, Relator alleged, violates the Stark Law,[4] the Anti-Kickback Statute,[5] and the FCA. (Id. at 25). Specifically, Relator asserted that Defendants paid kickbacks and illegal remunerations to induce physicians to refer patients to CHN, (Id. at 25), solicited and received kickbacks from Indianapolis nursing home

---

[3] The FCA prohibits, among other acts, presenting to the government "a false or fraudulent claim for payment or approval." *U.S. v. UCB, Inc.*, 970 F.3d 835, 840-41 (7th Cir. 2020) (citing 31 U.S.C. § 3729(a)(1)(A)). The Indiana FCA prohibits the same conduct. Ind. Code § 5-11-5.7-2.
[4] The Stark Law is a wide-ranging federal statute that prohibits a physician who has a "financial relationship" (including compensation and ownership interests) with an entity from referring patients to the entity for "designated health services" covered by Medicare unless an exception is available. 42 U.S.C. § 1395nn.
[5] The Medicare and Medicaid Fraud and Abuse Statute, or the Anti-Kickback Statute, prohibits knowingly and willfully making any false statement or representation of a material fact in any application for any benefit or payment under a federal health care program. 42 U.S.C. § 1320a-7b.

facilities in exchange for patient referrals, (Id. at 25-26), ensured the profitability of ambulatory surgical centers in which its physicians had ownership interests, (Id. at 29, 39), and provided lucrative medical directorships to referring physicians. (Id. at 43). Relator alleged that all claims submitted to Medicare, Medicaid, or a government funded healthcare program for services rendered pursuant to a referral from a physician who was paid an illegal remuneration are false claims that violate the FCA and Indiana FCA. (Id. at 4, 25-26).

Second, Relator alleged that CHN retaliated against him in violation of the applicable FCA and Indiana FCA anti-retaliation provisions. Relator alleged that he was discharged in retaliation for expressing concern to CHN leadership that operating losses and budget variances were a direct result of illegal activities related to physician compensation, referral patterns, and business practices. (Id. at 7, 46, 49). Relator's original complaint alleged eight counts for: (1) FCA violations; (2) Indiana FCA violations; (3) retaliation under the FCA; (4) retaliation under the Indiana FCA; (5) breach of contract; (6) breach of oral contract; (7) promissory estoppel; and (8) quantum meruit. (Id. at 51-58).

As required by the FCA statutory provisions, Relator filed the original Complaint under seal. *See* 31 U.S.C. § 3730(b)(2). The original Complaint remained under seal while the Government and State investigated Relator's allegations to determine the appropriateness of intervention. On October 15, 2015, Relator filed a First Amended Complaint under seal. (Dkt. 32).

Relator's allegations in the original Complaint and the First Amended Complaint are nearly identical, except that Relator provided greater factual detail regarding nursing home kickbacks in exchange for patient referrals, (*see* Dkt. 32 at 50-51), and added a ninth count for blacklisting asserting that CHN knowingly provided false information to Relator's prospective employers after his termination. (*See* Dkt. 32 at 59-60, 63-64, 68-69).

On August 7, 2019, the Government filed a Notice of Election to Intervene in Part and Decline to Intervene in Part. (Dkt. 86). The Government opted to intervene "in that part of the action which alleged that [D]efendant Community Health Network, Inc. violated the FCA by submitting claims to Medicare that were referred by physicians with whom [it] had employment relationships that violated the Stark Law." (Dkt. 86 at 1). The Government declined to intervene with respect to the remaining allegations and requested that this Court unseal the Complaint. (Id). In its Notice, the Government did not explicitly indicate whether its decision to intervene was based on the original Complaint or the First Amended Complaint, but a subsequently filed Statement by the Government refers to the First Amended Complaint as the operative Complaint in this matter.[6] The Court agrees.

On December 23, 2019, this Court granted the Government's request to unseal the Complaint and ordered that it serve its own complaint on Defendant CHN within 120 days. (Dkt. 93 at 1). This Court further ordered that the seal be

---

[6] On March 24, 2020, the Government filed a Statement of Interest Regarding Relator's Standing to Pursue Non-Intervened Claims. (Dkt. 120). The Government requested that this Court unseal Relator's First Amended Complaint, as it is the operative Complaint in this matter. (Id. at 9). The Court unsealed the First Amended Complaint on November 24, 2020. (Dkt. 132).

lifted on all matters occurring in the action after the date of the order. (Id. at 2). That same date, December 23, 2019, this Court granted the State's Notice of Election to Decline Intervention. (Dkt. 94).[7] On January 6, 2020, the Government filed its Complaint in Intervention. (Dkt. 96).

