UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA,       )
STATE OF INDIANA,               )
                                )
              Plaintiffs,        )
                                )
       v.                        )        No. 1:14-cv-01215-RLY-MKK
                                )
COMMUNITY HEALTH NETWORK, INC.,  )
*et al.*,                        )
                                )
              Defendants.        )
_____ )
                                )
THOMAS P. FISCHER,               )
                                )
              Relator.           )

### O<small>RDER</small>

This matter comes before the Court on the United States' Motion to Compel

Defendant Community Health Network, Inc. to Revise and Supplement its

Responses to Interrogatories 3-5 (First Set), Dkt. [500]. The motion was referred to

the undersigned and, for the reasons that follow, is hereby **GRANTED**.

## I.    Background

### A.    United States' Complaint

Relator, Thomas Fischer, filed a *qui tam* complaint on July 21, 2014, alleging

that the Defendants had violated the False Claims Act and the Indiana False

Claims and Whistleblower Protection Act. (Dkts. 1, 32). On August 7, 2019, the

United States elected to intervene in part and declined to intervene in part. (Dkt.

86).[1] The United States' Complaint in Intervention, against only Defendant Community Health Network, Inc. ("CHN"), was filed on January 6, 2020. (Dkt. 96). The United States contends that CHN knowingly submitted claims to Medicare that were false because they resulted from violations of the federal physician self-referral law, commonly known as the Stark Law. (*Id.* at 1). It alleges that CHN violated the Stark Law by (1) submitting claims to Medicare for designated health services referred by certain specialists to whom Community Health paid salaries that exceeded fair market value, (*id.* at 16-18), and (2) submitting claims to Medicare for designated health services referred by physicians to whom CHN paid service line financial performance ("SLFP") bonuses that took into account the volume or value of the physicians' referrals to CHN, (*id.* at 19).

### B.    Discovery Dispute

On April 9, 2021, the United States served its first set of interrogatories on CHN related to the second alleged violation. (Dkt. 363-1). After two years, too many meet and confers, half a dozen discovery conferences, and two different Court Orders requiring CHN to provide complete, narrative answers, (*see* Dkts. 364, 477), the United States has moved to compel CHN to provide the answers this Court has already ordered it to provide, (Dkt. 500). At issue are CHN's answers to Interrogatory Nos. 3, 4, and 5.

> **Interrogatory No. 3**: "Identify every physician employed by CHN (or any other entity identified in your answer to Interrogatory No. 1) who received incentive compensation that was based in part on or

---

[1] The State of Indiana declined to intervene on December 23, 2019. (Dkt. 94).

included a service line financial performance bonus." (Dkt. 500-1 at 3).

**Interrogatory No. 4**: "For each physician identified in your answer to Interrogatory No. 3, describe how the service line financial performance bonus was calculated or determined." (*Id.* at 5).

**Interrogatory No. 5**: "For each physician identified in your answer to Interrogatory No. 3, describe the criteria for receipt of a service line financial performance bonus, including how the criteria were established." (*Id.* at 7).

Initially, CHN objected to these three interrogatories (and related requests for production), claiming that they were "overly broad, unduly burdensome, not proportional to the needs of the case, and s[ought] information outside of the scope of the Complaint." (Dkt. 403-2).[2]  On September 21, 2021, the parties had a discovery conference with then-Magistrate Judge Pryor. After considering the parties' submissions and hearing further argument on the issue, Judge Pryor found Interrogatory Nos. 3 through 5 both relevant and proportional and concluded that CHN had not proven that any burden in responding to these requests would be undue. (Dkt. 235). She then ordered CHN to "immediately" begin production. (*Id.* at 2). CHN never objected to that order. At the October 28, 2021 status conference, Defendants had produced no documents, but represented that all discovery production in response to the United States' discovery requests would be completed on or before November 30, 2021. (Dkt. 246).

---

[2] This Court's December 27, 2022 Entry on Defendant's Objection to Magistrate Judge's Minute Entry for May 13, 2022 Discovery Conference exhaustively explains the history related to the present discovery dispute. (Dkt. 477). The undersigned will largely reuse that summary, as the full picture is relevant for this opinion.

