UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> STATE OF INDIANA, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> COMMUNITY HEALTH NETWORK, INC., ) <br> *et al.*, ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> THOMAS P. FISCHER, ) <br> ) <br> Relator. ) | No. 1:14-cv-01215-RLY-MKK |

## ORDER

This matter comes before the Court on the United States' Motion to Compel Defendant Community Health Network, Inc. to Revise and Supplement its Privilege Log, Dkt. [484], and the Relator Thomas Fischer's Motion to Compel Defendant Community Health Network, Inc. to Revise and Supplement its Privilege Log, Dkt. [486].[1] The motions were referred to the undersigned and, for the reasons that follow, are hereby **GRANTED**.

**I.    Background**

Relator, Thomas Fischer, filed a *qui tam* complaint on July 21, 2014, alleging that the Defendants had violated the False Claims Act and the Indiana False

---

[1] The arguments presented by the United States' and Relator's motions largely overlap – thus, the Court will consider the motions together in this opinion.

1

Claims and Whistleblower Protection Act. (Dkts. 1, 32). On August 7, 2019, the United States elected to intervene in part and declined to intervene in part. (Dkt. 86).[2] The United States' Complaint in Intervention, against only Defendant Community Health Network, Inc. ("CHN"), was filed on January 6, 2020. (Dkt. 96). On December 2, 2020, Relator filed his Second Amended Complaint against all Defendants. (Dkt. 134). Throughout the course of discovery, CHN has produced a privilege log and multiple supplements. (Dkt. 485 at 3-4). The Court held two discovery conferences on November 3 and 18, 2022 regarding the Relator's and United States' challenges regarding CHN's privilege log. (Dkts. 456, 461).

On January 19, 2023, with the Court's permission, the Relator and the United States filed the present Motions to Compel. (Dkts. 484, 486). CHN filed a combined response brief on February 2, 2023. (Dkt. 493). The Relator and United States filed their replies on February 9, 2023, (Dkts. 494, 495). In their Motions, the United States and the Relator (collectively referred to herein as Movants) request that the Court order CHN to review certain categories of documents that appear on CHN's privilege logs and either amend the corresponding descriptions to clarify the basis for the privilege claim or delete the entries from the log. (Dkt. 484 at 3; Dkt. 487 at 2-3).

## II.   Legal Standard

In discovery, parties are generally entitled to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and

---

[2] The State of Indiana declined to intervene on December 23, 2019. (Dkt. 94).

proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Privileged matter may be withheld, Fed. R. Civ. P. 26(b)(5)(A), but if a party believes that material has been improperly withheld, the party may move for the Court to compel production, Fed. R. Civ. P. 37(a); S.D. Ind. L.R. 37-1. The party opposing a motion to compel has the burden to show the discovery requests are improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D 474, 478 (N.D. Ind. 2009). Here, Movants contend that CHN has failed to adequately describe the documents on its privilege log, thus frustrating Movants' ability to determine whether CHN properly withheld the material on the basis of attorney-client privilege.

Attorney-client privilege is a federal common law doctrine that allows parties to withhold relevant "confidential communications made for the purpose of facilitating the rendition of professional legal services." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). For a communication to be protected by attorney-client privilege, the communication must have been made: "(1) in confidence; (2) in connection with the provision of legal services; (3) to an attorney; and (4) in the context of an attorney-client relationship." *Id.* The party resisting production must expressly invoke the privilege and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii); *see also BDO Seidman*, 492 F.3d at 811 ("The mere assertion of a privilege is not

enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements.").

Parties commonly comply with the requirements for asserting a privilege by providing a privilege log that contains: (1) the name and job title or capacity of the author/originators; (2) the names of all persons who received the document or a copy of it and their affiliation (if any) with the producing party; (3) a general description of the document by type (e.g., letter, memo, report); (4) the date of the document; and (5) a general description of the subject matter of the document. *In re Bridgestone/Firestone, Inc.,* 129 F. Supp. 2d 1207, 1218-19 (S.D. Ind. 2001). A "claim of privilege must be made and sustained on a question-by-question or document-by-document basis." *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *see also Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.,* No. 1:13-cv-01316-JMS-TAB, 2015 WL 4715202, at *1 (S.D. Ind. Aug. 7, 2015) (citing *Long v. Anderson University*, 204 F.R.D. 129, 134 (S.D. Ind. 2001)) (same).

