UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* THOMAS FISCHER, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No. 1:14-cv-1215-RLY-MKK ) |
| COMMUNITY HEALTH NETWORK, INC. | ) ) |
| Defendant. | ) ) |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM
<u>EPSTEIN BECKER & GREEN, P.C.</u>**

In its Response to the United States' Motion to Compel Production of Documents, Dkt. No. 612, Epstein Becker principally advances three arguments. First, it contends that the United States' Subpoena cannot be enforced because it violates Rule 45's geographical bounds, an objection which is both meritless and untimely. Next, Epstein Becker argues that the United States' Subpoena should not be enforced because it does not comply with the Eighth Circuit's requirements for depositions of trial counsel, relying on authority that does not apply either in this Court or to the circumstances of this case. Finally, Epstein Becker contends that the Subpoena fails to comply with ordinary discovery standards, despite seeking information that CHN and Epstein Becker put directly at issue by asserting advice of counsel as a defense. For the reasons set out below, these arguments have no merit.

    A. **The Subpoena Complies With Rule 45**

Epstein Becker's first argument, that the Subpoena cannot be enforced because it violates Rule 45's geographical bounds, ignores contrary caselaw and fails to acknowledge the unique nature of ESI discovery. Because the production of these materials will be completed

electronically, any change in the location to which the documents are produced would neither decrease nor increase any purported burden imposed on Epstein Becker.

While Rule 45(c)(2)(A) states that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person," courts regularly hold that subpoenas requesting the production of ESI to a location beyond Rule 45(c)(2)(A)'s 100-mile radius are nevertheless compliant with the Rule when the electronic production can be executed *within* that radius.[1] *See, e.g.*, *Mackey v. IDT Energy, Inc.*, 19 Misc. 29, 2019 WL 2004280, at *4 (S.D.N.Y. May 7, 2019) ("Federal courts have universally upheld, as consistent with the Rule, this production mode—in which the subpoenaed entity, at all times acting within 100 miles of its office, uploads documents for retrieval by counsel for the party who issued the subpoena."); *CresCom Bank v. Terry*, 269 F. Supp. 3d 708, 713 (D.S.C. 2017) (declining to quash subpoena for ESI because "Rule 45(c)(2)(A)'s 100-mile boundary does not apply where, as here, the subpoenaed person is not instructed to also appear at the production location along with the requested documents"); *see also Curtis v. Progressive N. Ins. Co.,* CIV-17-1076-C, 2018 WL 2976432, at *2 (W.D. Okla. June 13, 2018); *Perez v. Kazu Constr.*, LLC, Civil No. 16-00077, 2017 WL 628455, at *12 (D. Haw. Feb. 15, 2017); *United States v. Brown*, 223 F. Supp. 3d 697, 703 (N.D. Ohio 2016); *Sol v. Whiting*, No. CV-10-01061, 2014 WL 12526314, at *2 (D. Ariz. Jul. 22, 2014); *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, No. 13-cv-1395, 2014 WL 3573400,

---

[1] This approach is supported by the Advisory Committee's acknowledgement that, despite Rule 45's stated restrictions, "parties often agree that production, particularly of electronically stored information, be transmitted by electronic means"—indeed, that "[s]uch arrangements facilitate discovery, and nothing in these amendments limits the ability of parties to make such arrangements." Fed. R. Civ. P. 45(c)(2) advisory committee's note to 2013 amendment.

at *4 (S.D. Cal. July 18, 2014). [2] In essence, these courts deem the place of compliance with the Subpoena to be the place where the *subpoenaed party* complies.

