UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF INDIANA, *ex rel.* THOMAS FISCHER<br><br>            Plaintiffs/Relator,<br><br>            v.<br><br>COMMUNITY HEALTH NETWORK, INC.,<br><br>            Defendants. | Cause No.  1:14-cv-01215-RLY-MKK |

## THE STATE OF INDIANA'S MOTION
## FOR LEAVE TO INTERVENE IN RELATOR'S MEDICAID CLAIMS

Pursuant to the Indiana Medicaid False Claims and Whistleblower Protection Act (the "IMFCA"), Ind. Code § 5–11–5.7–5(f)[1], the State of Indiana (the "State" or "Indiana") seeks the leave of the Court to intervene in that part of this action that alleges that defendant Community Health Network, Inc. and/or any its affiliates, including those named as individual defendants in Relator's Second Amended Complaint, (ECF No. 134), collectively referred to as "CHN" or "Defendants", violated the Indiana False Claims and Whistleblower Protection Act (the "IFCA"), Ind. Code § 5–11–5.5–1 *et seq.*, or the IMFCA by submitting claims to

---

[1] Even though Relator brought his action under the *qui tam* provision of the IFCA, Ind. Code § 5-11-5.5-4, and not under the *qui tam* provision of the IMFCA, Ind. Code § 5-11-5.7-4, "[s]ections 3 through 18 of [chapter 5.7] apply to claims, requests, demands, statements, records, acts, and omissions made or submitted in relation to the Medicaid program described in IC 12-15 in violation of Ind. Code 5-11-5.5-2 or Ind. Code 5-11-5.7-2." Ind. Code § 5-11-5.7-1(a).

Indiana Medicaid that either were referred by physicians with whom CHN had employment relationships (either direct employment of the physicians by CHN or employment of a physician group pursuant to a Professional Services Agreement) that violated the Stark Law, 42 U.S.C. § 1395nn, or that were submitted to Medicaid as a result of a violation of the Anti-Kickback Statute 42 U.S.C. § 1320a-7b(b) (the "State's Medicaid Claims"). The State has conferred with Relator, who has consented to this Motion. Based upon that consent and for the reasons discussed below, the Court should find that good cause exists for the State to intervene at this time and the Court should grant the State leave to intervene in the State's Medicaid Claims Relator brought on the State's behalf.

## I. Introduction

Relator Thomas P. Fischer ("Fischer") commenced this action on July 21, 2014, bringing claims on behalf of the United States and the State of Indiana under the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, (the "FCA") and the IFCA, respectively. (ECF No. 1). More than five years later, the Unites States filed its Notice of Election to Intervene in Part and to Decline in Part. (ECF No. 86). The part of the action in which the United States intervened was "that part of the action which alleges that defendant Community Health Network, Inc. violated the FCA by submitting claims to **Medicare**[2] that were referred by physicians with whom CHN

---

[2] Medicare is federal health insurance for people 65 or older, and some people under 65 with certain disabilities or conditions. A federal agency called the Centers for Medicare & Medicaid Services runs Medicare. Because it's a federal program, Medicare has set standards for costs and coverage.

…

2

had employment relationships that violated the Stark Law." *Ibid.* (emphasis added). The United States declined to intervene in the other allegations, including those having to do with **Medicaid**[3]. On December 20, 2023, the United States, Relator, and CHN filed a Joint Notice of Settlement between the United States and CHN. (ECF No. 710). That settlement addressed only the Medicare claims, however, and not the other issues in Relator's Second Amended Complaint, including allegations of Medicaid false claims. Given that the settlement did not address any of the claims brought on behalf of the State, Indiana now seeks leave to exercise its right to intervene and proceed with the prosecution of those claims for the following reasons:

1. Indiana has a predominant interest in prosecuting the State's Medicaid claims brought by the Relator on its behalf that were not resolved in the United States' settlement with CHN. See the discussion of *Polansky, infra.* in Section II.

2. While the State firmly believes that the Stark law applies to the State's Medicaid claims based on the interplay of Indiana's laws and federal

---

Medicare-related bills are paid from two trust funds held by the U.S. Treasury. Different sources (including payroll taxes and funds that Congress authorizes) fund the trust funds. People with Medicare pay part of the costs through things like monthly premiums for medical and drug coverage, deductibles, and coinsurance. https://www.hhs.gov/answers/medicare-and-medicaid/what-is-the-difference-between-medicare-medicaid/index.html.

[3] Medicaid is a public assistance program providing for payment of medical expenses for low-income and disabled patients. Funding for Medicaid is shared between the Federal Government and those states participating in the program. (ECF No. 134, ¶ 75.)

3

statutes, there is a dearth of case law and Indiana's interest in the question extends beyond this case. Counsel for the United States has indicated that it has no interest in pursuing those claims.

