UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF INDIANA, ex rel. THOMAS P. FISCHER,<br><br>            Plaintiffs,<br><br>        v.<br><br>COMMUNITY HEALTH NETWORK, INC., *et al.*<br><br>            Defendants. | Case No. 1:14-CV-1215-RLY-MKK |

**COMMUNITY DEFENDANT'S POST-HEARING BRIEF
IN RESPONSE TO THE STATE OF INDIANA'S MOTION
FOR LEAVE TO INTERVENE IN RELATOR'S MEDICAID CLAIMS**

On February 16, 2024, the Court held a hearing on the State of Indiana's Motion for Leave to Intervene in Relator's Medicaid Claims [Dkt. 728]. Pursuant to the Court's order allowing post-hearing briefing, the Community Defendants[1] ("Community") file this brief.

**1. The Hearing**

At the hearing, the Court explored the State's claim that it had "good cause" for seeking late intervention in this litigation. In response to the Court's questions, the State argued that the "good cause" standard is a "very low threshold." *See* Transcript of the February 16, 2024 Hearing

---

[1] "Defendants" or "Community" refer collectively to the named defendants remaining in this action, including: Community Health Network, Inc.; Community Physicians of Indiana, Inc.; Visionary Enterprises, Inc.; North Campus Surgery Center, LLC d/b/a Community Surgery Center North; South Campus Surgery Center, LLC d/b/a Community Surgery Center South; East Campus Surgery Center, LLC d/b/a Community Surgery Center East; Hamilton Surgery Center, LLC d/b/a Community Surgery Center Hamilton; Howard Community Surgery Center, LLC d/b/a Community Surgery Center Kokomo; Northwest Surgery Center, LLC d/b/a Community Surgery Center Northwest; Hancock Surgery Center, Indianapolis Endoscopy Center, LLP d/b/a Community Endoscopy Center; Community Endoscopy Center, LLC d/b/a Community Digestive Center –Anderson; and North Campus Office Associates, L.P

("Tr.") at 4. The State also asserted that it was not "appropriate to consider the gap between when the State declined to intervene and the present motion or whether the State could have moved more quickly" when evaluating good cause. *See* Tr. at 4.

The Court asked the State about the specific reasons it cited as good cause for seeking late intervention. The State claimed that its predominant interest in prosecuting the State's Medicaid claims that were not resolved by the federal settlement supported a finding of good cause. Under questioning by the Court, however, the State acknowledged that this was a generalized interest and "nothing specific to this case" but "would apply in every single *qui tam* case and would have applied in August 2019." *See* Tr. at 9.

The State also argued that good cause was established by its interest in seeking to apply the Stark Law to Medicaid claims and the lack of case law on that issue. However, the State failed to articulate why that interest justified a good cause finding at this point in the litigation.

On the third point, the State claimed its intervention in the case would facilitate settlement of the action. The Court raised questions about what role the State would play and the limited nature of that role, given the relatively small value of the Medicaid claims involved in the case. Yet, the State was unable to explain how its intervention would help settle the case.

Finally, the State argued that its intervention would not unduly prejudice Community. But at the hearing, it became clear that upon intervention, the State planned to file its own complaint. *See* Tr. at 39. The State also clarified that the new complaint would be based in part on state statutes that are not currently the basis for any of the claims in the Relator's case[2] and would also add a

---

[2] As noted in its original motion, the State seeks to intervene "[p]ursuant to the Indiana Medicaid False Claims and Whistleblower Protection Act (the "IMFCA")," while acknowledging that the "Relator brought this action under the qui tam provisions of the IFCA, Ind. Code §5-11-5.5-4, and not under the qui tam provision of the IMFCA, Ind. Code §5-11-5.7-4…"

theory seeking to recover for Medicaid claims based on alleged violations of the Stark Law. *Id.* at 14-15. That new complaint, along with its newly alleged causes of action, would trigger Community's filing of a motion to dismiss under Rule 12 and would require Community to file an answer after the Court ruled on the motion to dismiss. *Id.* These steps would result in a series of procedural delays in the case.

