# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA, and THE STATE OF INDIANA, ex rel. THOMAS P. FISCHER, <br><br>          Plaintiffs, <br><br>    v. <br><br> COMMUNITY HEALTH NETWORK, INC., *et al.* <br><br>          Defendants. | Case No. 1:14-CV-1215-RLY-MKK |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO AMEND PRIOR ORDERS TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL

Marc T. Quigley, Atty. No. 21054-53
Blake P. Holler, Atty. No. 30676-84
KRIEG DeVAULT LLP
12800 North Meridian Street, Suite 300
Carmel, Indiana  46032
Telephone:  (317) 566-1110
Facsimile:  (317) 636-1507
mquigley@kdlegal.com
bholler@kdlegal.com

Thomas J. Costakis, Atty. No. 4314-49
Libby Y. Goodknight, Atty. No. 20880-49
KRIEG DeVAULT LLP
One Indiana Square, Suite 2800
Indianapolis, Indiana  46204
Telephone:  (317) 636-4341
Facsimile:  (317) 636-1507
tcostakis@kdlegal.com
lgoodknight@kdlegal.com

George B. Breen, *pro hac vice*
Richard W. Westling, *pro hac vice*
Erica Sibley Bahnsen, *pro hac vice*
Elizabeth A. Harris, *pro hac vice*
Daniel C. Fundakowski, *pro hac vice*
Eleanor T. Chung, *pro hac vice*
EPSTEIN BECKER GREEN
1227 25th Street, NW, Suite 700
Washington, DC  20037
Telephone: (202) 861-1823
Facsimile:  (202) 861-3523
GBreen@ebglaw.com
RWestling@ebglaw.com
ESibley@ebglaw.com
EHarris@ebglaw.com
DFundakowski@ebglaw.com
EChung@ebglaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... 3

INTRODUCTION ...................................................................................... 6

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 7

I.    Relator's Original Complaint............................................................. 7

II.    The Government's Investigation into Relator's FCA Allegations. ........................ 8

III.    The Government's Complaint in Intervention. ....................................... 8

IV.    Relator's Pursuit of Separate FCA Claims Notwithstanding the Government's Complaint in Intervention. ............................. 9

V.    Community's Opposition to Relator's Pursuit of Separate FCA Claims in the Second Amended Complaint. ............................. 9

VI.    The Settlement and Dismissal of the Government's Complaint in Intervention. ...................................... 11

ARGUMENT .............................................................................................. 11

I.    Standards Governing Permissive Interlocutory Appeals. ..................... 11

II.    The Prior Orders Involve a Controlling, Abstract Legal Question Especially Suited for Consideration on an Interlocutory Appeal. ........... 12

III.    The Legal Question Involved Is Contestable.......................................... 15

IV.    An Immediate Appeal of the Prior Orders May Materially Advance the Ultimate Termination of the Litigation. ........................ 24

CONCLUSION ............................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbey v. United States*,
   89 Fed. Cl. 425 (2009) .................................................................................. 25, 26

*Ahrenholz v. Bd. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ............................................................................ passim

*Aparicio v. Swan Lake*,
   643 F.2d 1109 (5th Cir. 1981) .......................................................................... 26

*Ashley W. v. Holcomb*,
   No. 3:19-cv-00129-RLY-MPB, 2021 WL 5121146 (S.D. Ind. Sept. 29, 2021) ................ 14, 16

*Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*,
   Nos. 08-C-953 & 09-C-108, 2010 WL 338089 (E.D. Wis. Jan. 20, 2010) ............................ 16

*Brown v. Smith*,
   827 F.3d 609 (7th Cir. 2016) ............................................................................ 13, 14

*City of Joliet v. Mid-City Nat'l Bank*,
   No. 05-C-6746, 2008 WL 4889038 (N.D. Ill. June 13, 2008), *aff'd sub nom.*,
   *City of Joliet v. New W., L.P.*, 562 F.3d 830 (7th Cir. 2009) .................................... 15

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249, 112 S. Ct. 1147, 117 L. Ed. 2d 391 (1992) ............................................ 19

*Gaffney v. Riverboat Servs. of Ind., Inc.*,
   451 F.3d 424 (7th Cir. 2006), *cert. denied* ........................................................ 13

*Groves v. United States*,
   941 F.3d 315 (7th Cir. 2019) ............................................................................ 12

*Harris v. Fletcher Chrysler Prods., Inc.*,
   458 F. Supp. 2d 748 (S.D. Ind. 2006) .................................................................. 19

*Horwitz v. Alloy Auto. Co.*,
   957 F.2d 1431 (7th Cir. 1992) .......................................................................... 11

*Johnson v. Burken*,
   930 F.2d 1202 (7th Cir. 1991) .......................................................................... 14, 15

*Max Daetwyler Corp. v. Meyer*,
   575 F. Supp. 280 (E.D. Pa. 1983) ...................................................................... 23

*Motorola Mobility LLC v. AU Optronics Corp.*,
   746 F.3d 842 (7th Cir. 2014), *vacated on the merits on reh'g*,
   775 F.3d 816 (7th Cir. 2015), *cert. denied* ........................................................ 24

*Nat'l Res. Def. Counsel v. Ill. Power Res., LLC*,
   Case No. 1:13-cv-01181-JBM-TSH, 2016 WL 9650981 (C.D. Ill. Nov. 2, 2016) ........... 24, 25

*Ortiz v. Jordan*,
   562 U.S. 180 (2011) ...................................................................................... 13

*Pharm. Indus. Average Wholesale Price Litig.*,
   No. 01-12257-PBS, 2007 WL 4287572 (D. Mass. Dec. 6, 2007) .......................................... 23

*Sterk v. Redbox Automated Retail, LLC*,
   672 F.3d 535 (7th Cir. 2012) ............................................................................ 24, 25