The Government's Complaint in Intervention focuses on false claims arising from the performance of health services by physicians with compensation arrangements with CHN that exceeded fair market value or considered the volume or value of their referrals to CHN, thereby violating the Stark Law. (Id. at 3). These physicians allegedly referred patients to CHN for health services, and, in turn, CHN submitted these false claims to Medicare knowing that they were not eligible for payment, in violation of the FCA. (Id. at 3-4).

On March 3, 2020, Relator filed the present Motion for Leave to File Second Amended Complaint. (Dkt. 108). Initially, Relator asserted that an amendment to its First Amended Complaint was necessary to address issues raised by the Government in its Complaint in Intervention and add new claims and Defendants based on evidence developed over the course of the Government's four-year investigation. (Id. at 2). On March 17, 2020, CHN filed a response in opposition, arguing that the Court should deny the Relator's request for leave to amend the complaint. (Dkt. 115). On March 24, 2020, the Government and the State each filed a Statement of Interest. (Dkts. 120, 121). On March 31, 2020, Relator filed a reply, in which he does not argue that the amendment adds claims, but asserts that the

---

[7] The State filed its Notice of Election to Decline Intervention on December 5, 2019. (Dkt. 92).

amendment adds a new Defendant, renames Defendants, and adds evidence and details to the fraudulent scheme outlined in the First Amended Complaint. (Dkt. 124 at 2). On April 14, 2020, with this Court's permission, CHN filed a sur-reply in opposition to Relator's request for leave to amend. (Dkt. 129).

CHN opposes Relator's Motion for Leave to Amend for two main reasons: (1) the proposed amendments are futile; and (2) the Relator unduly delayed in filing the proposed second amended complaint. (Dkt. 115 at 2-3).

## II.   LEGAL STANDARD

After the opportunity to amend the pleadings as a matter of course has passed, a party may amend a complaint only with the consent of the opposing party or leave of the court. Fed. R. Civ. P. 15(a). Leave to amend should be "freely given when justice so requires" absent considerations such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

An amendment is futile if the amended pleading would not survive a motion to dismiss. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014). To survive a motion to dismiss, the amended complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 685 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Before denying a motion to amend, however, it should be "clear" that the proposed amended

7

complaint "is deficient" and would not survive such a motion. *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519-20 (7th Cir. 2015) ("Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend.") (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)).

For undue delay, courts look to the similarity of the factual basis for the claims in the original complaint to the new claims raised in the amended complaint, the moving party's explanation for waiting to raise the new claims, whether the moving party is attempting to introduce a new theory of the case, and whether granting the motion to amend will require new or duplicated discovery efforts. *See Marshall v. Town of Merrillville*, 262 F. Supp. 3d 733, 738 (N.D. Ind. 2017); *see also Bethany Pharmacal Co.*, 241 F.3d at 861 (7th Cir. 2001). Typically, "delay by itself is normally an insufficient reason to deny a motion for leave to amend" and "must be coupled with some other reason." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004) (citations omitted).

The party seeking to amend has the burden of showing that undue prejudice will not result to the non-moving party. *McDaniel v. Loyola Univ. Med. Ctr.*, 317 F.R.D. 72, 77 (N.D. Ill. 2016). "Ultimately, 'the decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court.'" *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 720 (7th Cir. 2002).

## III.   DISCUSSION

## A.  Futility of the Proposed Second Amended Complaint

CHN argues that Relator's request to amend should be denied on futility grounds. (Dkt. 115 at 2). Specifically, CHN asserts that Relator's proposed second amended complaint should be denied as futile because: (1) the Government's Complaint in Intervention supersedes Relator's pleadings and is considered the operative complaint in this matter; (2) the FCA claims are barred by the applicable statute of limitations; and (3) the claims are foreclosed by the FCA's "original source" requirement. (Id).

### i.     Intervention in Part

First, CHN argues that the claims in Relator's proposed second amended complaint are futile because the Government has intervened in this matter. (Dkt. 115 at 13). As such, the Government's Complaint in Intervention "supersedes the Relator's pleadings" and serves as the operative complaint. (Id. at 16). Accordingly, Relator has no right to conduct this action and any pleading filed by him has no legal effect. (Id. at 19-20).[8] In reply, Relator contends that because the Government elected to intervene in part and the State of Indiana declined to intervene at all, Relator has standing to litigate non-intervened claims. (Dkt. 124 at 16).