On November 30, 2021, CHN produced nearly 26,000 documents which it said were responsive to the United States' RFPs on incentive compensation. (Dkt. 363-1 at 69). CHN also produced a spreadsheet in response to Interrogatory Nos. 3 through 5 identifying 119 physicians who received incentive compensation and were "*eligible* for a SLFP bonus pursuant to their employment agreements." (*Id.* (emphasis in original)). The spreadsheet, contrary to what a full and complete answer to Interrogatory No. 3 would look like, did not indicate whether the physicians had *in fact* received a SLFP bonus. Along with the spreadsheet came CHN's invocation of Rule 33(d), "referring the United States to the 25,767 documents . . . produced in response to [the RFPs]" that would contain CHN's responses. (*Id.*).

The United States believed CHN had improperly relied on Rule 33(d) in responding to the interrogatories and, after several uneventful meet and confers, sought the Magistrate Judge's intervention. In a discovery dispute statement, the United States noted that CHN's response did not (1) "identify *even a single physician who actually received a SLFP bonus* (Interrogatory No. 3)"; (2) "describe how the SLFP bonuses were calculated or determined (Interrogatory No. 4)"; or (3) "provide the criteria for receipt of a SLFP bonus and explain how those criteria were established (Interrogatory No. 5)." (Dkt. 363-5 at 5 (emphasis in original)). Instead, the United States argued, CHN abused the Rule 33(d) option by pointing it to a mass of documents without "identify[ing] the particular documents responsive to each of the incentive compensation interrogatories" or even "certify[ing] . . . the

responses to the . . . interrogatories are actually ascertainable from the documents produced." (*Id.* at 4, 9).

In a letter to the Magistrate Judge, CHN explained its "payroll department did not receive information about the various components that went into each physician's incentive compensation." (*Id.* at 93). So, while "it can determine from payroll records which physicians received *incentive compensation* for any given year," it does not "track[] or store[] in a centralized location" information related to SLFP bonuses specifically. (*Id.* (emphasis in original)). Prior to 2018, those bonuses were "calculated by each individual service line before compensation information was sent to CHN's payroll department." (*Id.*). The metrics for SLFP bonuses also "varied by service line . . . and were often revised on an annual basis." (*Id.*). This meant, CHN maintained, that it was " extraordinarily difficult to determine which physicians received incentive compensation that had a SLFP component, what metrics were used for any SLFP component and who was involved in making the decision." (*Id.*). That information, "to the extent it exists," "could only be derived from reviewing documents;" namely, "the [26,000] documents produced by CHN to the United States on November 30, 2021." (*Id.* at 94).

On February 1, 2022, the parties presented their arguments to the Magistrate Judge during a discovery conference. During that conference, the Magistrate Judge noted she was "not confident that at this juncture CHN ha[d] met the requirements of Rule 33." (Dkt. 328 at 41). Accordingly, in the Minute Entry for the February 1, 2022 conference, the Magistrate Judge ordered CHN (1) "to more

definitively specify that the documents produced are responsive to the . . . [i]nterrogatories," and (2) "to specify where in those documents any answers might be found." (Dkt. 305). CHN had through March 15, 2022 to do so. (*Id*.)

On March 15, 2022, CHN supplemented its response to the interrogatories by providing a new spreadsheet that identified "115 physicians who received incentive compensation for one or more years from Community since 2008 . . . [and] had provisions in their employment agreements that allowed for the possibility of a service line financial performance bonus." (Dkt. 363-5 at 70). This spreadsheet also identified around 7,000 "documents, by Bates Number for each physician, that Community believe[d], based on reasonable diligence, contain[ed] information responsive to th[e] interrogator[ies]."(*Id*.; Dkt. 363-7 at 2).

The United States again sought the Magistrate Judge's assistance. (Dkt. 404-3 at 2). On May 13, 2022, another discovery conference was held, and the Magistrate Judge issued a Minute Entry that concluded that CHN's supplemental responses did not comply with Rule 33(d). (Dkt. 364). The Magistrate Judge was not convinced that the information responsive to the interrogatories was actually ascertainable from the documents provided. Nor was she convinced that the burden of deriving or ascertaining the answers was substantially the same for both parties. (*Id*. at 4-6). These conclusions were reinforced by the fact the United States did not have access (nor does today) to CHN employees who would be more intimately familiar with the information in the documents and able to interpret how exactly that information responds to the interrogatories posed. (*Id*.). The Magistrate Judge

explicitly ordered CHN "to provide complete, narrative answers to Interrogatories 3-5, without reference to documents, no later than May 31, 2022." (*Id.* at 7). And if CHN "lack[ed] the knowledge or information to answer a particular interrogatory or subpart," it was ordered to "state as such." (*Id.*). CHN filed an objection to that Minute Entry. (Dkt. 379).