### III. Discussion

CHN produced an initial privilege log to the United States on January 5, 2022, eight supplemental logs through December 5, 2022, and a revised and consolidated privilege log that encompassed the initial log and all eight supplements on January 6, 2023. (Dkt. 485 at 3-4). CHN produced an initial privilege log to the Relator on April 8, 2022, five supplemental logs through July 22, 2022, and a revised and consolidated privilege log that encompassed the initial log and all five supplements on January 6, 2023. (Dkt. 487 at 4-12).

On February 10, 2023, CHN raised, for the first time, an advice-of-counsel defense. (Dkt. 497 at 5-6). The Court then sought the parties' positions on the effect this advice-of-counsel defense would have on the scope of discovery and the present motions to compel. (Dkt. 504). CHN indicated that the invocation of this defense would necessitate the production of approximately 8,000 previously withheld documents. (Dkt. 505 at 2). The Court then ordered CHN to produce final versions of both privilege logs that removed those 8,000 documents on or before March 10, 2023. (Dkt. 508). The final privilege log for the United States contains more than 30,000 entries, and the final privilege log for the Relator contains mor than 45,000 entries.[3] (Ex. 7; Ex. 8). These logs were emailed to the undersigned's chambers on March 10, 2023.[4]

---

[3] The magnitude of the privilege logs is daunting, to be sure. But their large size does not necessarily change the Court's analysis. Although CHN emphasizes the time and expense of its privilege review, (Dkt. 493 at 7, 23-24), those costs reflect the scope of the litigation at hand.

As noted by CHN, the Court is expected to actively manage discovery and to limit disproportionate discovery. (Dkt. 493 at 24 (citing *Noble Roman's, Inc. v. Hattenhauer Distrib. Co.,* 314 F.R.D. 304, 306 (S.D. Ind. 2016))). But neither party has offered authority for why the Court should alter its analysis into the sufficiency of a privilege log based on the sheer number of entries at issue. To be sure, burden is an appropriate factor to consider when charting a case's discovery path, but it does not appear to be a factor in the present circumstances. *See Mosley v. City of Chicago, et al.*, 252 F.R.D. 445, 449 n.5 (N.D. Ill. 2008) ("As with parties under Rule 26, non-parties under Rule 45 have a choice: they can either prepare a privilege log or waive any claim of privilege. They cannot, however, avoid the obligation to prepare a privilege log by unilaterally deciding that it would be too difficult to prepare the log."). The Court notes that although "the Advisory Committee Notes [to Rule 26(b)] also provide that, when it would be burdensome to prepare an item-by-item log, 'a party can seek relief through a protective order,'" *Novelty, Inc. v. Mountain View Mktg, Inc.*, No. 1:07-cv-01229-SEB-JMS, 2010 WL 11561280, *3 (S.D. Ind. Jan. 29, 2010); *see also Close Armstrong LLC v. Trunkline Gas Co.,* No. 3:18-cv-270-PPS-MGG, 2021 WL 1207592, at *9 (N.D. Ind. Mar. 31, 2021) (same), no such request has been made here. Rather, CHN has opted to proceed on a document-by-document basis. Thus, burden does not appear to be a relevant consideration. And even if cost was a factor, any burden placed on CHN would not be undue or disproportionate given the facts and circumstances of this case (including CHN's invocation of the advice-of-counsel defense).

[4] Because these privilege logs were not filed on the docket by the parties, the undersigned will refer throughout this opinion to CHN's privilege log to the United States as Exhibit 7 and CHN's privilege log to the Relator as Exhibit 8. Additionally, this opinion will only reference Exhibit 7, the log to the

5

Movants challenge two categories of entries on CHN's privilege logs. The first category consists of documents whose descriptions include "regarding physician contracts and/or compensation" but do not specify whether the document is related to legal advice. (Dkt. 485 at 9, 14-18; Dkt. 487 at 2, 15-19). Below is an example of one such entry:

| Privilege Claim | Attorney Nexus | Description | DocDate | DocType | Subject |
|---|---|---|---|---|---|
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Communication with In-House counsel regarding physician contracts and/or compensation | 10/27/2006 14:31 | Email | RE: First assist proposal. |

(Ex. 7 at Line 14). Such entries are distinct from those communications that are described as "regarding physician contracts and/or compensation" *and* pertaining to "legal advice," an example of which follows:

| Privilege Claim | Attorney Nexus | Description | DocDate | DocType | Subject |
|---|---|---|---|---|---|
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Communication with In-House counsel seeking legal advice regarding physician contracts and/or compensation | 12/15/2014 22:47 | Email | RE: Confidential |

(*Id.* at Line 15512). Movants do not challenge this latter subset of log entries.