Epstein Becker's formalistic argument that the United States' Subpoena cannot be enforced because it requests production to the Southern District of Indiana is therefore meritless. The Subpoena to Epstein Becker, like all of the United States' subpoenas in this litigation, expressly requests the production of ESI.[3] Dkt. No. 595-1 at ¶ 6 ("All responsive documents shall be produced to the maximum extent practicable in electronic format . . . ."). Epstein Becker is free to produce that ESI to the United States from whatever location it wishes, including its

---

[2] Courts that have declined to follow this approach typically focus instead on Rule 45(d)(3)(A)'s mandate that "[o]n timely motion, the court for the district where compliance is required must quash *or modify* a subpoena" that requires compliance more than 100 miles from the recipient's residence or place of business. *CresCom Bank*, 269 F. Supp. 3d at 713 (collecting cases) (emphasis added). Those courts have "tended to do so while keeping in mind the expectation of cooperation among those involved in the subpoena and the practical reality that production will typically be accomplished electronically or by mail." *Id.*; *Westmore Equities, LLC v. Vill. of Coulterville*, No. 3:15-cv-241, 2016 WL 695896, at *2 (S.D. Ill. Feb. 22, 2016) (noting the expectation that lawyers "will continue to **cooperate** and use **common sense** to facilitate the sensible production of documents and ESI").

For instance, courts have responded to motions to quash by ordering that the parties "confer and agree on a proper place and a cost-effective method of production, including electronic means," *D'Souza v. Marmaxx Operating Corp.*, EP-15-CV-00256, 2017 WL 1322243, at *6 (W.D. Tex. Apr. 7, 2017), or by modifying the subpoena to allow for production by email or at the offices of the subpoenaed party, rather than finding the subpoena wholly unenforceable. *See Sams v. GA W. Gate, LLC,* 316 F.R.D. 693, 697 (N.D. Ga. 2016); *In re: Subpoena Upon Nejame Law, PA., a non-party in an action pending in the U.S. Dist. Ct. for the N. Dist. of Ill. entitled First Farmers Fin. Litig.*, No. 16-CV-4619, 2016 WL 3125055, at *3 (N.D. Ill. June 3, 2016).

[3] This is in contrast to two of Epstein Becker's three leading cases, both of which addressed the production of physical documents. *See* Def.'s Mot. to Compel Production from Non-Party Martin Luther King, Jr. Outpatient Center, ECF No. 64-3 at 6, 8, *Westfield v. Simpson*, No. 1:20-cv-01747 (S.D. Ind.) (issuing subpoena that requested "complete reproductions of . . . original or microfilmed records" by U.S. Mail); *Westfield v. Simpson*, No. 1:20-cv-01747, 2022 WL 4131681 (S.D. Ind. Sept. 12, 2022) (addressing same); *In re Byrd, Inc.*, 927 F.2d 1135 (10th Cir. 1991) (addressing production of physical documents). (The third case Epstein Becker primarily relies upon, *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 630 (C.D. Cal. 2018), is similarly not analogous because in that case the third-party subpoena recipient timely objected to the production location—something which, as discussed below, Epstein Becker has not done.)

offices in New York or DC. The fact that documents uploaded by Epstein Becker may be retrieved by government counsel in the Southern District of Indiana does not require any special action by Epstein Becker, nor does it impose any special burden. Rather, the process of producing those documents would be the same if they were instead retrieved in the Southern District of New York or at the Department of Justice's offices in DC.

Indeed, this conclusion is consistent with Rule 45's purpose of protecting nonparties from intrusive or burdensome discovery, which Epstein Becker's argument to the contrary disregards. *See, e.g.*, *Am. Senior Cmtys, L.L.C. v. Burkhart*, No. 1:17-cv-03273, 2020 WL 13553260, at *4 (S.D. Ind. Jan. 8, 2020); *see also Farmer v. Arabian Am. Oil Co.* 379 U.S. 227, 234 (explaining that the "long-standing 100-mile rule" protects against the costs of litigation and the "harassment of long, tiresome trips"). Here, if the United States were forced to withdraw the Subpoena and reissue it in another jurisdiction, Epstein Becker's burden would not be reduced. If anything, the likely relitigation of this dispute in a second court would increase the burden of discovery on both Epstein Becker and the United States.