3. The State believes that its intervention in the case will facilitate a settlement of the action. Given that the State must give its approval of any settlement of the claims brought on its behalf, see generally Ind. Code § 5–11–5.7–4 (b), an approval and final settlement may be reached in a timelier manner.

4. Indiana asserts that the Defendants will not be unduly prejudiced by the State's intervention:

   a. The issues currently before the Court will be litigated whether the State intervenes or not.

   b. Indiana intends on adopting those portions of the Relator's Second Amended Complaint relating to the State's Medicaid Claims with few amendments.

   c. The State does not anticipate adding any additional defendants or new claims; therefore, it will be prosecuting the State's Medicaid Claims, which have previously been prosecuted by the Relator.

   d. Indiana does not anticipate that it will seek amendments to the current case management plan solely on the basis of its intervention.

   e. Indiana does not plan on serving its own discovery.

For these reasons, as discussed more fully below, the Court should find that good cause exists for the State to intervene at this time and grant the State leave to intervene in the State's Medicaid Claims Relator brought on the State's behalf.

## II.     Procedural History

After the Relator filed this *qui tam* action in July 2014, the United States filed its Complaint in Intervention while action was under seal and amended it on January 6, 2020. (ECF No. 96). On December 5, 2019, the State filed its Notice of Election to Decline Intervention. (ECF No. 92). The seal was lifted on December 23, 2019. (ECF Nos. 93 and 94). In March 2020, Relator filed a Motion for Leave to File a Second Amended Complaint, (ECF No. 108), which was granted over the objection of the Defendants and filed on December 2, 2020. (ECF No. 134). Most of 2021 appears to have been consumed by briefing on the motions to dismiss the amended complaints of the United States and the Relator, with the Court denying the motion to dismiss the United States' Complaint in Intervention on October 21, 2021, (ECF No. 239), and the Court granting in apart and denying in part the motion to dismiss the Relator's Second Amended Complaint on November 16, 2021, (ECF No. 256). From that date forward, the parties were responsible for generating another 452 docket entries, most of which were discovery dispute related.

### III. Discussion

a. **The FCA, *Polansky,* and late government intervention.**

The FCA and the IMFCA, which was modeled after the FCA[4], impose "civil liability on any person who presents false or fraudulent claims for payment to the … [g]overnment. The statute[s] [are] unusual in authorizing private parties—known as relators—to sue on the [g]overnment's behalf." *United States, ex rel. Polansky v. Executive Health Res., Inc.*, 599 U.S. 419, 423 (2023). The relator must file his complaint under seal and serve a copy of the complaint and his supporting evidence on the government. *Ibid.* at 425. The seal period is initially for 60 days, which is quite often extended for good cause, during which time the government investigates and decides whether to intervene and proceed with the action. *Ibid.* If during the seal period, the government intervenes, the government conducts the action; if the government declines to intervene, then the relator conducts the action. *Ibid.*

Even then the relator is not without constraints in his action. The government is a "real party in interest" in a qui tam action. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 930 (2009). As such it has "continuing

---

[4] Because the IFCA "mirrors the Federal FCA in all material respects," an analysis of provisions of the Federal FCA can be applied to the IFCA. *United States v. Indianapolis Neurosurgical Grp., Inc.*, No. 1:06-CV-1778-JMS-DML, 2013 WL 652538, at *7 n. 9 (S.D. Ind. Feb. 21, 2013) (quoting *Kuhn v. LaPorte Cty. Comprehensive Mental Health Council*, No. 3:06-CV-317-CAN, 2008 WL 4099883, at *3 n. 1 (N.D. Ind. Sept. 4, 2008)). Similarly, the IMFCA contains statutory provisions that are substantially the same as the FCA. See *United States v. Wagoner*, 2023 WL 1795906, at *6 (N.D. Ind. Feb. 7, 2023), reconsideration denied, 2023 WL 5030763 (N.D. Ind. Aug. 8, 2023).

rights in the action – not least the right to the lion's share of the recovery." *Polansky*, 599 U.S., at 425. Even if the government does not intervene, it will be entitled to not less than 70% of any recovery. 31 U.S.C. § 3730(d); Ind. Code § 5–11–5.7–6(a). Most importantly, at least in this case, if the government had previously declined to intervene, "upon a showing of good cause, a court may permit … the attorney general … to intervene at a later time." Ind. Code § 5–11–5.7–5(f).

In *Polansky*, the Supreme Court resolved the questions: (1) whether the government has the authority to dismiss an action if it declined to intervene during the seal period; and (2) what is the standard a district court should use in ruling on the government's motion? *Ibid.* at 428–429. The Court's analysis of the first question, which it answers in the affirmative, also lays out the groundwork for the State's late intervention.