### 2. Argument

Despite arguing that good cause is "a very low standard," the State did little at the hearing to demonstrate good cause to support its request to intervene more than four years after it elected to decline this action. Claiming good cause, the State relied on broad, generalized statements about its interest in the litigation and pointed to the recent settlement with the United States as the only new development contributing to the State's change of position on intervention. *See* Tr. at 35.

In *United States ex rel. Cutler v. Cigna Corp.*, 2022 WL 3051010, *9 (M.D. Tenn. Aug. 2, 2022), a case relied upon by the State, the Court noted that "the Government does not satisfy the good-cause standard if its sole interest is a mere generalized interest in enforcing the FCA (or enforcing the FCA with respect to particular kinds of conduct allegedly in violation of the FCA)." *Id.* at *10. "To hold otherwise," the Court noted, "would be to make the good-cause standard illusory, *i.e.*, effectively not standard at all." *Id*. Despite the holding in *Cutler*, the State offered nothing more than a generalized interest in enforcing the Indiana false claims statutes as good cause for its late intervention. Nor did the State provide a meaningful explanation of why that generalized interest is suddenly more pronounced or significant than it was at the time of its original declination.

The *Cutler* court also held "that it is appropriate to consider whether the Government could have moved to intervene more quickly *after declining intervention* than it actually did," (italics in

3

original) and noted that "the Government concede[d] that the Court can consider the gap between the Government declining intervention and the Government moving thereafter for leave for late intervention." *Id.* Thus, even if the claimed generalized interest was sufficient, the State offers nothing to address the four-year gap, during which it monitored the litigation from the sidelines, only now mounting a late-stage effort to intervene. There is no doubt that the State had many opportunities over the four years of litigation to change its position, but provides no explanation why intervention now is appropriate, much less supported by good cause.

Finally, the State's assertion that Community will not be unduly prejudiced by its late intervention was tested at the hearing. What became clear is that contrary to the State's claims regarding prejudice, to pursue its case, the State intends to file a new complaint, seeking to impose liability on new theories and relying on new statutes. The prejudice to Community of facing a new complaint at this stage of this advanced litigation is significant and undue. Allowing the State to sit on its hands for years and then, with no meaningful change in circumstance nor any new evidence or investigation to enter the litigation by filing a new complaint, will substantially prejudice Community and necessarily delay this already protracted litigation.[3]

**3.  Conclusion**

For the foregoing reasons, Community respectfully asks this Court to deny the State's motion for leave to intervene.

---

[3] When the State filed its motion for leave, it represented that the Relator consented to its intervention. However, the Relator has apparently changed his position on the State's request and argues that the intervention at this stage of the litigation will also prejudice his position.

4

Dated: March 22, 2024	Respectfully submitted,

        Marc T. Quigley, Atty. No. 21054-53
        Blake P. Holler, Atty. No. 30676-84
        Krieg DeVault LLP
        12800 North Meridian Street, Suite 300
        Carmel, Indiana  46032
        Telephone:  (317) 566-1110
        Facsimile:   (317) 636-1507
        mquigley@kdlegal.com
        bholler@kdlegal.com

        Thomas J. Costakis, Atty. No. 4314-49
        Libby Yin Goodknight, Atty. No. 20880-49
        Krieg DeVault LLP
        One Indiana Square, Suite 2800
        Indianapolis, Indiana  46204
        Telephone:  (317) 636-4341
        Facsimile:   (317) 636-1507
        tcostakis@kdlegal.com
        lgoodknight@kdlegal.com

        <u>/s/ Richard W. Westling</u>
        George B. Breen, *pro hac vice*
        Richard W. Westling, *pro hac vice*
        Erica Sibley Bahnsen, *pro hac vice*
        Elizabeth A. Harris, *pro hac vice*
        Daniel C. Fundakowski, *pro hac vice*
        Eleanor T. Chung, *pro hac vice*
        Epstein Becker Green
        1227 25th Street, NW, Suite 700
        Washington, DC  20037
        Telephone: (202) 861-1823
        Facsimile:  (202) 861-3523
        <u>GBreen@ebglaw.com</u>
        <u>RWestling@ebglaw.com</u>
        <u>ESibley@ebglaw.com</u>
        <u>EHarris@ebglaw.com</u>
        <u>DFundakowski@ebglaw.com</u>
        <u>EChung@ebglaw.com</u>

        *Attorneys for Community Defendants*