*T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*,
   Case No. 1:20-cv-01699-TWP-MG, 2021 WL 2946447 (S.D. Ind. July 14, 2021).......... 15, 16
*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*,
   359 F. Supp. 3d 1088 (D. Utah 2019)............................................................................... passim
*United States ex rel. Chandler v. Hektoen Inst. for Med. Research*,
   35 F. Supp. 2d 1078 (N.D. Ill. 1999), *reconsidered on other grounds*,
   118 F. Supp. 2d 902 (N.D. Ill. 2000), *rev'd on other grounds*,
   277 F.3d 969 (7th Cir. 2002), *aff'd on other grounds*,
   538 U.S. 119 (2003)................................................................................................................. 18
*United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*,
   370 F. Supp. 2d 993 (N.D. Cal. 2005)..................................................................................... 14
*United States ex rel. Ormsby v. Sutter Health*,
   444 F. Supp. 3d 1010 (N.D. Cal. 2020) .................................................................................. 23
*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
   599 U.S. 419 (2023)............................................................................................................ 23, 24
*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
   521 F. Supp. 3d 265 (E.D.N.Y. 2021) .............................................................. 13, 16, 24, 25
*United States ex rel. Rauch v. Oaktree Med. Ctr., P.C.*,
   C/A No. 6:15-cv-01589-DCC, 2020 WL 1065955 (D.S.C. Mar. 5, 2020)............................. 23
*United States ex. rel. Roby v. Boeing Co.*,
   302 F.3d 637 (6th Cir. 2002), *cert. denied*............................................................................. 13
*United States ex rel. Serrano v. Oaks Diagnostics, Inc.*,
   568 F. Supp. 2d 1136 (C.D. Cal. 2008) ................................................................................... 19
*United States v. Carrington Mortg. Servs., LLC*,
   No. 1:16-cv-00920-RLY-MJD, 2018 WL 372348 (S.D. Ind. Jan. 10, 2018)........................ 16
*United States v. HealthNet, Inc.*,
   No. 1:19-cv-04258-JRS-DML, 2021 WL 4477889 (S.D. Ind. Sept. 30, 2021), *appeal filed*... 22
*Van Straaten v. Shell*,
   813 F. Supp. 2d 1005 (N.D. Ill. 2011), *rev'd on the merits*,
   678 F.3d 486 (7th Cir. 2012) ................................................................................................... 16
*Weir v. Propst*,
   915 F.2d 283 (7th Cir.1990) .............................................................................................. 25, 26

## Statutes

28 U.S.C. § 1292 ............................................................................................ 7, 11, 12, 27
31 U.S.C. § 3730 ..................................................................................................... passim
31 U.S.C. § 3731 ................................................................................................. 16, 17, 19

## Rules

Fed. R. App. P. 5(a)(3).............................................................................. 7, 12, 25, 27
Fed. R. Civ. P. 2 ................................................................................................................ 17
Fed. R. Civ. P. 3 ................................................................................................................ 17

**Other Authorities**

*Action*, BLACK'S LAW DICTIONARY (11th ed. 2019)........................................................................ 17

S. Rep. No. 99-345 (1986) ........................................................................................................... 20

# INTRODUCTION

On November 25, 2020, the Court entered an Order Granting Leave for Relator to File a Second Amended Complaint ("Order Granting Leave"). [Doc. 133.] On November 16, 2021, the Court issued an Entry denying Defendants'[1] Motion to Dismiss Relator's Second Amended Complaint. [Doc. 256.] Both of the Court's prior orders implicate a significant, threshold legal question: whether Relator can lawfully pursue separate claims under the False Claims Act ("FCA") – ostensibly on behalf of the United States Government – after the Government has intervened and filed its own Complaint in Intervention. It was Defendants' position from the outset that neither the plain language of the FCA nor its legislative history allows Relator to pursue a purported *qui tam* action on a separate complaint once the Government has intervened and brought its own FCA claims.

The procedural posture of this case has fundamentally changed since the Court initially decided its prior orders, making the prior orders ripe for immediate appellate review. Community and the Government finalized a settlement of the Government's FCA claims and, together with Relator, filed a Joint Stipulation of Dismissal of the Government's Complaint in Intervention. [Doc. 729.] Earlier today, the Court issued a marginal entry acknowledging the dismissal of the Complaint in Intervention. [Doc. 788.] The only FCA claims remaining are Relator's separate FCA claims in his Second Amended Complaint. [Doc. 86; Doc. 96; Doc. 134.] Dismissal of the

---

[1] The current defendants include Community Health Network, Inc. ("Community"), Community Physicians of Indiana, Inc., Visionary Enterprises, Inc., North Campus Surgery Center, LLC d/b/a Community Surgery Center North, South Campus Surgery Center, LLC d/b/a Community Surgery Center-South, East Campus Surgery Center d/b/a Community Surgery Center East, Hamilton Surgery Center, LLC d/b/a Community Surgery Center Hamilton, Howard Community Surgery Center d/b/a Community Surgery Center Kokomo, Northwest Surgery Center, LLC d/b/a Community Surgery Center-Northwest, Hancock Surgery Center, Indianapolis Endoscopy Center, LLP d/b/a Community Endoscopy Center, Community Endoscopy Center, LLC d/b/a Community Digestive Center-Anderson, and North Campus Office Associates, L.P. (collectively, "Defendants").

Government's Complaint in Intervention renews and brings to the forefront the question of whether Relator should have been allowed to pursue FCA claims on behalf of the Government that are separate from the FCA claims the Government elected to bring and eventually settle.

The Court's prior orders involve a controlling question of law over which there is substantial ground for difference of opinion. Indeed, whether a relator can lawfully pursue separate FCA claims after the Government has intervened and filed its own complaint in intervention is a purely abstract legal question that turns on the statutory application of the FCA and is especially suited for consideration on an interlocutory appeal.

An immediate appeal of the Court's prior orders may materially advance the ultimate termination of this litigation. Reversal of the Court's prior orders and dismissal of Relator's separate FCA claims would dramatically streamline and expedite the resolution of what is left of this case after dismissal of the Government's Complaint in Intervention. The interests of judicial economy and preservation of party resources are now materially at issue, more so than when the prior orders were entered. Now that the Government's intervened FCA claims have been resolved and dismissed, Defendants request that the Court amend its prior orders under Rule 5(a)(3) of the Federal Rules of Appellate Procedure to include the requisite findings under 28 U.S.C. § 1292(b) and certify the prior orders for interlocutory appeal.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The procedural history of this *qui tam* action is unusual in light of Relator's FCA claims in his Second Amended Complaint, which he purports to bring on the Government's behalf but in which the Government declined to intervene.