---

[8] CHN points out that the Relator's "disregard for the Government's commanding role in *qui tam* actions is highlighted by his public filing of the proposed second amended complaint in violation of the FCA's sealing requirement." (Dkt. 115 at 3). The Court notes that a violation of the FCA seal provision does not mandate dismissal of a relator's complaint, *see State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 442 (2016), and declines to deny leave to amend on this basis.

The FCA allows private persons, or relators, to prosecute *qui tam* actions "against alleged fraudsters on behalf of the United States government." *U.S. ex rel. Berkowitz v. Automation Aids, Inc*., 896 F.3d 834, 840 (7th Cir. 2018) (citing *U.S. ex rel. Watson v. King-Vassel*, 728 F.3d 707, 711 (7th Cir. 2013); 31 U.S.C. § 3730. As such, 31 U.S.C. § 3730(b)(1) requires that a *qui tam* action under the FCA must be filed "in the name of the Government." 31 U.S.C. § 3730(b)(1). "Before 1986, if the government intervened in the action, the relator's participation was at an end." *U.S. v. UCB, Inc*., 970 F.3d 835, 841 (7th Cir. 2020). "In 1986, however, Congress amended the FCA to allow for the relator's continued participation even after the government intervenes." *Id*. Thus, as it stands, "§ 3730(b)(4)(B) gives the relator 'the right to conduct the action' – without qualification – when the government has declined to intervene." *Id*. at 845. "If the Government proceeds with the action," it assumes "primary responsibility" for prosecuting it. 31 U.S.C. § 3730(c). Relator still retains "the right to continue as a party to the action." *Id*.

Here, CHN argues that the word "action" in 31 U.S.C. § 3730(c) refers to the entire *qui tam* lawsuit. (Dkt. 115 at 14). Thus, even when the Government intervenes in part, Relator cannot pursue any claims, including non-intervened claims. (Id. at 17). In support, CHN relies on one sole case from outside this Circuit, *U.S. ex rel. Brooks v. Stevens-Henager Coll., Inc*., 359 F. Supp. 3d 1088, 1095 (D. Utah 2019), which held that relators are not permitted to litigate non-intervened claims. The Court disagrees.

The Court finds in this case that the Relator is permitted to litigate non-intervened claims notwithstanding the Government's partial intervention and the State's non-intervention. *See Carnithan v. Cmty. Health Sys., Inc.*, No. 11-CV-312-NJR-DGW, 2015 WL 9258595, at *1 (S.D. Ill. Dec. 18, 2015); *see also U.S. ex rel. Trombetta v. EMSCO Billing Servs., Inc.*, No. 96 C 226, 2002 WL 34543515, at *1 (N.D. Ill. Dec. 5, 2002). This interpretation aligns with the FCA mandate vesting the government with the primary responsibility for prosecuting the action but allowing relator to continue as a party and not directing relator to abandon individual claims simply because the government intervenes in part. *See* 31 U.S.C. § 3730 ([i]f the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action); Ind. Code § 5-11-5.7-4(e) (if attorney general or inspector elects not to proceed with the action . . . the person who initially filed the complaint may proceed with the action).

"Courts regularly allow relators to pursue their separate claims after the government's intervention." *U.S. ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1075 (N.D. Cal. 2020) (citing *U.S. ex rel. Ketroser v. Mayo Found.*, 729 F.3d 825, 826 (8th Cir. 2013) (relator filed an FCA case, government intervened in part and settled intervened claim, and relator filed an amended complaint asserting additional claims against defendant); *U.S. ex rel. Fallon v. Accudyne Corp.*, 97 F.3d 937, 938 (7th Cir. 1996) ("Attorney General took over the prosecution of Count I . . . but left Count II in the hands of the relators.").

Moreover, CHN's argument, that permitting the Relator to litigate his FCA allegations "while the Government simultaneously prosecutes its own FCA action" is prejudicial to CHN, is similarly overruled. (Dkt. 115 at 21). CHN is aware of the various claims being alleged, regardless of which party litigates those claims. *See Carnithan*, 2015 WL 9258595, at *3. No initial pretrial conference has occurred, discovery has not yet commenced, and this case is in its infancy; thus, even if the Court were to conclude that prejudice may occur (which it does not), that prejudice is mitigated by the early stage of the lawsuit and ability to rectify any logistical issues. The Court declines to deny leave to amend on this basis.