On December 27, 2022, CHN's objection contending that the Magistrate Judge "applied a heightened standard of specificity for the invocation of Rule 33(d)," (Dkt. 379), was overruled in its entirety by the District Judge. (Dkt. 477). The District Judge found that "the Magistrate Judge was on solid ground when she concluded that [CHN] failed to comply with Rule 33(d)" because "a party abuses the Rule 33(d) option when it hedges as to whether information responsive to interrogatories will be found in the business records it proffers." (Dkt. 477 at 11). The District Judge also overruled any of CHN's concerns related to burden or proportionality because the Magistrate Judge had overruled those objections in September 2021, and CHN had not objected to that decision. (*Id.* at 11-12 (citing Dkt. 235)).

On January 11, 2023, CHN supplemented its responses. (Dkt. 500-1). And on February 17, 2023, the United States returned to the Court with the present Motion. (Dkt. 500). The United States argues, for what is now the third time, that while CHN's supplemental answers to Interrogatory Nos. 3 through 5 "provide *some* of the information requested," CHN's "answers are evasive and incomplete" and do not comply with the Magistrate Judge's Minute Entry from May 16, 2022. (Dkt. 501

at 2 (emphasis in original)). CHN was ordered "to provide complete, narrative answers to Interrogatories 3-5, without reference to documents." (Dkt. 364 at 7). Those answers, with references to a document, are now before this Court. (Dkt. 500). CHN filed a response brief on March 3, 2023, and the United States filed a reply on March 10, 2023. (Dkts. 510, 511).

## II.  Legal Standard

A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. Fed. R. Civ. P. 37(a)(2)-(3). The party opposing a motion to compel has the burden to show the discovery requests are improper and to explain *precisely* why its objections or responses are proper given the broad and liberal construction of the federal discovery rules. *Bell v. Pension Comm. of ATH Holding Co., LLC*, 330 F.R.D. 517, 520 (S.D. Ind. 2018); *Cunningham v. Smithkline Beecham*, 255 F.R.D 474, 478 (N.D. Ind. 2009). Once a response has been made, the burden shifts to the party seeking discovery to explain why the opposing party's responses are inadequate. *See Design Basics, Inc. v. Granite Ridge Builders, Inc.*, No. 1:06-cv-72, 2007 WL 1830809, at *2 (N.D. Ind. June 21, 2007) ("A motion to compel discovery or disclosure should both identify specifically the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the responses adequate.") (citing James Wm. Moore, 7 Moore's *Federal Practice* § 37.05[5] (3rd ed.)). Courts have broad discretion in resolving such disputes and do so by adopting a liberal interpretation of the discovery rules. *Chicago Reg.*

*Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018).

## III.  Discussion

The United States asks the Court to compel CHN to answer Interrogatory Nos. 3, 4, and 5 from its First Set of Interrogatories to CHN, served in April 2021. (Dkt. 500). The undersigned will address, first, a general concern with the interrogatory answers and then specific concerns germane to each interrogatory.

As a general matter, the Court is troubled by CHN's continued use of generalized, and previously overruled, objections. Before providing its narrative answers to Interrogatory Nos. 3 through 5, CHN states each time that it objects to the interrogatory "as overly broad, unduly burdensome, and not proportional to the needs of the case.'" (Dkt. 500-1 at 3, 5, 7). This Court has already overruled each of these objections and informed CHN as such on three occasions. (*See* Dkt. 235 at 1-2; Dkt. 364 at 2; Dkt. 477 at 11-12).