The second category consists of those entries whose descriptions read simply as "attachment to" another entry on the log but which do not describe the attachment itself. (Dkt. 485 at 9, 18-20; Dkt. 487 at 19-22).[5] For example:

---

United States, simply because the entries on the two logs largely mirror one another and, also, for ease of reference.

[5] In its brief, the United States also challenges 1,600 entries that have no description; 3 entries that do not include a claimed privilege; and 9 entries that contain only the description of "regarding anticipated litigation." (Dkt. 485 at 20-21). In its March 10, 2023 privilege log, CHN revised the log to include descriptions for those 1,600 entries and privileges for those 3 entries. Additionally, those 9 entries are no longer included in the log and, presumably, were part of the approximate 8,000 document production pursuant to the invocation of the advice-of-counsel defense. (*See* Dkt. 495 at 1 n.1; Dkt. 513 at 10, 11). Accordingly, the undersigned will not address those specific arguments, and will consider those entries only as needed when evaluating the primary arguments discussed in the main body of the Order.

| Privilege Claim | Attorney Nexus | Description | DocDate | DocType | Subject |
|---|---|---|---|---|---|
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Attachment to Communication with In-House counsel regarding physician contracts and/or compensation | 11/2/2007 | Attach | CV Integration Employment Agreement vers 4.doc |

(Ex. 7 at Line 55). The Court will address each of these two categories in turn.[6]

### A. Physician Contracts and/or Compensation

First, Plaintiffs argue that the privilege log entries that "are 'regarding physician contracts and/or compensation', but do not specify whether the document pertains to the provision of legal advice" do not sufficiently demonstrate that the documents in question relate to legal advice. (Dkt. 485 at 3, 14-18; Dkt. 487 at 15-19). Although some of these entries indicate that an attorney was included on the communication, none of the entries, they maintain, satisfies the requirements for properly invoking the attorney-client privilege. (*Id.*). Additionally, Movants question the use of "and/or" and whether the use of that phrase renders the entries impermissibly vague. (Dkt. 485 at 17-18; Dkt. 487 at 18-19). In response, CHN contends that its descriptions provide more than adequate information to discern the propriety of the privilege at issue. (Dkt. 493 at 10-15).

As an initial matter, the Second Amended Complaint alleges that "Community Health violated the False Claims Act, the Anti-Kickback Statute, the Stark Law, and Indiana state laws by 'entering into improper arrangements and deals that resulted in [Community Health] paying above fair market value physician

---

[6] The Court rejects CHN's argument that Movants have raised impermissible "blanket objections" to its privilege logs. (Dkt. 493 at 11). Movants cited to the specific language to which they object and provided the privilege logs to the Court. The Court is not being asked to comb through the logs, line by line, but rather rule on discrete categories of documents. The fact that those categories encompass thousands of documents is a reflection more of the magnitude of the case and CHN's decision about how to describe documents, rather than of any failing on the part of Movants.

7

compensation to illegally induce physicians to refer Medicare, Medicaid and other government insurance patients to [Community Health's] hospitals and associated medical entities.'" (Dkt. 512 at 2 (citing Dkt. 134 at ¶ 2)). Thus, this case hinges on the contracts and compensation of the Community Health physicians in question. As a result, it stands to reason that a majority of the documents and emails Movants seek to discover would relate to "physician contracts and/or compensation." So, without more, CHN's almost boilerplate use of that phrase does little, if anything, to assist the Court in evaluating the accuracy and adequacy of its privilege log entries. *See St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *4 (N.D. Ill. Oct. 12, 2021), objections overruled, No. 15 CV 10324, 2022 WL 1642311 (N.D. Ill. Mar. 30, 2022) ("appending 'regarding coverage' to a description" in a case about insurance coverage "does little to help the court understand the subject matter of a particular document or evaluate whether it was properly withheld as privileged"); *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 373 (N.D. Ill. 2000) (describing a document as "claim summary" in a case about insurance claims does "nothing to distinguish it from perhaps thousands of other[]" documents).