B. **Epstein Becker's Objection Is Untimely**

In any case, courts need not quash or modify a subpoena requesting production outside the 100-mile radius except "on timely motion"— which Epstein Becker has not filed. Fed. R. Civ. P. 45(d)(3)(A). Courts typically conclude that a motion is timely only if filed within fourteen days of the issuance of the subpoena (relying on Rule 45(d)(2)(B)'s time limit for objections) or prior to the Subpoena's return date. *See WM High Yield v. O'Hanlon*, 460 F. Supp. 2d 891, 894 (S.D. Ind. 2006). Epstein Becker did not include any mention of Rule 45(c)(2)(A)'s geographical restrictions in the written objections it served on the United States on May 15, 2023, fourteen days after the issuance of the Subpoena. Dkt. No. 595-4. Nor did

4

Epstein Becker file a motion to quash prior to the Subpoena's return date of May 30, 2023. In fact, the first and only time Epstein Becker raised its concerns regarding the location of compliance of the Subpoena was in its June 29, 2023 Response. At this point, even if Epstein Becker had a valid objection, that objection has been waived. [4]

### C. *Shelton* Does Not Apply

Epstein Becker's Response next faults the United States for failing to argue that the Subpoena complies with the Eighth Circuit's decision in *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). But as the United States' Motion states, *Shelton* is not the applicable standard. Dkt. No. 595 at 19. Nothing in Epstein Becker's Response changes that conclusion.

As a threshold matter, Epstein Becker overstates the adoption of *Shelton* by the Circuit Courts. Dkt. No. 612 at 11. The *Shelton* test was expressly adopted by the Sixth Circuit in *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002), and by the Ninth Circuit in an unpublished table disposition, *Willer v. Las Vegas Valley Water Dist.*, 176 F.3d 486 (9th Cir. 1999). In the Fifth and Tenth Circuits, however, Shelton has only been applied under an abuse of discretion standard. *See Boughton v. Cotter Corp.*, 65 F.3d 823, 830 (10th Cir. 1995) (district court "has the *discretion* under Rule 26(c) to issue a protective order against the deposition of opposing counsel when any one or more of the three *Shelton* criteria for deposition listed above are *not* met") (emphasis in original); *Nguyen v. Excel Corp.*, 197 F.3d 200, 209 (5th Cir. 1999) (adopting *Shelton*'s assertion that depositions of opposing counsel are "disfavored

---

[4] *See, e.g., Brogren v. Pohlad*, No. 94 C 6301, 1994 WL 654917, at *1 (N.D. Ill. Nov. 14, 1994) (objections to deposition subpoena waived because they were issued more than fourteen days from service); *Ott v. City of Milwaukee*, 682 F.3d 552, 558 (7th Cir. 2012) (quoting *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998)) (upholding district court's decision to find waiver of untimely objections and observing that Rule 45 limits the time for objections to ensure recipients "raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game'").

5

generally and should be permitted only in limited circumstances," but affirming the district court on the basis of Rule 26).  Furthermore, the Second Circuit has adopted only *Shelton*'s assertion that "depositions of opposing counsel are disfavored."  *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991).

Moreover, the Circuit Court decisions cited by Epstein Becker were largely issued *before* this Court's opinions declining to apply *Shelton* to attorney depositions.  Dkt. No. 612 at 13.  As a result, Epstein Becker's argument that decisions from other Circuits somehow supersede this Court's rulings is baseless.  Only the earliest case in this district —*Kaiser v. Mut. Life Ins. Co. of N.Y.*, 161 F.R.D. 378 (S.D. Ind. 1994)—precedes *any* of the Circuit Court decisions, and even that decision postdates the Second Circuit's ruling in *Yonkers Board of Education*.  The other relevant opinions were issued no earlier than 2003, a year after the Sixth Circuit's decision in *Nationwide.  See, e.g., Pain Center of SE Ind., LLC v. Origin Healthcare Sols., LLC*, No. 1:13-cv-133, 2015 WL 3631692 (S.D. Ind. June 10, 2015); *Phillips v. Indianapolis Life Ins. Co.*, No. 1:06-cv-1544, 2009 WL 1564384 (S.D. Ind. June 3, 2009); and *Cook Inc. v. C.R. Bard, Inc.*, No. IP 00-1791-C(B/S), 2003 WL 23009047 (S.D. Ind. Sept. 18, 2003).  There is therefore no reason to conclude that the decisions of this Court have been rendered obsolete by non-binding decisions from other Circuits.  Dkt. No. 612 at 13.