The United States and the defendant argued in *Polansky* that the government's dismissal is always permissible, "even if the Government has never intervened." *Ibid.* at 429. The Supreme Court's analysis refuted that argument. First, it noted that when the Government declines to intervene, it is, by definition, not a party. *Ibid.* at 430, citing *Eisenstein*, 556 U.S. at 933. "[N]on-parties typically cannot do much of anything in a lawsuit. *Ibid.* However, the first two provisions of §3730(c)(2), Subparagraphs (2)(A) and (2)(B) [5], "grant the Government uncommon, even extraordinary, power: to dismiss and settle an action over the objection of the

---

[5] Ind. Code § 5–11–5.7–5(b) grants the State the same power as Subparagraph (2)(A) grants the Government and Ind. Code § 5–11–5.7–5(c) is similar to Subparagraph (2)(B).

7

person who brought it. That sort of authority would be odd to house in an entity that is taking no part in—indeed, has continually declined to join—a case." *Ibid.* at 430–431. A further indication that Paragraph 2 requires intervention comes from Subparagraphs (2)(C) and (2)(D)[6], which respectively "enables the court to restrict the relator's role when needed to prevent interference with—wait for it—the Government's prosecution of the case" and "allows the court to restrict the relator's participation if the defendant would otherwise suffer an 'undue burden.'" *Ibid.* at 431.

Then the Court's textual analysis showed how weak the Government's position was:

(i) 31 U.S.C. § 3730(c)(1) provides if the government intervenes, it will have the primary responsibility for prosecuting the action and will not be bound by the actions of the relator, who will have the right to continue as a party to the action, subject to the limitations set forth in Paragraph (2);

(ii) That last phrase in Paragraph (1) links Paragraph (2), which contains the power to dismiss and settle the action over the objection of the relator as well as to limit the role of the relator, to Paragraph (1);

(iii) Paragraph (2) is explicitly linked to Paragraph (1), which only applies when the government intervenes.

---

[6] Ind. Code § 5–11–5.7–5(d) combines the provisions of Subparagraph (2)(C). and (2)(D).

*Ibid.* at 430–432. The Court, "pil[ing] on a bit" holds that the Government's alternative construction (that intervention is not necessary for dismissal by the Government) would "create surplusage twice over" and would be a "double violation of the interpretative principle that 'every clause and word of a statute' should have meaning." *Ibid.* at 432. The Court holds that Paragraph (2) does not apply unless the government intervenes, at which time the Court moved onto Polansky's argument, that the Government could intervene but that the relator still had primary responsibility over the suit.

His argument relied upon the clause in 31 U.S.C. § 3730(c)(3)(B), which tells the court, when approving a post-seal-period intervention motion, "it may not 'limit [] the status and rights' of the relator."[7] Polansky argues that clause "prevents the court from giving the government 'primary responsibility' over the suit, including the power to dismiss." *Ibid.* at 433. The Supreme Court countered that Polansky's construction with "a straightforward reading of the FCA [to refute] Polansky's position" noting that while the Government can intervene during the seal period, "it too can intervene at a later date upon a showing of good cause." *Ibid.* at 432–433. A successful motion to intervene would then turn the Government into a party, at which point it "proceeds with the action" and assumes "primary responsibility" for the case's prosecution, causing Paragraph 2 to kick in. *Ibid.* at 433. Therefore, the right to dismiss [and to settle or limit the role of the relator] "attends a later

---

[7] Note that the IMFCA does not contain such language. See Ind. Code § 5–11–5.7–5(f). However, unlike Polansky, the relator here does not object to Indiana's intervention in the State's Medicaid Claims.

9

intervention." *Ibid*. Furthermore, the Supreme Court noted Polansky's position "would thus put the statute 'at war with itself.' The statute would direct one result (the Government assuming the primary role upon intervening) while telling the court not to allow that state of affairs." *Ibid*. at 434. "The better reading makes the instruction to the court congruent with the background operation of the statute… [t]he parties will occupy the same positions as they would have if the Government had intervened in the seal period." *Ibid*.

In summary, the takeaway from *Polansky* is that the government, after showing good cause may intervene at any time because it always has the predominant interest in a *qui tam* case. That interest does not diminish in importance because the government intervenes after the seal has been lifted. *Polansky*, 599 U.S., at 434–435. The "seal-period intervention" is not "an on-off switch" and the government has been enabled, "in the protection of its own interests, to reassess *qui tam* actions and change its mind." *Ibid*. at 435. The Government does not take a back seat to the relator – "[t]he suit remains, as it was in the seal period, one to vindicate the [g]overnment's interests." *Ibid*. Therefore, Indiana is not precluded from exercising it right to intervene in the State's Medicaid Claims merely because it did not elect to do so prior to the lifting of the seal.