## I.    Relator's Original Complaint.

Relator initiated this *qui tam* action with the filing of a sealed Complaint on July 21, 2014. [Doc. 1.] In his original Complaint, Relator alleged that Defendants violated the FCA and the

Indiana False Claims and Whistleblower Protection Act. Relator accused Defendants of engaging in a fraudulent "scheme to pay improper compensation to physicians to induce them to illegally refer patients, including Medicare and Medicaid patients, to its hospitals and associated medical facilities for medical services paid for by government-funded health care programs, including 'designated health services' as defined by the Stark Law." [Doc. 1 at ECF p. 3, ¶ 2.] Relator's original Complaint also presented several personal employment claims against Community.

## II.    **The Government's Investigation into Relator's FCA Allegations.**

The Government investigated Relator's FCA allegations for over five years. During the investigation, Community produced 1.2 million pages of documents. In addition, the Government deposed multiple witnesses. Early in the investigation, Relator filed a First Amended Complaint under seal. [Doc. 108 at ECF p. 2, ¶ 2.]

## III.    **The Government's Complaint in Intervention.**

On August 7, 2019, the Government filed a Notice of Election to Intervene in Part and to Decline to Intervene in Part. [Doc. 86.] The Government explained that it was intervening "in that part of the action which alleges that defendant Community Health Network, Inc. violated the FCA by submitting claims to Medicare that were referred by physicians with whom Community had employment relationships that violated the Stark Law." [Doc. 86 at ECF p. 1.]

The Government filed its Complaint in Intervention against Community on January 6, 2020. [Doc. 96.] In its Complaint in Intervention, the Government alleged that Community "violated the Stark Law" by "pa[ying] physicians in excess of fair market value for their services or in a manner that took into account the volume or value of their referrals in order to secure their referrals." [Doc. 96 at ECF p. 72, ¶ 350.] According to the Government, Community "knowingly submitted and caused the submission of claims to Medicare that were false because they resulted from violations of . . . the Stark Law." [Doc. 96 at ECF p. 1] (internal quotations omitted). The

Complaint in Intervention asserted counts against Community for presenting and causing false claims in violation of the FCA, making false statements material to false claims in violation of the FCA, maintaining false records material to the obligation to pay in violation of the FCA, as well as common law causes of action for payment by mistake and unjust enrichment. [Doc. 96 at ECF pp. 72-75, ¶¶ 351-370.]

## IV.   Relator's Pursuit of Separate FCA Claims Notwithstanding the Government's Complaint in Intervention.

On March 3, 2020, after the Government had intervened and filed its own Complaint in Intervention, Relator requested leave to file a Second Amended Complaint purporting to bring FCA claims on behalf of the Government that were separate from the FCA claims asserted in the Complaint in Intervention. [Doc. 108.] In his Second Amended Complaint, and notwithstanding the Government's Complaint in Intervention, Relator claims to be seeking the

> recover[y] [of] damages and civil penalties on behalf of the [Government] . . . , arising from Defendants' scheme to defraud the federal and state governments by entering into improper arrangements and deals that resulted in Defendants paying above fair market value physician compensation to illegally induce physicians to refer Medicare, Medicaid and other government insurance patients to Defendants' hospitals and associated medical entities

in alleged violation of the Stark Law. [Doc. 134 at ECF pp. 4-5, ¶¶ 2-4.] Relator's Second Amended Complaint incorporates by reference "the Government's Complaint in Intervention . . . to the extent not inconsistent [therewith.]" [Doc. 134 at ECF p. 4, ¶ 1; *see also* Doc. 134 at ECF p. 17, ¶ 78.]

## V.   Community's Opposition to Relator's Pursuit of Separate FCA Claims in the Second Amended Complaint.

Community opposed Relator's Motion for Leave to file his Second Amended Complaint after the Government intervened and filed its own Complaint in Intervention. [Doc. 115.] Relying

on the plain language and legislative history of the FCA, and the statutory analysis of the FCA in *United States ex rel. Brooks v. Stevens-Henager College, Inc.*, 359 F. Supp. 3d 1088 (D. Utah 2019), Community argued that Relator could not pursue FCA claims on behalf of the Government once the Government intervened, even in part. [Doc. 115 at ECF pp. 13-20.] Once the Government intervenes in a *qui tam* action, "it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the [relator] bringing the action." 31 U.S.C. § 3730(c)(1). "Allowing relators to pursue . . . non-intervened claims [once the Government intervenes] is in direct conflict with this provision" of the FCA and, therefore, the FCA does not permit a relator to "pursue claims that are separate from the Government's to recover an increased award." *Brooks*, 359 F. Supp. 3d at 1121-22. Consistent with this statutory interpretation of the FCA, Community maintained that Relator's Second Amended Complaint had been superseded by the Government's Complaint in Intervention and was of "no legal effect." [Doc. 115 at ECF pp. 3, 19-20.]

On November 25, 2020, the Court entered its Order Granting Leave, permitting Relator to file his Second Amended Complaint and pursue FCA claims separate from those asserted by the Government in its Complaint in Intervention. [Doc. 133.] In later moving to dismiss Relator's Second Amended Complaint, Defendants reiterated that the Government, having intervened in this *qui tam* action, had "primary responsibility for prosecuting the claims related to physician compensation" such that Relator could "not proceed with his physician compensation claims." [Doc. 160 at ECF p. 54.] On November 16, 2021, the Court issued its Entry on Defendants' Motion to Dismiss rejecting this argument.[2] [Doc. 256.]

---

[2] While the Motion to Dismiss and Entry addressed several issues and multiple claims in Relator's Second Amended Complaint, Defendants' focus here is on the Court's ruling allowing Relator to proceed on his separate FCA claims notwithstanding the Government's Complaint in Intervention.

## VI.    <u>The Settlement and Dismissal of the Government's Complaint in Intervention.</u>

The Court's Order Granting Leave and Entry are both interlocutory orders. The procedural posture of this case has fundamentally changed since the Court initially decided its prior orders, making the prior orders ripe for immediate appellate review. Community and the Government finalized a settlement of the Government's FCA claims and, together with Relator, filed a Joint Stipulation of Dismissal of the Government's Complaint in Intervention on January 22, 2024. [Doc. 729.] On April 2, 2024, the Court issued a marginal entry acknowledging that "[t]he United States' Complaint in Intervention . . . is dismissed with prejudice." [Doc. 788.] Now the only FCA claims remaining are Relator's separate FCA claims in his Second Amended Complaint. [Doc. 86; Doc. 96; Doc. 134.] The dismissal of the Government's Complaint in Intervention renews and brings to the forefront the question of whether Relator should have been allowed to pursue FCA claims on behalf of the Government that are separate from the FCA claims the Government elected to bring and eventually settle.