### ii.  Statute of Limitations

Next, CHN argues that the new allegations contained in Relator's proposed second amended complaint are time barred by the FCA's six-year statute of limitations. (Dkt. 115 at 11). Specifically, because Relator filed his original Complaint on July 21, 2014 and filed his proposed second amended complaint on March 3, 2020, any new FCA claims within the second amended complaint fall outside the six-year statute of limitations. (Id. at 10-11). Further, CHN argues that it "appears that Relator's new FCA claims are being brought more than three years after the Government learned of, or was in a position to learn of, the claims as a result of its investigation." (Id).

In response, Relator contends that the FCA provides a ten-year statute of limitations. (Dkt. 124 at 11). Thus, because the second amended complaint alleges ongoing FCA violations beginning in 2009, the applicable statute of limitations does

not bar the claims. (Id. at 11-12). Even if the statute of limitations barred some or all claims, Relator argues, a response to a motion to amend is not the proper avenue to address an affirmative defense. (Id. at 12).

The FCA statute of limitations provides:

. . .

(b) A civil action under section 3730 may not be brought –

(1) more than 6 years after the date on which the violation of section 3729 is committed, or

(2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

. . .

31 U.S.C. § 3731. Under Federal Rule of Civil Procedure 8(c)(1), a statute of limitations argument is an affirmative defense, not an attack against the sufficiency of the pleadings. *U.S. ex rel. McGee v. IBM Corp.*, 81 F. Supp. 3d 643, 656 (N.D. Ill. 2015); Fed. R. Civ. P. 8(c)(1).

Here, Relator filed the original Complaint on July 21, 2014 – approximately five years after CHN's allegedly fraudulent scheme began, (Dkt. 1), and filed a First Amended Complaint, which included nearly identical allegations, on October 15, 2015. (Dkt. 32). Relator's proposed second amended complaint asserts that beginning in 2009, CHN "began a systematic, corporate-wide campaign to increase the number of both its employed and affiliated physicians and physician practice

13

groups to increase market share in the Indianapolis region" by "steer[ing] high-margin business to surgery centers owned (or partially owned) by its employed physicians" and sending referrals to nursing home providers in exchange for money. (Dkt. 108-1 at 21-22). The proposed second amended complaint does not add new claims, but provides additional factual detail to the central allegations involving improper compensation paid to physicians that were detailed in the original Complaint and First Amended Complaint. The second amended complaint also clarifies the business names of certain Defendants, for example, by amending "Community Surgery Center North" to "North Campus Surgery Center, LLC d/b/a Community Surgery Center North." (Dkt. 108-1 at 1). Finally, the proposed second amended complaint adds North Campus Office Associates, L.P. as a Defendant. (Id).

A motion to amend is an "ill-suited vehicle for determining statute of limitations and relation back issues." *Miller v. Panther II Transportation, Inc.*, No. 1:17-cv-04149-JMS-TAB, 2018 WL 3328135, at *7 (S.D. Ind. July 6, 2018); *cf. U.S. ex rel. McGee*, 81 F. Supp. 3d at 656 (declining to decide that FCA claims were barred by the statute of limitations on motion to dismiss). The proposed second amended complaint does not assert new claims, and, when accepted as true, Relator's factual allegations provide the Court with sufficient information to plausibly determine that the lawsuit falls within the applicable ten-year statute of limitations. It is not plain from the face of Relator's proposed second amended complaint that this litigation is time-barred, and the Court declines to conclude as

such. *See Runnion,* 786 F.3d at 519-20.  Instead, CHN will have an opportunity to assert the statute of limitations as an affirmative defense should it choose to do so.

### iii.   Original Source

Next, CHN argues that Relator's new claims are barred by the FCA's "original source" requirement. (Dkt. 115 at 11).  CHN argues that because the new allegations in Relator's proposed second amended complaint are based on information developed after Relator left CHN, the new claims in the proposed second amended complaint are futile because Relator is not the original source of the information. (Dkt. 115 at 12).

In reply, Relator argues that the FCA does not have an "original source" rule. (Dkt. 124 at 13).  Instead, the FCA has a "public disclosure" rule which "includes a savings provision if the relator is an "original source." (Id).  As such, Relator contends, because no public disclosure was made in this matter, the original source inquiry is inapplicable. (Dkt. 124 at 13-14).

CHN filed a sur-reply, arguing that Relator cannot be an "original source' for allegations that are "grounded in information discovered after he left his employment. (Dkt. 129 at 6).  Moreover, CHN argues, a public disclosure occurred in this case when the Government informed CHN of its active investigation into CHN's physician compensation, patient referrals, and related business practices. (Id. at 8).