Additionally, although this Court previously ordered CHN to answer Interrogatory Nos. 3 through 5 without reference to documents, CHN nevertheless created a spreadsheet to respond to these interrogatories and referenced it throughout its answers. While a table (or spreadsheet) is often a helpful means to organize and present information, it is not a narrative. Thus, CHN's reference to the spreadsheet is non-compliant with the Court's prior instruction to answer without reference to documents.[3] The Court could grant the United States' Motion

---

[3] At the April 24, 2023 telephonic status conference, CHN informed the Court that in response to the Relator's interrogatories regarding incentive compensation, to which CHN has also been ordered to

on this basis. Nonetheless, the undersigned will consider the specifics of CHN's interrogatory answers.

### A.    Interrogatory No. 3

Interrogatory No. 3 asks CHN to identify every physician who received incentive compensation that included a SLFP bonus. (Dkt. 500-1 at 3). The United States argues that CHN's spreadsheet listing 200 instances of an SLFP bonus being awarded is incomplete because it does not address four physicians who its investigation indicated received an SLFP bonus in 2010 and who, accordingly, were named in the Complaint. (Dkt. 501 at 10-11 (citing Ex. B (*see* Dkt. 502)); Dkt. 511 at 5-6). When discussing its belief that these four physicians are missing from the production, the United States refers to a spreadsheet produced by CHN during the investigation, attached to the United States' Motion, and referred to herein, as Exhibit B.

CHN responds that its answer is complete, and that the spreadsheet included with its interrogatory response identifies the 200 instances in which a physician received an SLFP bonus. (Dkt. 510 at 11; *see also id.* ("for each of the remaining 5,800-plus instances where a physician received incentive compensation, the physician did not receive an SLFP bonus")). When specifically responding to the United States' allegation that certain physicians were omitted from the spreadsheet, CHN describes the nature and origin of the document disclosed earlier in the investigation on which the United States bases its allegation, (*i.e.*, Exhibit B),

---

provide complete, narrative responses without reference to documents, CHN provided a 900-page narrative in addition to a spreadsheet. (*See also* Dkt. 524 at 5).

and contrasts that document with the spreadsheet produced in response to Interrogatory No. 3. (Dkt. 510 at 11-12). In reply, the United States maintains that the reason Exhibit B was created "is of no moment," as the substance of the document (*i.e.*, that these four physicians received SLFP bonuses) has not been refuted. (Dkt. 511 at 6).

The Court is inclined to agree with the United States in so much as CHN's response appears to be incomplete. The United States has presented specific concerns with the sufficiency and completeness of CHN's response. It supports those concerns by providing documentation purportedly showing physicians who appear to have received SLFP bonuses in 2010 but who do not appear in CHN's spreadsheet. More specifically, the United States cites to lines 6, 21, 28, and 29 of Exhibit B, (Dkt. 501 at 10), for which the operative cells[4] read as follows:

| Line | Doctor's Name (redacted) | 2010 Metrics |
|:---:|:---:|:---|
| 6 | R.J. | MUST MEET 7200 wRVU TO QUALIFY<br>**Network**<br>Network meets net operating margin.  **[Did not qualify in 2010.]**<br>**Practice**<br>Meet or exceed budgeted cases for ISC and hospital.  **[Bonus Paid = $9,171]**<br>**Physician**<br>Coding compliance, patient satisfaction, cost effectiveness.  **[Bonus Paid = $18,342]** |
| 21 | J.C. | **Network**<br>Network meets net operating margin.  **[Did not qualify in 2010.]**<br>**Practice**<br>Net income (practice & downstream revenue) must exceed prior year. **[Bonus Paid =  $64,310]**<br>**Physician**<br>Meet or exceed IMM budget for practice expenses, coding compliance, etc.  **[Bonus Paid =  $96,465]** |

---

[4] The "2010 Metrics" column is quoted directly from Exhibit B.

| Line | Doctor's Name (redacted) | 2010 Metrics |
|---|---|---|
| 28 | J.P. | MUST MEET 7200 wRVU TO QUALIFY<br>**Network**<br>Network meets net operating margin.  [**Did not qualify in 2010.**]<br>**Practice**<br>Meet or exceed budgeted cases for ISC and hospital.  [ **Bonus Paid = $8,464.**]<br>**Physician**<br>Coding compliance, patient satisfaction, cost effectiveness.  **[Bonus Paid = $16,927.**] |
| 29 | J.J. | MUST MEET 7200 wRVU TO QUALIFY<br>**Network**<br>Network meets net operating margin.  [**Did not qualify in 2010.**]<br>**Practice**<br>Meet or exceed budgeted cases for ISC and hospital.  [ **Bonus Paid = $8,990.**]<br>**Physician**<br>Coding compliance, patient satisfaction, cost effectiveness.  **[Bonus Paid = $17,981.**] |