  Additionally, as all parties acknowledge, the mere inclusion of an attorney on a communication does not necessarily mean that it is related to legal advice. "The attorney-client privilege protects 'confidential communications made by a client to his lawyer where legal advice of any kind is sought from a professional legal advisor in his capacity as such.'" *Rehling v. City of Chi.*, 207 F.3d 1009, 1019 (7th Cir. 2000)

8

(internal quotations omitted). "The privilege does not, however, protect business decision advice, even when that business advice is rendered by an attorney or an attorney is one of those participating in the business decision." *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 316 (N.D. Ill. 2010).

With these concepts in mind, the Court now turns to the privilege log entries in dispute. The United States and Relator ask for court intervention only as to those "physician contracts and/or compensation" entries that are devoid of any reference to seeking or requesting legal advice. (Dkt. 484 at ¶ 7(a); Dkt. 485 at 3, 14; Dkt. 487 at 2-3, 15; Dkt. 495 at 5). Such entries include: "Communication with In-House counsel regarding physician contracts and/or compensation" and "Attachment to Communication with In-House counsel regarding physician contracts and/or compensation." (Dkt. 485 at 14; Dkt. 487 at 2, 15). Movants also object to entries that use the descriptive phrase of "in furtherance of representation" without further explanation, (Dkt. 485 at 14; Dkt. 487 at 15-16), an example of which follows:

| Privilege Claim | Attorney Nexus | Description | DocDate | DocType | Subject |
|---|---|---|---|---|---|
| Attorney Client Communication | Outside Counsel; Ice Miller, LLP | Communication between non-lawyers and In-House/Outside counsel in furtherance of representation regarding physician contracts and/or compensation | 12/2/2016 20:24 | Email | FW: MetLife 457(b) Plan Distributions - Physician Call Summary - Additional Calls 12/2 |

(Ex. 7 at Line 9669).

In response, CHN says that it has done enough and that it has provided sufficient information to permit its opponents to assess its privilege claims. The Federal Rules do not require it "to include an explicit reference to 'legal advice' in describing the contents of the privileged document," CHN maintains. (Dkt. 493 at 12; *see also id.* at 14 (questioning "the perceptible difference . . . between communications 'related to legal advice' . . . . and communications 'in furtherance of

9

representation'")). In support of its position, CHN emphasizes the protocols it provided to its third-party vendor who reviewed the discovery at issue and compiled the privilege logs, and argues that because some documents were ultimately produced, there must have been a careful review of the privileged status of all documents in the case. (Dkt. 493 at 15-16).

CHN's position begins to unravel, however, when considered in light of the log entries at issue and CHN's own decisions about how to describe (or not describe) particular documents. It is true that the law does not require parties to use "magic words." But it is also true that when a party uses particular words (magic or otherwise), its opponent is entitled to assume those words have meaning. This principle is well established. *See Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 473 (7th Cir. 2017) ("When a law employs a specific term at one point, and omits it at another, we assume that 'Congress intended a difference in meaning.'") (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)); *Ormond v. Anthem, Inc., et al.*, Nos. 1:05-cv-1908-TWP-TAB & 1:09-cv-798-TWP-TAB, 2011 WL 2020661, at *2 (S.D. Ind. May 24, 2011) (finding defendants waived privilege where the descriptions were "unrelated to legal advice, and [d]efendants' other entries show[ed] that they were capable of including such a description").

CHN elected to include "seeking legal advice" or "requesting legal advice" on some, *but not all*, of its "physician contract and/or compensation" entries. If CHN intended those words to have meaning with respect to the entries on which they appear, then so too does those words' absence carry weight. Movants therefore have

good reason to pause and contest the sufficiency of CHN's barebones entries. This context distinguishes the present case from *Heartland Consumer Products*, in which the court found entries sufficiently detailed where "the most reasonable reading of the[] descriptions is that they pertain[ed] to emails seeking and giving advice regarding the legal impacts of the listed topics." *Heartland Consumer Prods., LLC v. DineEquity, Inc., et al.,* No. 1:17-cv-01035-SEB-TAB, 2018 WL 3574737, at *3 (S.D. Ind. July 25, 2018). The court adopted the most reasonable reading and did "not require disclosure simply because the Defendants did not add 'the legal impacts of' to each description." *Id.* We now turn back to the present case. But for CHN's decision to include the "legal impact" language on some of its entries, the "most reasonable reading" of the challenged entries might have been that they pertain to emails seeking and giving legal advice about "physician contracts and/or compensation." But, as noted, CHN purposely excluded the "legal impact" language from the challenged entries and has declined to revise its log to include the additional words that likely would have eliminated the need for the present Motions. For these reasons, *Heartland Consumer Products* is distinguishable from this case.