Even if this Court were to find *Shelton* applicable in some circumstances, this dispute is not one of them.  Indeed, in analogous circumstances, the Eighth Circuit itself has determined that *Shelton* should not apply.  In *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002), the court clarified the limits of the *Shelton* decision.  The dispute in *Pamida* arose from plaintiff's suit seeking indemnification from defendant for costs incurred in plaintiff's defense and settlement of a prior patent infringement action.  281 F.3d at 728.  Defendant issued

6

deposition and document subpoenas to the attorneys who represented plaintiff in the infringement action on issues "central to the [indemnification] litigation." *Id.* at 729. Because the same attorneys represented plaintiff in both actions, plaintiff and the attorneys sought a protective order preventing the attorneys' deposition and quashing the document subpoenas. *Id.* The Eighth Circuit affirmed the district court's denial of this relief. *Id.* at 730. In so doing, the Court of Appeals clarified that "*Shelton* was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the attorneys regarding the prior concluded case was crucial." *Id.* Of particular relevance here, the Eighth Circuit also noted that by initiating the indemnification action, it was the plaintiff itself that had "put[] the work of its attorneys directly at issue," thereby waiving the attorney-client privilege and impliedly waiving the work product privilege with respect to the prior case. *Id.* at 731–32.

As in *Pamida*, there are two separate engagements at issue here: first, Epstein Becker's original engagement by CHN to advise on physician compensation, and second, Epstein Becker's representation of CHN in this litigation. Dkt. No. 497 at 6. Likewise, it is CHN and Epstein Becker's decision to assert an advice of counsel defense in this litigation that has placed Epstein Becker's work "directly at issue," waived the attorney-client and work product privileges, and made discovery of the advice that Epstein Becker provided to CHN as part of that original engagement "central to the instant litigation." *See* Dkt. No. 595 at 9–11, 13–16. As in *Pamida,* Epstein Becker cannot have it both ways. They cannot assert the advice of counsel defense on CHN's behalf and then assert that under *Shelton* they are not required to produce the documents that would allow the United States to test the validity of this defense. *See Pamida*, 281 F.3d at 731, Dkt. No. 595 at 11–12.

7

### D. The Subpoena is Enforceable Under Rule 45

Epstein Becker's remaining arguments that the Subpoena fails to comply with Rule 45 likewise fall short. *See* Dkt. No. 612 at 14–17. At bottom, those arguments take issue with the scope of the United States' requests because some information technically requested by the Subpoena may still be privileged notwithstanding CHN's invocation of the advice of counsel defense. Each of these arguments is a red herring. It may well be—as the United States' Motion acknowledges—that some documents called for by the Subpoena retain their privileged nature notwithstanding CHN's invocation of the advice of counsel defense. *See* Dkt. No. 595 at 11. But the United States did not file the present Motion because Epstein Becker refused to turn over those documents. The United States filed the present Motion because Epstein Becker refused to comply with the Subpoena *at all*. That specific documents may remain protected by the attorney client privilege or work product protection does not excuse Epstein Becker's compliance, and without any privilege log or other specific identification of those documents, the United States cannot assess the propriety of any continuing privilege assertion.

Epstein Becker argues that the Subpoena seeks documents without "*direct relevance to the advice of counsel itself*," a position which is utterly baseless as the Subpoena's requests are tailored to the defense CHN asserted. Dkt. No. 612 at 14–16 (emphasis in original). Indeed, the United States does not seek "all" of Epstein Becker's "internal documents and communications," Dkt. No. 612 at 16, rather it seeks those "internal documents and communications probative of CHN's advice of counsel defense," Dkt. No. 595 at 13 (providing examples). While this may call for production of internal Epstein Becker materials, that is because those internal documents may be probative of whether (1) before taking action (2) CHN in good faith sought the advice of Epstein Becker and Gallagher (3) about the lawfulness of its future conduct, (4) made a full and

8

accurate report of all relevant facts to Epstein Becker and Gallagher, and (5) acted in strict accordance with the advice of Epstein Becker and Gallagher. *United States ex rel. Sheet Metal Workers Int'l Ass'n v. Horning Invests., LLC,* 828 F.3d 587, 594 (7th Cir. 2016).