b. **<u>What constitutes "good cause" for late intervention?</u>**

"The FCA does not define 'good cause.' As such, the Court must look at the language of the statute itself to determine if its meaning is plain. A court determines the plain meaning by examining the language and design of the statute as a whole." *Griffith, et al. v. Conn, et al.*, No. 11-157-ART-EBA, 2016 WL 3156497,

at *2 (E.D. KY April 22, 2016) (cleaned up). "It is a uniquely flexible and capacious concept, meaning simply a legally sufficient reason, and it is a standard the Government routinely satisfies to extend its time to investigate the relator's case under § 3730(b)(3)." *United States ex rel. USN4U, LLC v. Wolf Creek Fed. Servs.*, No. 1:17-cv-0558, 2023 WL 8480085, at *2 (N.D. Ohio Dec. 7, 2023) (cleaned up). The "good cause" standard requires the government to provide some justification for its untimely intervention. *United States ex rel. Ross v. Indep. Health Corp.*, No. 12-CV-299S, 2021 WL 3492917, at *2 (W.D.N.Y. Aug. 9, 2021) citing *Griffith*, 2016 WL 3156497, at *3.

In a thorough analysis of "good cause" in the context of a motion for a late intervention, the Middle District of Tennessee reviewed a number of cases dealing with that issue, including *Griffith* and *Indep. Health* in *United States ex rel. Cutler v. Cigna Corp., et al.,* No. 3:21-cv-00748, 2022 WL 3051010, 4 (M.D. Tenn. August 2, 2022). In *Cutler*, the Court noted:

> The Western District of New York has summarized the determination as whether the Government's reasons for (late) intervention outweigh any prejudice to the other parties, namely the relator or the defendants. The determination also involves consideration of the public interest (to the extent that it is distinguishable from the Government's interest). So the Court views the determination as whether (i) the Government's reasons for late intervention plus any separate interests of the public favoring intervention outweigh (ii) any prejudice to the relator, any prejudice to Defendants, and any separate interests of the public militating against late intervention.

*Cutler*, 2022 WL 3051010, at *9. Here, the State not only relies on its general interest in enforcing the IMFCA, but in particular its interest in ensuring that Indiana Medicaid members receive the same protection against improperly

11

influenced referrals that Hoosiers on Medicare receive. Additionally, the State has remained an active participant in the case since it declined to intervene, for example, Indiana filed a Statement of Interest during the briefing regarding leave for the Relator to file a Second Amended Complaint. (ECF No. 121). It has attended the hearings and status conferences in this case.

Second, the Relator's support of Indiana's motion weighs heavily in favor of allowing the State to intervene. *Indep. Health*, 2021 WL 3492917, at *3 (noting that the "good cause" requirement was intended protect the interests of the relator).

Finally, to the extent that Defendants assert they may be prejudiced by granting the State leave to intervene in the State's Medicaid Claims at this time, Indiana will only be intervening in some of the claims already brought by the Relator. The Defendants would have to defend themselves whether Indiana is permitted to intervene or not. The State does not plan on serving its own discovery, nor does it anticipate that it will seek amendments to the current case management plan solely on the basis of its intervention. While the Defendants might find Indiana's intervention at this date to be undesirable, "the fact that it is *undesirable* does not make it *prejudicial* in the sense applicable here. In the present context (as in so many others, such as Federal Rule of Evidence 403), "prejudice" in this context actually means, more precisely, *unfair* prejudice." *Cutler*, 2022 WL 3051010, at *9 (emphasis int the original.)

## IV.  Conclusion

For the foregoing reasons, the State of Indiana respectfully requests that the Court enter an Order granting it leave to intervene in the State's Medicaid Claims and granting such further relief the Court deems necessary and appropriate.

Respectfully submitted,

THEODORE E. ROKITA
Indiana Attorney General
Atty. No. 18857-49

Date: January 22, 2024

By: /s/ *Lawrence J. Carcare II*
Lawrence J. Carcare II
Deputy Attorney General
Attorney No. 18557-49

OFFICE OF INDIANA ATTORNEY GENERAL
Medicaid Fraud Control Unit
8720 Castle Creek Parkway E Dr., Suite 250
Indianapolis, IN 46250
317-915-5319
Lawrence.Carcare@atg.in.gov
Counsel for State of Indiana

13

**CERTIFICATE OF SERVICE**

I certify that on January 22, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

/s/ <u>*Lawrence J. Carcare II*</u>
By:   Lawrence J. Carcare II
Deputy Attorney General
Attorney No. 18557-49

OFFICE OF INDIANA ATTORNEY GENERAL
Medicaid Fraud Control Unit
8720 Castle Creek Parkway E Dr., Suite 250
Indianapolis, IN 46250
317-915-5319
Lawrence.Carcare@atg.in.gov
Counsel for State of Indiana