ARGUMENT

## I.    <u>Standards Governing Permissive Interlocutory Appeals.</u>

District courts are empowered to certify for immediate appeal certain interlocutory orders that would not otherwise be appealable as of right. 28 U.S.C. § 1292(b). A district court may certify an order for interlocutory appeal when it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" *Id.* Requests for permission to take an interlocutory appeal should not be viewed with hostility. *See Horwitz v. Alloy Auto. Co.*, 957 F.2d 1431, 1435 (7th Cir. 1992) (rejecting notion that the Seventh Circuit is "hostile to appropriate interlocutory appeals under the applicable rules"). On the contrary, the Seventh Circuit has said that "district judges *should* use section

1292(b) when it should be used[.]" *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000) (emphasis added). The Seventh Circuit has emphasized its duty and "the duty of the district court . . . to allow an immediate appeal to be taken when the statutory criteria are met[.]" *Id.*

Under section 1292(b), "when a district court enters 'an order not otherwise appealable' and concludes that it meets the statutory standards for interlocutory appeal, it 'shall so state in writing in such order.' That statement may appear in the merits order when it issues or be added by amendment" at a later time. *Groves v. United States*, 941 F.3d 315, 324 (7th Cir. 2019) (quoting 28 U.S.C. § 1292(b)) (citing Fed. R. App. P. 5(a)(3)) (internal citation and emphasis omitted). Under Appellate Rule 5(a)(3), "the district court may amend its order, either on its own or in response to a party's motion, to include the required permission or statement" for an interlocutory appeal. Fed. R. App. P. 5(a)(3). Now that the Government's intervened FCA claims have been resolved and dismissed, this Court would be well within its authority to amend its prior orders under Appellate Rule 5(a)(3) to include the requisite findings under 28 U.S.C. § 1292(b) and certify the prior orders for interlocutory appeal. Defendants address, in turn, the conditions that make an interlocutory appeal appropriate at this critical juncture.

## II.    The Prior Orders Involve a Controlling, Abstract Legal Question Especially Suited for Consideration on an Interlocutory Appeal.

Whether a relator can lawfully pursue separate FCA claims after the Government has intervened and filed its own complaint in intervention is a purely abstract legal question that is ripe for immediate appellate review. This strictly legal question turns on the statutory application of the FCA, making it especially suited for consideration on an interlocutory appeal. Reversal of the Court's prior orders on this issue would have serious practical and legal ramifications for the conduct of the litigation, making this question controlling as well.

Interlocutory orders merit certification for immediate appeal when they involve "an abstract issue of law . . . suitable for determination by an appellate court without a trial record." *Ahrenholz*, 219 F.3d at 677. If a case "turn[s] on a pure question of law, something the court of appeals [can] decide quickly and cleanly without having to study the record, the [appellate] court should be enabled to do so without having to wait till the end of the case." *Id.* As such, district courts are empowered to certify interlocutory orders that "involve contests not about what occurred, or why an action was taken or omitted, but disputes about the substance and clarity of pre-existing law." *Brown v. Smith*, 827 F.3d 609, 613 (7th Cir. 2016) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)).

It is well settled that matters of statutory interpretation are questions of law that the Seventh Circuit reviews de novo. *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 445 (7th Cir. 2006), *cert. denied*. Hence, a "question of the meaning of a statutory . . . provision" represents the classic abstract legal question appropriate for consideration on an interlocutory appeal. *See Ahrenholz*, 219 F.3d at 676. This includes statutory interpretations of the FCA, which can be resolved with minimal factual inquiry. *See*, *e.g.*, *United States ex. rel. Roby v. Boeing Co.*, 302 F.3d 637, 640 (6th Cir. 2002) (accepting interlocutory appeal on whether liability under the FCA could be imposed due to a defective product and whether a separate regulation, the High-Value Items Clause, operated as a defense to FCA damages), *cert. denied*.

Whether a relator can lawfully pursue separate FCA claims after the Government has intervened and filed its own complaint in intervention turns on the statutory application of the FCA and is precisely the type of abstract legal question that can and should be resolved on an interlocutory appeal. *See United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 276 (E.D.N.Y. 2021) (finding the issue of whether an FCA claim "may

properly be *pursued*" to be a pure question of law appropriate for interlocutory review). To resolve this question, the Seventh Circuit will only need to consider three undisputed procedural facts: (1) Relator filed claims under the FCA; (2) the Government intervened on some of those claims, filing its own Complaint in Intervention; and (3) Relator subsequently brought separate FCA claims in a Second Amended Complaint, forcing Community to defend against two different FCA complaints in a single action. Whether Relator may pursue his separate FCA claims comes down to a statutory – not a factual – analysis. It is a "dispute[] about the substance and clarity of pre-existing law" – namely, the FCA. *See Brown*, 827 F.3d at 613 (citation omitted). The Seventh Circuit can "decide [this issue] quickly and cleanly without having to study the record." *See Ahrenholz*, 219 F.3d at 677.

The purely abstract question of law arising from the Court's prior orders is also controlling in that it is "serious to the conduct of the litigation, either practically or legally." *See Johnson v. Burken*, 930 F.2d 1202, 1206 (7th Cir. 1991). If appellate reversal would result in dismissal of a plaintiff's claim, the question is controlling. *See Ashley W. v. Holcomb*, No. 3:19-cv-00129-RLY-MPB, 2021 WL 5121146, at *4 (S.D. Ind. Sept. 29, 2021). "[A] question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." *Johnson*, 930 F.2d at 1206. In the FCA context, a question is controlling when, "[d]epending on how the . . . issues are resolved, the [plaintiff] might have two FCA claims, one FCA claim, [or] no claim at all . . . ." *United States ex rel. Huangyan Import & Export Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1005 (N.D. Cal. 2005). The controlling nature of a legal question in a *qui tam* case is particularly compelling when "the stakes are large" and, "after trebling and civil penalties, there are tens of millions of dollars in controversy." *Id.*

Here, reversal of the Court's prior orders would have serious practical and legal ramifications for the conduct of the litigation. If the Seventh Circuit determines that Relator should not have been allowed to pursue the separate FCA claims in his Second Amended Complaint after the Government intervened and filed its own Complaint in Intervention, that would be the end of Relator's *qui tam* action. *See id.* Absent any FCA claims on behalf of the Government, this case will transform from a complex *qui tam* action against a litany of defendants with potentially hundreds of millions of dollars in controversy to a straightforward employment dispute between Relator and Community, his former employer. *See id.* Whether a relator can lawfully pursue separate FCA claims after the Government has intervened and filed its own complaint in intervention is precisely the type of controlling legal question that the vehicle of an interlocutory appeal was intended to address. *See Johnson*, 930 F.2d at 1206.