CHN's argument is a jurisdictional challenge to Relator's proposed second amended complaint. The FCA generally bars *qui tam* actions that are based on

information already in the public domain. *U.S. ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc.*, 806 F.3d 946, 951 (7th Cir. 2015) (language of FCA "clearly withdraws jurisdiction over *qui tam* actions that are based on publicly disclosed information unless the relator is an "original source" of the information"); *see Rockwell Int'l Corp. v. U.S.*, 549 U.S. 457, 468 (2007); *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009). "The point of the jurisdictional bar is to 'deter parasitic qui tam actions.' " *U.S. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 728 (7th Cir. 2006). Once information is public, "only the Attorney General and a relator who is an 'original source' of the information may represent the United States." *Id.* (quoting *U.S. ex rel. Fallon*, 97 F.3d at 941.

In order to determine whether a *qui tam* claim falls within the public-disclosure bar, the Court must assess three questions: (1) whether the relator's allegations have been publicly disclosed; (2) if so, whether the lawsuit is "based upon" those publicly disclosed allegations; and (3) if it is, whether the relator was the original source of the information. *Glaser*, 570 F.3d at 913. But a relator can still proceed if he brought to bear some "genuinely new" and "material" information beyond what was public. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 281 (7th Cir. 2016); *U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 936 (7th Cir. 2012).

[F]utility, in the context of Rule 15, refers to the inability to state a claim, not the inability of the plaintiff to prevail on the merits." *Gorss Motels, Inc. v.*

16

*Brigadoon Fitness Inc.*, No. 1:16-cv-330-HAB, 2020 WL 2570046, at *3 (N.D. Ind. May 21, 2020). Taking the Relator's allegations as true, the Court is not certain that the proposed second amended complaint, on its face, alleges facts demonstrating that a public disclosure occurred or that Relator is not the original source of the information. Relator has stated a claim at this stage of the proceedings; whether Relator can support that claim is a question better left to the discovery process. Accordingly, the Court, applying the liberal standard for amending pleadings early in a lawsuit, finds that Relator's proposed second amended complaint is sufficient to survive CHN's jurisdictional public disclosure challenge.[9]

### B. Undue Delay

Finally, CHN argues that Relator's request for leave should be denied for undue delay. (Dkt. 115 at 8). Specifically, CHN asserts that because Relator waited six years before requesting leave to amend, the Court should deny the request for leave. (Id).

In reply, Relator argues that the six-year delay in this case is attributable to the procedural requirements of the FCA and Indiana's FCA, not Relator's actions. (Dkt. 124 at 2). Further, because Relator requested leave before the April 21, 2020 deadline to serve the complaint; there is no scheduling order; discovery has not begun; no responsive pleading filed; and no trial date has been set, therefore no undue delay has occurred. (Id. at 2, 9). The Court agrees.

---

[9] CHN attempts to bring allegations regarding "claims smuggling," (*See* Dkt. 115 at 12), but does not flesh out that argument. As such, the Court shall not evaluate that argument here.

Here, on August 7, 2019 and upon completion of its investigation, the Government filed an Election to Intervene in Part, (Dkt. 86), and on December 5, 2019, the State filed a Notice of Election to Decline Intervention. (Dkt. 92). On December 23, 2019, this Court granted the Government's Notice of Election. (Dkt. 93). Approximately two weeks later, on January 6, 2020, the Government promptly filed its Complaint in Intervention. (Dkt. 96). Two months later, on March 3, 2020, Relator filed the instant Motion for Leave to Amend. (Dkt. 108).

Leave to amend should be "freely given," absent considerations such as undue delay. *Foman*, 371 U.S. at 182. This is not the case of a party seeking leave to amend well into litigation of the lawsuit, *Sanders v. Venture Stores, Inc*., 56 F.3d 771, 773-74 (7th Cir. 1995), or one in which Relator "failed to act with diligence." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002). Instead, any delay in this case is attributable to that which is permitted by the FCA, which requires that Relator's Complaint remain sealed until the completion of government investigation into the claims. Thus, because the delay between the filing of the original Complaint (and First Amended Complaint) and the present Motion for Leave to Amend is attributable to government investigation permitted by the language of the FCA, the Court declines to deny Relator's request based on undue delay.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Plaintiff-Relator's

Motion for Leave to File Second Amended Complaint, Dkt. [108].  Plaintiff-Relator is permitted to file the Second Amended Complaint within ten (10) days from the date of this Order. Plaintiff-Relator shall serve the Defendants the Second Amended Complaint within fourteen (14) days of filing the Second Amended Complaint.

So ORDERED.

Date: 11/25/2020

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record via email.

19