For each of these four physicians, the United States points to "2010 Metrics" that entail either exceeding net income, including "downstream revenue," or "meet[ing] or exceed[ing] budgeted cases for ISC and hospital." (Dkt. 501 at 10). On its face, this language does seem to suggest that any bonuses resulting from such metrics (regardless of whether the compensation was paid out in 2010 or a subsequent year) were "based on the volume or value of the physicians' referrals to the hospital or based upon downstream revenue," (Dkt. 510 at 5), the question at issue in this part of the government's case.

In response, CHN states that it created the list of 200 instances of SLFP bonuses based on communications with CHN representatives knowledgeable about the topic and by reviewing "documents created by the [Group Practice Directors] that were used to determine physician incentive compensation metrics and

bonuses." (Dkt. 510 at 11-12). CHN distinguishes these documents from Exhibit B, which it characterizes as an "acquisition analysis spreadsheet . . . used for a retroactive analysis on the success of prior physician acquisitions." (*Id.* at 11). This distinction suggests to the Court that CHN did *not* review Exhibit B when preparing its response to Interrogatory No. 3, which makes the Court question whether CHN undertook a reasonable review or made a careful inquiry before compiling its response.[5] The universe of documents reviewed by CHN in order to respond to these interrogatories is also called into question by CHN's own submission to the present motion: CHN previously informed the United States that while preparing its answers to Interrogatory 3 through 5, it concluded that it would produce approximately 50 additional documents responsive to the incentive compensation requests that were identified only after CHN "tracked documents reviewed against the universe of documents previously produced in response to the incentive compensation [RFPs]." (Dkt. 510-1 at 3).

Because CHN almost entirely sidestepped the issue of these four physicians in its response to the present motion, (Dkt. 510 at 11-12), the undersigned is left to guess whether CHN's interrogatory answer is complete. And because the United States has presented more than a "mere suspicion" of incompleteness, further action by the Court is appropriate. *Cf. Vukadinovich v. Hanover Cmty. Sch. Corp.*, No. 2:13-CV-144-PPS-PRC, 2014 WL 667830, at *5 (N.D. Ind. Feb. 20, 2014) ("If

---

[5] "Rule 26(g) requires counsel to make a '*careful inquiry*'" and a court "must impose sanctions under Rule 26(g)(3) when attorneys fail in their duties 'to make a reasonable investigation to assure that their clients have provided all available responsive information and documents.'" *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 953 (N.D. Ill. 2021) (emphasis in original).

Plaintiff feels a response to an interrogatory is untruthful, that does not necessarily make the response improper. It is not the court's duty to determine the accuracy of a response to an interrogatory. If a good faith response to an interrogatory is that the respondent does not know the information asked, and cannot make reasonable efforts to learn the information, then such a response is not objectionable."); *Keaton v. Hannum*, No. 1:12-cv-641-SEB-MJD, 2013 WL 4481889, at *3 (S.D. Ind. Aug. 19, 2013) (quoting *Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992)) ("The fact that a party may disbelieve or disagree with a response to a discovery request, however, is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect.").[6]

As such, consistent with this opinion and Rule 26(g)'s proclamation that a signed discovery response certifies that a reasonable inquiry has occurred, the United States' request to compel a final and complete response to Interrogatory No. 3, that identifies each and every instance where CHN paid a SLFP bonus to a physician, is granted.

## B.   Interrogatory Nos. 4 and 5

Interrogatory Nos. 4 and 5 ask CHN, for each physician identified in response to Interrogatory No. 3 as receiving an SLFP bonus, to "describe" the criteria for receiving that SLFP bonus and "describe" how that SLFP bonus was actually

---

[6] Moreover, although CHN states in a footnote that it informed the United States it would be "happy to look into" any specific questions regarding Interrogatory No. 3 and "get back to [the United States]," (Dkt. 510 at 12 n.9), CHN did not respond to the United States' very specific question presented in this motion, *i.e.*, "Why does Exhibit B imply that these four physicians received SLFP bonuses in 2010?"