    With the "legal impact" language so obviously missing, the challenged "communication with in-house counsel" entries are insufficient. This is so because just like their non-legal counterparts, attorneys communicate about many matters. As noted above, there may be instances where an attorney or general counsel provides business or financial advice, as opposed to legal advice. That situation would not be protected by attorney client privilege. *See Burden–Meeks v. Welch*, 319

11

F.3d 897, 899 (7th Cir. 2003); *Elder Care Providers of Indiana, Inc. v. Home Instead, Inc.*, No. 1:14-cv-01894-SEB-MJD, 2016 WL 881176, at *2 (S.D. Ind. Mar. 8, 2016). It would be far from surprising to see such circumstances arise in a case like this one. For example, suppose a CHN in-house counsel emailed another CHN employee to transmit a final version of a physician's contract for signature. Such an email would constitute a "Communication with In-House counsel regarding physician contracts and/or compensation," but yet not be privileged. *See S.E.C. v. Hollnagel*, 2010 WL 11586980, at *16 (N.D. Ill. Jan. 22, 2010) ("Where counsel only provides direction to the client to sign a document to be provided to a third party, neither the accompanying communication providing that direction nor the document to be signed is privileged because counsel has not provided any legal assessment or legal advice."); *see also BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 185 (N.D. Ill. 2018) (finding that cover emails from an attorney stating that "comments are attached" or an "attachment is being forwarded" are not privileged).

The undersigned has no doubt that many of the challenged entries likely contain privileged documents. Yet, CHN's overly broad descriptions leave the Court and Movants without the opportunity to meaningfully evaluate the applicability of each privilege claim. *See Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 157 (N.D. Ill. 2020) (citing Fed. R. Civ. P. 26, "Plaintiffs are supposed to be able to 'assess the claim' of privilege based on the defendants' privilege log").

12

The presence of a "Subject" column does not alter this conclusion. A quick sampling of the listed Subjects shows why this is true. Although some Subjects read more "legal impact" than others, (*see, e.g.,* Ex. 7 at Line 324 ("FW: Questions/Comments on LarsonAllen Preliminary Opinion"), Line 1671 ("FW: Ghumman Non-compete")), others give no such clear indication, (*see, e.g., id.* at Line 669 ("RE: Call Financial Assistance"), Line 776 ("RE: FW:"), Line 2229 ("RE: GA")). It is not the Court's job to figure out which of these thousands of entries might have a "most reasonable reading" in favor of privilege, particularly when it is apparent that some do not.

A final note regarding this first category of contested entries: although appreciative of the extensive work involved, the Court cannot consider the protocols given to, or the efforts expended by, the third-party vendor hired to conduct CHN's privilege review. The privilege log must be able to stand on its own. Indeed, absent a request from CHN for a protective order governing an entire category of documents, each entry must be able to stand on its own.

Accordingly, CHN shall be required to provide a final detailed privilege log that is fully compliant with the Federal Rules of Civil Procedure, is consistent with this opinion, and allows the parties and the Court to assess the claims of privilege within the logs.[7]

---

[7] Based on the above analysis, the Court does not feel it necessary to address the "and/or" argument presented by Movants. If anything, the use of "and/or" compounds the problem at hand. But even without the phrase, the entries contain insufficient detail.

### B. Attachments

Next, Movants argue that each log entry for an attachment is deficient because it is only characterized as an "attachment to" another communication over which CHN has asserted a privilege, and the entry does not explain why the attachment itself is privileged. (Dkt. 485 at 9, 18-20; Dkt. 487 at 19-22). CHN responds[8] that it has met its burden of describing the attachments because those attachments should be considered in the context in which they were communicated. (Dkt. 493 at 19-20).[9]

Based on the Court's review, the "Description" of each attachment consists of the phrase "Attachment to" followed by the description of the communication to which the document is attached. The listed "Subject" provides some additional information – presumably, the title of the attachment, (Dkt. 493 at 2, 5). The