Moreover, to ensure that discovery is narrowly tailored to encompass only these relevant and nonprivileged documents, the United States requested that the Court order Epstein Becker "to meet and confer with the United States to identify search terms and custodians" in order to "tailor[] the parameters of any search and production." Dkt. No. 595 at 18. Epstein Becker does not address this point. Dkt. No. 612 at 16. Instead, Epstein Becker contends that the United States should have waited until it could rule out all information another third party might conceivably provide, limiting the subpoena to only "*specific* information" no one else has produced.[5] Dkt. No. 612 at 28. This is little more than an attempt to shoehorn into Rule 45 *Shelton*'s requirement that "no other means exist" to obtain information sought from counsel.

These arguments read as if Epstein Becker has no understanding of the significance of its own client's advice of counsel defense or the last-minute nature of that defense's invocation. Of course the United States' Subpoena seeks relevant information that is potentially highly significant to this case. Why would CHN have raised its reliance on Epstein Becker's advice as a defense and waived privilege over that advice if that were not the case? Moreover, Epstein

---

[5] Epstein Becker's assertion that the United States, "upon information and belief, has not vigorously pursued discovery from non-party consultants to which it issued subpoenas" is entirely baseless. Dkt. No. 612 at 25. The United States has obtained confirmation from Change Healthcare, formerly known as Altegra Health, that none of its documents from the relevant time period have been retained. The United States also received a production from Mercer prior to the July Fourth holiday which is currently being uploaded for re-production to CHN. Alvarez & Marsal is scheduled to produce relevant documents to the United States by July 14, 2023, and Gallagher has produced several thousand documents to date, and is currently negotiating the parameters of additional supplemental production with the United States. Finally, the United States has twice requested to meet and confer with CHN to discuss documents currently in the possession of Berkeley Research Group.

Becker's apparent ignorance of the need—and arguably, obligation—to swiftly produce the requested information is difficult to square with the fact that CHN waited until nearly the end of a "contentious, laborious and slow" discovery period (which the Court has already extended on multiple occasions) to assert its reliance on advice of counsel. Dkt. No. 528 at 22. In short, Epstein Becker's arguments that the Subpoena is overinclusive, nonspecific, or premature are uncompelling, and for the reasons already set out in the United States' Motion to Compel, the Subpoena is therefore enforceable under Rule 45.

## CONCLUSION

For the foregoing reasons and those set forth in the United States' Motion to Compel, the United States respectfully requests that the Court grant that motion in full.

Dated: July 13, 2023                                          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ZACHARY A. MYERS
United States Attorney

*/s/ Claire Horrell*
Jamie Ann Yavelberg
David B. Wiseman
Arthur S. Di Dio
Kelly Quinn McAuliffe
Joanna G. Persio
Claire M. Horrell
Attorneys, Civil Division
U.S. Department of Justice
175 N Street NE, 9th Floor
Washington, D.C. 20002
(202) 305-4507
Arthur.Di.Dio@usdoj.gov
Kelly.Q.McAuliffe@usdoj.gov

        Joanna.G.Persio@usdoj.gov
        Claire.Horrell@usdoj.gov


        */s/ Shelese Woods*
        Shelese Woods
        Justin Olson
        Assistant United States Attorneys
        Office of the United States Attorney
        10 West Market Street, Suite 2100
        Indianapolis, IN 46204
        (317) 226-6333
        Shelese.Woods@usdoj.gov
        Justin.Olson2@usdoj.gov

        *Attorneys for the United States*

**CERTIFICATE OF SERVICE**

On July 13, 2023, I caused a true and accurate copy of the foregoing to be filed using the Court's CM/ECF system, which will send an electronic filing notice to all counsel of record.

>                    */s/ Claire Horrell*
>                    Trial Attorney