### III.    The Legal Question Involved Is Contestable.

Whether Relator can advance separate FCA claims once the Government intervenes and files its own Complaint in Intervention is also contestable and warrants the Seventh Circuit's immediate guidance on interlocutory review. A substantial ground for difference of opinion exists where conflicting authorities support either side of the issue. *See T.S. ex rel. T.M.S. v. Heart of CarDon, LLC*, Case No. 1:20-cv-01699-TWP-MG, 2021 WL 2946447, at *9 (S.D. Ind. July 14, 2021) (observing that issues where "other courts have adopted conflicting positions regarding the issue of law proposed for certification" are properly considered on an interlocutory appeal) (emphasis omitted).

Novel issues the Seventh Circuit has not yet addressed are likewise contestable. *See City of Joliet v. Mid-City Nat'l Bank*, No. 05-C-6746, 2008 WL 4889038, at *2 (N.D. Ill. June 13, 2008), *aff'd sub nom.*, *City of Joliet v. New W., L.P.*, 562 F.3d 830 (7th Cir. 2009). Issues of first impression are contestable because the absence of precedent creates a substantial ground for

difference of opinion within a circuit. *See Van Straaten v. Shell*, 813 F. Supp. 2d 1005, 1020 (N.D. Ill. 2011), *rev'd on the merits*, 678 F.3d 486 (7th Cir. 2012); *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, Nos. 08-C-953 & 09-C-108, 2010 WL 338089, at *4 (E.D. Wis. Jan. 20, 2010). As such, whether "the Seventh Circuit has yet to address [a] question" and whether "there are decisions that lend support to both parties' positions" are "important" elements of contestability. *Ashley W.*, 2021 WL 5121146 at *4; *see also Quartararo*, 521 F. Supp. 3d at 277-78 (certifying novel question of liability under the FCA for interlocutory appeal).

The issue Defendants present for immediate appellate review is contestable. *See Heart of CarDon*, 2021 WL 2946447 at *9. As raised in Community's Response in Opposition to Relator's Motion for Leave of Court to File Second Amended Complaint, [Doc. 115 at ECF pp. 13-20], and in Defendants' Brief in Support of Motion to Dismiss Relator's Second Amended Complaint, [Doc. 160 at ECF p. 54], at least one district court has found that a relator may not pursue FCA claims on behalf of the Government once the Government has already intervened, even in part. *See Brooks*, 359 F. Supp. 3d at 1127. Defendants' position is supported not only by *Brooks*, but also by the plain language and legislative history of the FCA.

"The FCA is a unique statute in that it grants a private citizen the right to bring claims that belong to the Government." *United States v. Carrington Mortg. Servs., LLC*, No. 1:16-cv-00920-RLY-MJD, 2018 WL 372348, at *8 (S.D. Ind. Jan. 10, 2018). Under the FCA, a relator "may bring *a civil action* for a violation of [the FCA] for the person and for the United States Government." 31 U.S.C. § 3730(b)(1) (emphasis added); *see also* 31 U.S.C. § 3731(b) (establishing the statute of limitations for when "[a] civil action under [the *qui tam* provisions of the FCA]" must be brought). "The action shall be brought in the name of the Government." 31 U.S.C. § 3730(b)(1). The terms "civil action" or "action" – as they are used in the FCA – have a well-understood and

common meaning. *See Action*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "civil action" as "[a]n action brought to enforce, redress, or protect a private or civil right; a noncriminal litigation" and defining "action" as "[a] civil or criminal judicial proceeding"). The Federal Rules of Civil Procedure have long recognized that "[t]here is one form of action – the civil action." Fed. R. Civ. P. 2. "A civil action is commenced by filing a complaint with the court." Fed. R. Civ. P. 3. Therefore, "a relator commences a civil [*qui tam*] action [under the FCA] by filing a complaint with the court." *Brooks*, 359 F. Supp. 3d at 1117.

Once the relator initiates a civil action for violation of the FCA, "[t]he Government may elect to intervene and proceed with *the action* within 60 days after it receives both the complaint and the material evidence and information." 31 U.S.C. § 3730(b)(2) (emphasis added). "The Government may, for good cause shown, move the court for extensions of time during which the complaint remains under seal . . . ." 31 U.S.C. § 3730(b)(3).

> Before the expiration of the 60-day period [and] any extensions . . . , the Government shall – (A) proceed with the action, in which case the action shall be conducted by the Government; or (B) notify the court that it declines to take over the action, in which case the [relator] bringing the action shall have the right to conduct the action.

31 U.S.C. § 3730(b)(4).

"If the Government proceeds with *the action*, it shall have the primary responsibility for prosecuting *the action*, and shall not be bound by an act of the [relator] bringing the action." 31 U.S.C. § 3730(c)(1) (emphases added). To that end,

> [i]f the Government elects to intervene and proceed with a[] [*qui tam*] action . . . , the Government may file its own complaint or amend the complaint of [the relator] who has brought [the] action . . . to clarify or add detail to the claims in which the Government is intervening and to add any additional claims with respect to which the Government contends it is entitled to relief.