calculated or determined. (Dkt. 500-1 at 5, 7). The United States argues that CHN failed to comply with the Court's previous order to provide complete, narrative answers without reference to documents, (Dkt. 501 at 2), and further argues that CHN's spreadsheet includes "technical, ambiguous, and undefined" phrases, (*id.* at 8), that "cannot be gleaned by anyone (including CHN's counsel) who is not familiar with CHN's internal technical jargon," (Dkt. 511 at 3). CHN maintains that its narrative response and the accompanying spreadsheet represent the "*most accurate* answer" and, as such, are sufficient, even if the United States does not understand some of the terminology. (Dkt. 510 at 12-16 (emphasis in original)). In reply, the United States contends that copying and pasting technical words and phrases into the spreadsheet is not the same as providing a description of the information, and that said process fails to comply with Court's numerous orders on this topic. (Dkt. 511 at 2-3).

Then-Magistrate Judge Pryor, in her May 16, 2022 Minute Entry, ordered CHN "to provide complete, narrative answers to Interrogatories 3-5, without reference to documents." (Dkt. 364 at 7). This instruction was not ambiguous and clearly requires CHN to provide "complete, narrative answers . . . without reference to documents." What this means to the undersigned is that CHN needed to answer each of the three interrogatories in a narrative fashion without reference to documents. *See, e.g., Mathis v. United States*, 579 U.S. 500, 514 (2016) ("a good rule of thumb for reading our decisions is that what they say and what they mean are one and the same"); *Von Duprin LLC v. Moran Elec. Serv., Inc.*, No. 1:16-cv-01942-

15

TWP-DML, 2019 WL 535752, at *7 (S.D. Ind. Feb. 11, 2019) ("Court orders and rules say what they mean and mean what they say."); *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 514 (N.D. Ill. 2018) (Seventh Circuit judges "say what they mean and mean what they say"). And yet, CHN provided a general narrative and a general overview of the criteria for and calculation of SLFP bonuses while only including physician-specific answers by referencing a spreadsheet that CHN created. While these answers, copied and pasted from CHN documents, may technically be the "most accurate answer" someone could provide, that does not satisfy either the interrogatory's request to "describe" or the Court's previous order to provide "complete, narrative answers without reference to documents."

To illustrate the nature of the debate before the Court, it is appropriate to consider some examples. Line 3 of CHN's spreadsheet (Dkt. 500-3)[7] reads:

| Department | Year | Redacted Name | Total Incentive Comp Earned | SLFP Criteria | SLFP Calculation |
|---|---|---|---|---|---|
| Cardiology | 2010 | A., S. | $34,832.50 | CHV Operating Margin (Virtual) Percent | Target goal of 8.4%; achieved 6.6%; potential payout of 15% of bonus pool; actual payout of 11.79% of bonus pool |

In this example, in the "SLFP Calculation" column the Court presumes that the "actual payout" figure of 11.79% was calculated by multiplying the "potential payout" figure of 15% by the achieved-to-target ratio (*i.e.*, 15% x (6.6 / 8.4)). Even assuming the Court could state this with confidence, however, that formula is

---

[7] A manual filing containing this spreadsheet was received by the Court on February 17, 2023. (Dkt. 502). The Court will reference the original filing, acknowledging that the actual spreadsheet is maintained in a physical copy with the Court.

certainly not evident from the face of the document. Moreover, it only answers the question of which equation is being used, and not what do the variables in said equation mean and how are they determined, which is the ultimate question being asked by the United States here. Furthermore, the bonus criterion ("SLFP Criteria") for this example is listed as "CHV Operating Margin (Virtual) Percent." Endeavoring to understand this term, the Court turned to CHN's narrative answer to Interrogatory No. 5. (*See* Dkt. 500-1). The discussion that comes closest to explaining this criterion appears to be the following:

> The third category of metrics is Network-specific, measuring performance of all physicians across the Network. The most common Network-specific metric measured over time is network operating margin. This third group of metrics typically includes at least one metric that serves to "trip the circuit breaker" and to act as a gatekeeping measure to allow, or prevent, any incentive compensation to be paid to Community's employed physicians. This means that if the Network-wide "circuit breaker" metric(s) are not met in a particular year, no physicians would be eligible to be paid any incentive compensation for that particular year.