---

[8] CHN characterizes Movants' objection as "a baseless assertion that Community has not independently reviewed each attachment to a privileged communication." (Dkt. 493 at 19). The Court disagrees. Movants' attempts to resolve this issue without involving formal motion practice have been extensive and the resulting objections cannot be considered baseless. (Dkts. 456, 461). This is particularly true given the manner in which this case has progressed. CHN filed its response brief to the present motions on February 2, 2023. (Dkt. 493). Eight days later, it filed its Statement of Defenses and invoked the advice-of-counsel defense. (Dkt. 497). Although one cannot be sure, one presumes that CHN did not become aware of the need for an advice-of-counsel defense on the date of its submission. Yet, just eight days before, it had submitted its consolidated privilege logs and signed its response brief attesting to the completeness of that information. (Dkt. 493). It was only after the Court's prompting, (Dkt. 504), that CHN stated that approximately 8,000 additional documents needed to be produced that were previously withheld as privileged, (Dkt. 505 at 2). This timeline gives cause for concern. *See DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 953 (N.D. Ill. 2021) ("Rule 26(g) requires counsel to make a '*careful inquiry*'" and a court "must impose sanctions under Rule 26(g)(3) when attorneys fail in their duties 'to make a reasonable investigation to assure that their clients have provided all available responsive information and documents.'") (emphasis in original).

[9] CHN also argues that its approach to attachments is the same as that adopted by the United States on its privilege log. (See Dkt. 493 at 20-23). The Court pauses here. Party A's failure to follow the rules does not excuse a breach by Party B. Should CHN believe that a motion to compel regarding the United States' (or Relator's) privilege log is warranted and appropriate, it may file one. At that time, the Court will address any alleged failings by the United States or Relator. Here, however, it is CHN's logs that are under review.

amount of new information gleaned from this column varies significantly by entry. For example,

| Privilege Claim | Attorney Nexus | Description | DocDate | DocType | Subject |
|---|---|---|---|---|---|
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Attachment to Communication with In-House counsel regarding physician contracts and/or compensation | 3/18/2020 | Attach | CHS Draft 091409 Comp Only.pdf |
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Attachment to Communication with In-House counsel regarding physician contracts and/or compensation | 10/6/2009 18:44 | Attach | '@ |
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Attachment to Communication with In-House counsel regarding corporate legal matters | 10/19/2009 17:17 | Attach | CHI Otolaryngology Ageement for East (ENT) (2009) vers 1.doc |
| Attorney Client Communication | In-House; Karen Ann Lloyd, Esq. | Attachment to Communication with In-House counsel regarding corporate legal matters | 10/19/2009 17:17 | Attach | Rate calc 10.09.xls |

(Ex. 7 at Lines 1205, 1218, 1227, 1228).

This Court has already advised CHN about the state of the law for inputting attachments on a privilege log. Then-Magistrate Judge Pryor summarized the issue at the November 3, 2022 discovery conference that "[t]he content of the attachment would have to fall within the realm of privilege and cannot become privilege[d] by merely attaching it to communication with the attorney," (Dkt. 465 at 62), and that there must be "an independent determination that the attachment itself needed to be withheld because of privilege, and the same privilege standard that would apply to the emails independently apply to those attachments," (*id.* at 61-62). In the Minute Entry for that discovery conference, Judge Pryor stated that "CHN committed to reviewing the underlying document to ensure that the description accurately depicts the attachment, rather than its relation to the document to which it is attached. The Court encouraged CHN to conduct this review to ensure that the Court is able to assess whether a privilege is properly invoked as to the attachment itself." (Dkt. 456 at 2). It is unclear how CHN could have misinterpreted Judge Pryor's statements at the discovery conference, or the minute entry's directive that the descriptions must accurately describe the attachment, rather than simply the

15

attachment's relation to the original email or document. Regardless, the law on the subject is clear.

Attachments to an email do not become privileged just by virtue of the privileged nature of the email itself. "E-mails can be produced independently of their attachments, and vice versa." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 221 (N.D. Ill. 2013) (citing *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *5 (N.D. Ill. Nov. 28, 2006)) (stating that attachments are judged separately from their primary documents and that to be withheld, each must individually meet the privilege standard); *Sneider v. Kimberly–Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980) (stating that attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney). "Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer." *Towne Place Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018).