31 U.S.C. § 3731(c).

While a relator has "the right to continue as a party to the action" once the Government intervenes, the relator's control of the litigation is subject to significant limitations. 31 U.S.C. § 3730(c)(1). The Government may even settle or "dismiss the action notwithstanding the objections of the [relator] initiating the action . . . ." 31 U.S.C. § 3730(c)(2); *see also United States ex rel. Chandler v. Hektoen Inst. for Med. Research*, 35 F. Supp. 2d 1078, 1081 (N.D. Ill. 1999) (stating that "[section] 3730(c)(2) gives the government the authority to dismiss or settle the action even if the relator objects", *reconsidered on other grounds*, 118 F. Supp. 2d 902 (N.D. Ill. 2000), *rev'd on other grounds*, 277 F.3d 969 (7th Cir. 2002), *aff'd on other grounds*, 538 U.S. 119 (2003). Moreover, the court may impose restrictions on the relator if: (1) the Government shows that "unrestricted participation during the course of the litigation by the [relator] initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for the purpose[] of harassment," 31 U.S.C. § 3730(c)(2)(C); or (2) the defendant shows that "unrestricted participation during the course of the litigation by the [relator] initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense[.]" 31 U.S.C. § 3730(c)(2)(D). Those restrictions include "(i) limiting the number of witnesses the [relator] may call; (ii) limiting the length of the testimony of such witnesses; (iii) limiting the [relator's] cross-examination of witnesses; [and] (iv) otherwise limiting the participation by the [relator] in the litigation." 31 U.S.C. § 3730(c)(2)(C). Defendants maintain that, under the foregoing language of the FCA, Relator had no authority to file a Second Amended Complaint that pursued FCA claims on behalf of the Government notwithstanding the Government's own Complaint in Intervention.

The fact that the Government only intervened "in part" has no bearing on the analysis for two reasons. [Doc. 86 at ECF p. 1.] First, many of Relator's FCA allegations in his Second

Amended Complaint are redundant or duplicative of the Government's Complaint in Intervention. The Second Amended Complaint not only parrots the Government's Complaint in Intervention in many places, but it also includes a wholesale incorporation by reference of the Government's Complaint in Intervention. [Doc. 134 at ECF p. 4, ¶ 1]. However, the Government's Complaint in Intervention "superseded" Relator's pleadings and was "the operative pleading." *See Brooks*, 359 F. Supp. 3d at 1127; *see also United States ex rel. Serrano v. Oaks Diagnostics, Inc.*, 568 F. Supp. 2d 1136, 1140 (C.D. Cal. 2008) ("The intervening complaint . . . alters the complaint already filed [by the relator]" and is an amendment to the relator's complaint.); 31 U.S.C. § 3731(c) (providing that "the Government may file its own complaint or amend the complaint of [the relator]"). Indeed, the Government's Complaint in Intervention was dismissed as of the filing of the Joint Stipulation of Dismissal, begging the question as to what is left of Relator's Second Amended Complaint even under the theory of the Court's prior orders.

Second, there is nothing in the express provisions of the FCA that suggests a relator has the right to prosecute non-intervened FCA claims once the Government has intervened in the *qui tam* action, and "no such right exists." *Brooks*, 359 F. Supp. 3d at 1120. To allow a relator to maintain non-intervened FCA claims in tandem with the Government's own FCA claims would read a provision into the statute that does not exist, and amount to a judicial expansion of an otherwise carefully crafted statutory scheme. *See id.* at 1120-21; *see also Harris v. Fletcher Chrysler Prods., Inc.*, 458 F. Supp. 2d 748, 751 (S.D. Ind. 2006) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1147, 117 L. Ed. 2d 391 (1992)) ("[T]he 'cardinal canon' of statutory construction is that 'courts must presume that a legislature says in a statute what it means and means in a statute what i[t] says there'; '[w]hen the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.'").

The district court in *Brooks* agreed with Defendants and addressed this issue as follows:

> [I]f the Government intervenes, it has "the *primary responsibility for prosecuting the action, and shall not be bound by an act of the* [*relator*]." § 3730(c)(1) (emphasis added). Allowing relators to pursue the non-intervened claims is in direct conflict with this provision. The Government would not have primary responsibility for conducting the action if, after the Government files a complaint in intervention, a relator's complaint remained operative and the relator retained the right to amend that complaint, adding parties and claims to the Government's action. And it is unclear how the Government is not "bound by an act of [a relator]" if the relator can add allegations, defendants, and claims to the Government's action.

359 F. Supp. 3d at 1121. The district court's logic in *Brooks* is confirmed by legislative history:

> Subsection (b)(4) of section 3730 restates current law which provides that within the initial 60-day period, or before expiration of any stays granted by the court, the Government must indicate whether it will intervene and proceed with the action or decline to enter. *If the Government takes over the civil false claims suit, the litigation will be conducted solely by the Government. If the Government declines, the suit will be litigated by the individual who brought the action.*

S. Rep. No. 99-345, at 23 (1986) (emphasis added).

Other provisions in the FCA support a decision that when the Government intervenes, it takes over the entire *qui tam* action initiated on its behalf, thereby foreclosing the relator's ability to proceed even as to non-intervened FCA claims. For example, section 3730(d)(1) states that "[i]f the Government proceeds with *an action* brought by a [relator] under subsection (b), such [relator] shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim[.]" 31 U.S.C. § 3730(d)(1) (emphasis added). Section 3730(d)(2), in turn, provides that "[i]f the Government does not proceed with *an action* under this section, the [relator] bringing the action or settling the claim shall receive . . . not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement . . . ." 31 U.S.C. § 3730(d)(2) (emphasis added). Therefore, "a relator's potential award [in a *qui tam* action brought on behalf of

the Government] depends on whether the Government intervenes in the action, not on whether a relator prevails on the non-intervened claims." *Brooks*, 359 F. Supp. 3d at 1121.

The recent developments in this case underscore the importance of the position the Defendants took at the outset. The *qui tam* aspects of this case should have been over once Community settled with the Government and the Government dismissed its Complaint in Intervention. Despite agreeing to pay hundreds of millions of dollars to the Government – of which Relator will receive his relator's share – Community is still having to defend against Relator's separate FCA claims, which he purports to bring on the Government's behalf but in which the Government chose not to intervene. The FCA does not permit a relator to "pursue claims that are separate from the Government's to recover an increased award." *Brooks*, 359 F. Supp. 3d at 1122.