(*Id.* at 9). If this paragraph, coupled with Columns E and F of CHN's spreadsheet, translates into an intelligible explanation of the meaning of "CHV Operating Margin (Virtual) Percent," it is not clear to the undersigned.

Another example, Line 18 of CHN's spreadsheet (Dkt. 500-3), reads:

| Department | Year | Redacted Name | Total Incentive Comp Earned | SLFP Criteria | SLFP Calculation |
|---|---|---|---|---|---|
| Otolaryngology | 2013 | B., M. | $ 71,183.47 | Achieve Net Income per wRVU before Physician Compensation and Benefits of the CPN 2012 calculated amount of $22.87 per wRVU. (Finance) | Metric is weigh[t]ed at 5% Actual Net Income per wRVU before Physician Compensation and Benefits was $35.97. Metric met. |

Here, the table seems to suggest that the target net-income figure was "$22.87 per wRVU," and that because the actual net-income figure was "$35.97," the metric was met. To interpret the "SLFP Calculation" and do the next step of the analysis, the Court turns not to CHN's interrogatory answer, but to its *brief* submitted in response to the present motion. There, CHN devotes a paragraph to explaining the term "weighted" that is used in its spreadsheet. (Dkt. 510 at 13). CHN states that it "would have explained this to the Government without the Court's intervention if the Government had only asked." (*Id.*). But the Government did ask, multiple times. And, regardless of the date of the Government's latest ask, the Court has already ordered CHN to provide this explanation, *i.e.*, to answer the Interrogatory in narrative form, a task that CHN appears capable of doing at least with respect to the one example discussed in its brief. (*Id.* (discussing Row 17)).

One final example bears noting, Line 25 of the spreadsheet, (Dkt. 500-3):

| Department | Year | Redacted Name | Total Incentive Comp Earned | SLFP Criteria | SLFP Calculation |
|---|---|---|---|---|---|
| Neurosurgery | 2014 | C., J. | $175,978.49 | Achieve net income/wRVU before physician benefits and compensation budgeted for 2014 = $19.58 | Metric comprised 8.33% of total availab[]le incentive compensation. Incentive compensation apparently calculated by multiplying a physician's wRVUs, times a physician-specific rate per wRVU, times the aggregate percentage of all achieved incentive compensation metrics. Dr. C[.] had 12,220.81 billable WRVUs, times a 19.20 rate per WRVU, times a 19.20 rate per WRVU, times the 8.33% weight for the SLFP metric gives the total compensation for that metric. |

In this example, the "SLFP Calculation" column states that the physician's incentive compensation was "apparently" calculated by multiplying various figures. Was the incentive compensation figure actually calculated in this manner, or does the inclusion of the word "apparently" imply that the author is unsure? The Court is in no better position to discern the answer to this question.

As the United States notes, it has sought answers to three questions for almost two years now: "To which physicians did CHN pay a SLFP bonus? What were the criteria for receipt of that bonus? And how was the bonus calculated?" (Dkt. 501 at 13). Here, CHN provided a high-level overview of how SLFP bonuses

were generally created and calculated (and a spreadsheet replete with jargon and technical terms), but CHN did not, as the interrogatories request, provide that information for each specific instance of an SLFP bonus being awarded. Additionally, although CHN urges the United States to consider its responses to Interrogatory Nos. 4 and 5 together, Rule 33 requires that interrogatories be "answered *separately* and *fully* in writing under oath."  Fed. R. Civ. P. 33(b)(3) (emphasis added).

Finally, the Court finds it prudent to note that CHN's attempt to use Rule 33(d) to answer Interrogatory Nos. 4 and 5 was denied, in part, because the United States would "not have access to CHN employees who would be more intimately familiar" with the documents' information and "able to interpret how exactly the information" is responsive to the questions posed. (Dkt. 364 at 5). Now, instead of providing a large number of documents and telling the United States to review their contents and figure out how it answers the interrogatories, CHN has simply copied and pasted the information from those documents and told the United States to figure out how CHN is answering the interrogatories. (*See* Dkt. 510 at 15 (terms used in spreadsheet are "precise language" taken "directly" from underlying documents)).