With this history and these principles in mind, the Court finds CHN's attachment entries insufficient. As set forth above, the Court has already found that certain "physician contract and/or compensation" entries are inadequate. *See infra* Part III.A. It follows that entries listing attachments to those now-invalid log entries are, likewise, inadequate. While it's possible that one of the many attachment entries could be saved by a particularly detailed Subject line (*e.g.*,

16

"Letter Advising Client on FMV Approach.docx" (a hypothetical subject line that the Court is imagining, not one that it took from one of the logs)), CHN has not pointed to any such example. And the Court did not find one in its review (which was conducted not line-by-line, but rather via sampling). To the contrary, the Subjects provide, at best, a very general idea of what topic is referenced in the attachment, but not whether legal advice is embedded in said topic. (*See, e.g.*, Ex. 7 at Line 2068 ("Plastic Surgeons Integration Business Case Summary 110510.doc")). At worst, the Subjects provide no information at all. (*See, e.g., id.* at Line 1533 ("@")).

As noted by CHN, it is appropriate for an attachment to be considered "in the context in which it was communicated." (Dkt. 493 at 19 (citing *Indianapolis Airport Auth.*, 2015 WL 4715202). And a reader can discern from the log to which email a particular document was attached. But understanding this "context" does not help CHN in the present case.[10] As set forth above, in many cases, the description of the email to which the attachment is linked is *itself* impermissibly vague and thus offers no clarity to a reader attempting to decipher the basis of privilege for the attachment.

The remaining attachment entries – for which the underlying email entries have not been successfully challenged – are equally deficient. They too provide insufficient information from which the Court (or Movants) can assess the adequacy

---

[10] Moreover, it is important to note that the *IAA* Court considered the privilege log entries alongside an *in camera* review of the documents in question, which allowed the Court to glean the context of the communications and their attachments. Here, however, the undersigned has not reached the step of *in camera* review. (Nor has such a review been requested. (Dkt. 487 at 6).) Instead, at this stage, the Court must assess the adequacy of the privilege log descriptions themselves.

of CHN's privilege claims. Even when reviewing the context of the attachment, as urged by CHN, it is essentially impossible to determine why or how certain attachment entries would be entitled to the privilege. For example,

| Description | DocDate | DocType | Subject |
|---|---|---|---|
| Attachment to Communication with In-House counsel transmitting information in furtherance of rendering legal advice regarding general legal issues | 3/10/2010 15:37 | Attach | '@ |

(Ex. 7 at Line 1658). This type of entry, where the description indicates that legal advice is being rendered, still does not meet the requirement in this Circuit that the description must explain why the attachment itself is privileged as opposed to the underlying communication.

For these reasons, CHN shall be required to provide a final detailed privilege log that adequately explains the basis for claiming privilege on each of the entries for attachments. To ensure no confusion, the entries must explain why the *attachment itself* is privileged.

On a final note, CHN should be advised "that the failure to produce an adequate privilege log can, where appropriate, result in a waiver of privilege." *United States ex rel. McGee v. IBM Corp.*, No. 11 C 3482, 2017 WL 1232616, at *4 (N.D. Ill. Apr. 4, 2017) (citing *Surgery Ctr. at 900 N. Michigan Ave., LLC v. Am. Physicians Assurance Corp., Inc.*, 317 F.R.D. 620, 631–32 (N.D. Ill. 2016)). Although waiver generally is not the preferred remedy, "[e]vidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver" of privilege, *Cunningham*, 255 F.R.D. at 481. And, if the deficiencies identified herein are not cured, a finding of waiver could be appropriate. *See*

*Motorola Sols., Inc. v. Hytera Commc'ns Corp*, No. 17 C 1973, 2018 WL 1281393, at *2 (N.D. Ill. Jan. 10, 2018) (noncompliance on privilege logs can have "serious consequences, including a finding that the claim of privilege has been waived or forfeited"); *see also Ormond*, 2011 WL 2020661, at *2 (finding defendants waived privilege for certain entries). "Counsel should not expect that the court will substitute its own review for a proper assertion of privilege." *Babych v. Psychiatric Sols., Inc.*, 271 F.R.D. 603, 608 (N.D. Ill. 2010).

## IV. Conclusion

For the reasons stated herein, the United States' Motion to Compel Defendant Community Health Network, Inc. to Revise and Supplement its Privilege Log, Dkt. [484], and the Relator Thomas Fischer's Motion to Compel Defendant Community Health Network, Inc. to Revise and Supplement its Privilege Log, Dkt. [486], are hereby **GRANTED**. Consistent with this opinion, no later than **May 12, 2023**, CHN shall provide a final revised privilege log that sufficiently explains the privilege of any disputed material.

So ORDERED.

Date: 28 April 2023

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email