The attorneys' fees language in the FCA also substantiates a relator's inability to pursue FCA claims after the Government has chosen to intervene. Under the FCA,

> [i]f the Government does not proceed with *the action* and the [relator] bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in *the action* and the court finds that the claim of the [relator] bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4) (emphases added). Thus, defendants are precluded from recovering attorneys' fees if the Government "proceed[s] with the action" initiated by the relator. *Id.* If, however, the Government declines to intervene in the action, the relator is potentially on the hook for attorneys' fees. *Id.* These provisions again reinforce the notion that when the Government intervenes, it takes responsibility for the entire *qui tam* action brought on its behalf – not just a portion of it. *Brooks*, 359 F. Supp. 3d 1123. The FCA, on its face, "does not contemplate a situation in which a relator continues to add claims to the action" once the Government has intervened. *Id.* If relators, after the Government intervened, were allowed to unilaterally assert new FCA claims

on behalf of the Government, "the relators' new claims could prove frivolous, and the defendants would nevertheless be precluded from recovering attorney fees because the Government 'proceed[ed] with the action.'" *Id.* (quoting 31 U.S.C. § 3730(d)(4)).

The fact that a relator remains a "party to the action" even after the Government intervenes is immaterial to the analysis. 31 U.S.C. § 3730(c)(1). The relator's right to continue as a party to the action after the Government intervenes does not "encompass the right to *conduct* the action." *Brooks*, 359 F. Supp. 3d at 1124 (emphasis added). "The right to continue as a party to the action is more limited than the right to conduct the action, and it does not encompass the right to add defendants and claims to the action." *Id.* at 1124-25. The FCA contemplates that, once the Government has intervened, the relator only has *limited* rights that may include, among other things, the right to call and cross-examine witnesses and object to a proposed settlement. *See id.* at 1125-26 (citing various FCA provisions and legislative history). "But neither the statute nor the legislative history suggests that a relator, as a party to an action, can add defendants and claims to the action." *Id.* at 1126. On the contrary, the Government can settle or dismiss the *qui tam* action over the relator's objection. *See* 31 U.S.C. § 3730(c)(2)(A)–(B).

Here, the Government intervened in Relator's *qui tam* action and asserted multiple FCA claims in its Complaint in Intervention. Once the Government intervened in this *qui tam* action, the Government was required to conduct, and had primary responsibility for prosecuting, that action. *See* 31 U.S.C. §§ 3730(b)(4), (c)(1). The Government's Complaint in Intervention "superseded" Relator's pleadings "and became the operative pleading" with respect to all FCA claims brought on the Government's behalf. *See Brooks*, 359 F. Supp. 3d at 1127; *see also United States v. HealthNet, Inc.*, No. 1:19-cv-04258-JRS-DML, 2021 WL 4477889, at *7 (S.D. Ind. Sept. 30, 2021) (quoting *Brooks* for the proposition that "[t]he Government's complaint superseded the

relators' complaint and became the operative pleading"), *appeal filed*; *Pharm. Indus. Average Wholesale Price Litig.*, No. 01-12257-PBS, 2007 WL 4287572, at *4 (D. Mass. Dec. 6, 2007) ("[O]nce the government has intervened, the relator has no separate free-standing FCA cause of action."). Accordingly, it remains Defendants' position that "[a]ny pleading filed by [Relator] after the Government elected to intervene" – including Relator's Second Amended Complaint – "lacked legal effect." *See Brooks*, 359 F. Supp. 3d at 1127.

Defendants acknowledge that other district courts outside the Seventh Circuit have interpreted the FCA differently than the district court in *Brooks*. *See United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1075-77 (N.D. Cal. 2020); *United States ex rel. Rauch v. Oaktree Med. Ctr., P.C.*, C/A No. 6:15-cv-01589-DCC, 2020 WL 1065955, at *6-9 (D.S.C. Mar. 5, 2020). But that conflict is exactly why an interlocutory appeal of the Court's prior orders is so warranted,[3] especially given the lack of guidance from the Seventh Circuit on this issue. Indeed, all of these district court rulings were decided before the Supreme Court's recent acknowledgment that "the relator loses control" once the Government intervenes, making the prior orders in this case all the more ripe for immediate review. *See United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 425 (2023). As the Supreme Court declared:

> If the Government . . . elects to intervene, *the relator loses control*: The action then "shall be conducted by the Government," though the relator can continue as a party in a secondary role. §§ 3730(b)(4)(A), (c)(1). Only if the Government passes on intervention does the relator "have the right to conduct the action." § 3730(b)(4)(B).

---

[3] Importantly, a substantial ground for difference of opinion does not depend on the mere fact that a "greater number of judges have resolved the issue one way rather than another . . . ." *Max Daetwyler Corp. v. Meyer*, 575 F. Supp. 280, 283 (E.D. Pa. 1983) (while district court found one judge's analysis more persuasive than another's, it "recognize[d] that the arguments in support of the opposite conclusion are not insubstantial" such that there was a substantial ground for difference of opinion to warrant certification of the question).

*Id.* (emphasis added). The Supreme Court's pronouncement in *Polansky*, made after the parties' original briefing on this issue, lends further support for Defendants' argument that Relator may not pursue separate FCA claims after the Government has intervened and filed a Complaint in Intervention.

**IV.    An Immediate Appeal of the Prior Orders May Materially Advance the Ultimate Termination of the Litigation.**

Now that the Government has settled and dismissed its intervened FCA claims against Community, certification of the prior orders that permitted Relator to pursue separate FCA claims may materially advance the ultimate termination of this litigation. *See Ahrenholz*, 219 F.3d at 675. To establish this element, section 1292(b) does not require that all litigation will come to an end if the interlocutory appeal is decided in the appellant's favor. *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012); *see also Quartararo*, 521 F. Supp. 3d at 279-80 (certifying FCA question for interlocutory appeal where plaintiff also asserted a claim for retaliation that would survive regardless of the outcome of the appeal). Instead, section 1292(b) requires only that the interlocutory appeal may speed up the resolution of the case. *Ahrenholz*, 219 F.3d at 675. An issue that could result in the elimination of a claim materially advances the litigation. *See Sterk*, 672 F.3d at 536; *see also Nat'l Res. Def. Counsel v. Ill. Power Res., LLC*, Case No. 1:13-cv-01181-JBM-TSH, 2016 WL 9650981, at *5 (C.D. Ill. Nov. 2, 2016) (questions presented materially advanced the litigation "because the resolution of questions affects what claims on which the Plaintiff can proceed"); *cf. Motorola Mobility LLC v. AU Optronics Corp.*, 746 F.3d 842, 844 (7th Cir. 2014) (finding that elimination of "99 percent of the transactions on which the suit is based" would "be a considerable economy"), *vacated on the merits on reh'g*, 775 F.3d 816 (7th Cir. 2015), *cert. denied.*