Thus, on their face, CHN's responses to Interrogatory Nos. 4 and 5 are deficient and non-compliant with the Court's previous orders. CHN is ordered to provide narrative responses to Interrogatories No. 4 and 5 that answer the questions asked, namely for each physician identified in response to Interrogatory

20

No. 3, to "describe how the SLFP bonus was calculated" and to "describe the criteria for receipt of a SLFP, including how the criteria were established." (Dkt. 500-1 at 5, 7).

### C.   Sanctions

There is a basic requirement that all parties and their counsel fairly cooperate in the discovery process "and that discovery orders be scrupulously obeyed." *Hamilton v. Illinois Dep't of Hum. Servs.*, No. 21 C 6373, 2023 WL 1980119, at *1 (N.D. Ill. Jan. 27, 2023), report and recommendation adopted, No. 21 C 6373, 2023 WL 1988359 (N.D. Ill. Feb. 13, 2023) (collecting cases). The Federal Rules provide for sanctions when this basic requirement is not met. First, Rule 37(a) states that if a motion to compel is granted, "the court must" require the party or attorney whose conduct necessitated the motion (or both) "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also Roldan v. Coca Cola Refreshments USA, Inc.*, No. 20 C 305, 2021 WL 38139, at *1 (N.D. Ill. Jan. 5, 2021) (failure to comply with appropriate discovery requests can obligate the recalcitrant party to reimburse the other side for the cost of bringing a motion to compel).

Second, pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders." Fed R. Civ. P. 37(b)(2)(A). A violation of a court order does not need to be in bad faith; a negligent violation can trigger Rule 37(b) sanctions. *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 642-43 (7th

Cir. 2011). "As long as the sanction is 'just,' there are virtually no limitations on judicial creativity in fashioning a response or remedy to a violation of a discovery order." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 955 (N.D. Ill. 2021) (quoting 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[10] at 37-120 (3d ed. 2019)).

Discovery in this case has been contentious, laborious, and slow. This matter has required an inordinate amount of time spent on resolving discovery issues, with no fewer than nine formal discovery conferences and monthly status conferences since December 2021 being required to maintain even the slowest of discovery progression paces. *See Hamilton v. Illinois Dep't of Hum. Servs.*, No. 21 C 6373, 2022 WL 17068426, at *2 (N.D. Ill. Nov. 17, 2022) (noting "needless delays and needless disputes . . . take the Court's attention away from the many other cases waiting in the queue" as well as "the needless cost to the taxpayers who are subsidizing the resolution of [the] lawsuit"). At a good number of those conferences, the United States discussed the importance of obtaining discovery related to incentive compensation. CHN has missed a Court ordered deadline at least once on this issue, (*see* Dkt. 235 at 2; Dkt. 246 at 1; Dkt. 276 at 1-2), resulting in the Court stating that further discovery issues may result in sanctions, (Dkt. 276 at 2).

On the present motion, the undersigned has now not only granted the motion in full but also concluded that CHN violated this Court's prior orders on how to complete its discovery responses to Interrogatory Nos. 3 through 5. As such, two independent provisions under Rule 37 exist for awarding sanctions related to this

motion and weighing all of the relevant factors, the undersigned finds sanctions appropriate under the circumstances. A court, however, must not order payment of fees if the opposing party's discovery response or position was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(ii-iii).

While the Court recognizes the long history related to incentive compensation discovery, as to Interrogatory No. 3 the Court finds, at this time, that CHN's response was substantially justified and sanctions are not appropriate as to that response. However, the Court does conclude that sanctions are appropriate as to CHN's responses to Interrogatory Nos. 4 and 5. Accordingly, the United States shall file a motion for attorney fees related to Interrogatory Nos. 4 and 5 within 21 days of this Order.

## IV.    Conclusion

For the reasons stated herein, the United States' Motion to Compel Defendant Community Health Network, Inc. to Revise and Supplement its Responses to Interrogatories 3-5 (First Set), Dkt. [500], is hereby **GRANTED**. On or before **May 12, 2023**, CHN shall provide complete, narrative answers to the United States' Interrogatory Nos. 3 through 5, without reference to documents, in accordance with this Order. If CHN lacks the knowledge or information to answer a particular interrogatory or subpart, CHN must state as such.

The United States shall file a Motion for Attorney Fees, consistent with this opinion, **within 21 days** of this Order.

So ORDERED.

Date: 27 April 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email