Here, the question presented in the Court's prior orders will aid in the resolution of this litigation because of the potential for dismissal of Relator's FCA claims in his Second Amended Complaint. Even though Relator's employment claims would survive, dismissal of his separate FCA claims on behalf of the Government would dramatically streamline and expedite the resolution of what is left of this case. *See Sterk*, 672 F.3d at 536; *Ahrenholz*, 219 F.3d at 675; *Quartararo*, 521 F. Supp. 3d at 279-80; *Nat'l Res. Def. Counsel*, 2016 WL 9650981 at *5. Elimination of Relator's FCA claims would result in the dismissal of all other Defendants in this case except Community, Relator's former employer. Elimination of Relator's FCA claims on behalf of the Government would also narrow the remaining disputes between Relator and Community and would avoid the extraordinary expenditure of time and resources on fact discovery, expert discovery, dispositive motion practice, and a complex trial on Relator's separate FCA allegations. Thus, the Court's prior orders readily satisfy the final statutory condition for certification of an interlocutory appeal.

## V.    Defendants' Motion is Well-Timed Following Dismissal of the Government's Complaint in Intervention.

Under Appellate Rule 5(a)(3), "the district court may amend its order" to include findings supporting certification of an interlocutory order for immediate appeal. Fed. R. App. P. 5(a)(3). A request for such an amendment "must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz*, 219 F.3d at 675-76. "Reasonable delay will not bar certification of an issue." *Abbey v. United States*, 89 Fed. Cl. 425, 430 (2009).

Even a significant delay between entry of the interlocutory order and certification of the order for immediate appeal is permissible "if there is a reason for the delay." *See Weir v. Propst,* 915 F.2d 283, 287 (7th Cir.1990). A delay is reasonable if, for example, "developments since the interlocutory order had been entered demonstrated, as had been unclear earlier, that the order

resolved a controlling question of law about which there was substantial ground for a difference of opinion." *Id*. An extended delay may also be permitted when there are "unique circumstances surrounding" the case. *See Abbey*, 89 Fed. Cl. at 431; *see also Aparicio v. Swan Lake*, 643 F.2d 1109, 1112-13 (5th Cir. 1981).

Defendants recognize that time has passed since the Court initially decided its prior orders. But Defendants contend that the more relevant timeframe to consider is the timeframe between the dismissal of the Government's Complaint in Intervention and this Motion. This Motion comes the same day as the Court issued its acknowledgement of the dismissal of the Government's non-intervened FCA claims – a major procedural development that fundamentally alters the character of this *qui tam* action and the assessment of factors supporting an interlocutory appeal.

In its prior orders, the Court allowed Relator to proceed on a parallel path with the Government, forcing Community to defend against FCA claims presented in two different complaints in a single action. An appeal of the prior orders when they were first entered would have resulted in disjointed and piecemeal litigation because the Government was actively pressing its own FCA claims against Community at that time. Indeed, Relator's FCA claims and the Government's FCA claims regarding physician compensation are based on identical theories of fair market value and liability, albeit involving different specialties. Appealing Relator's FCA claims at the same time that the parties were actively engaged in discovery and litigation on the Government's FCA claims would have wreaked havoc on the case. Plus, even if the Seventh Circuit had reversed the prior orders and held that Relator's separate FCA claims were barred as a matter of law, Defendants would still have had to litigate the Government's intervened FCA claims.

That all changed with Community's settlement of the Government's claims. The interests of judicial economy and preservation of party resources are drastically higher now than they were at that previous stage of the litigation. The Government's Complaint in Intervention has been dismissed, leaving only Relator's separate claims in his Second Amended Complaint. Accordingly, Defendants' Motion is well-timed on the heels of this major procedural development and should be considered.

## CONCLUSION

This *qui tam* action is in a fundamentally different procedural posture than it was when the Court initially decided its Order Granting Leave and Entry. Now is the best opportunity for the Seventh Circuit to consider the significant, threshold legal question of whether Relator can lawfully pursue separate claims under the FCA – ostensibly on behalf of the Government – after the Government has intervened and filed its own Complaint in Intervention. Since the Government's intervened FCA claims have been resolved and dismissed, this Court should amend its prior orders under Appellate Rule 5(a)(3) to include the requisite findings under 28 U.S.C. § 1292(b) and certify the prior orders for interlocutory appeal.

Dated: April 2, 2024                            Respectfully submitted,

                                                /s/ Marc T. Quigley
                                                Marc T. Quigley, Atty. No. 21054-53
                                                Blake P. Holler, Atty. No. 30676-84
                                                KRIEG DeVAULT LLP
                                                12800 North Meridian Street, Suite 300
                                                Carmel, Indiana  46032
                                                Telephone:  (317) 566-1110
                                                Facsimile:   (317) 636-1507
                                                mquigley@kdlegal.com
                                                bholler@kdlegal.com

                                                Thomas J. Costakis, Atty. No. 4314-49
                                                Libby Y. Goodknight, Atty. No. 20880-49
                                                KRIEG DeVAULT LLP
                                                One Indiana Square, Suite 2800
                                                Indianapolis, Indiana  46204
                                                Telephone:  (317) 636-4341
                                                Facsimile:   (317) 636-1507
                                                tcostakis@kdlegal.com
                                                lgoodknight@kdlegal.com

                                                George B. Breen, *pro hac vice*
                                                Richard W. Westling, *pro hac vice*
                                                Erica Sibley Bahnsen, *pro hac vice*
                                                Elizabeth A. Harris, *pro hac vice*
                                                Daniel C. Fundakowski, *pro hac vice*
                                                Eleanor T. Chung, *pro hac vice*
                                                EPSTEIN BECKER GREEN
                                                1227 25th Street, NW, Suite 700
                                                Washington, DC  20037
                                                Telephone: (202) 861-1823
                                                Facsimile:  (202) 861-3523
                                                GBreen@ebglaw.com
                                                RWestling@ebglaw.com
                                                ESibley@ebglaw.com
                                                EHarris@ebglaw.com
                                                DFundakowski@ebglaw.com
                                                EChung@ebglaw.com

                                                *Attorneys for Defendants*

KD_15021159_9.docx