UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

UNITED STATES OF AMERICA *ex rel.* )
Thomas P. Fischer, et al., )
 )
                          Plaintiffs, )
 )
          v. )                            No. 1:14-cv-01215-RLY-MKK
 )
COMMUNITY HEALTH NETWORK, INC., )
et al., )
 )
                          Defendants. )

## ORDER

This matter is before the Court on Defendant Community Health Network,

Inc.'s Motion to Compel the U.S. Department of Health and Human Services Office

of Inspector General ("HHS-OIG") and the Centers for Medicare and Medicaid

Services ("CMS") to Comply with Rule 45 Subpoenas, Dkt. [826]. This motion is

fully briefed and ripe for the Court's decision.

## I.    Background

### A.    Relator's *Qui Tam* Complaint

On July 21, 2014, Relator filed a *qui tam* complaint, alleging that Defendant

Community Health Network, Inc. ("CHN") and others violated the federal False

Claims Act ("FCA") and the Indiana False Claims and Whistleblower Protection

Act. (Dkt. 1). Relator also brought a breach of contract and other state law claims

relating to his employment at CHN. (*Id.*; *see also* Dkt. 32 (1st Amend. Compl.)). Five

years later, on August 7, 2019, the United States elected to intervene in part and

declined to intervene in part, (Dkt. 93), and this matter was unsealed on December

23, 2019. (Dkts. 86, 92). On January 6, 2020, the United States filed its Amended Complaint in Intervention against CHN. (Dkt. 96).

On December 2, 2020, Relator filed his Second Amended Complaint against CHN and others (collectively, "Defendants").[1] (Dkt. 134). As set forth in his Statement of Claims, Relator asserts that Defendants violated the federal and state FCAs by submitting claims to Medicare and Medicaid "that were false because they resulted from violations of the Stark Law . . . and the Anti-Kickback Statute" ("AKS"). (Dkt. 496 at 1–2). Relator alleges that "CHN improperly incentivized and induced employed physicians and affiliates to secure their referrals" by means of several different "payments and business relationships" that violated the law. (*Id.* at 6).

In May 2023, the Court approved the parties' second amended Case Management Plan ("CMP"), which provided that "parties shall complete their responses to all document requests, interrogatories, and requests for admission (including production of all documents) by September 1, 2023; non-expert discovery shall be completed by March 1, 2024[.]" (Dkt. 533 at 13). The CMP noted that "completed" as used in that section meant "counsel must serve their discovery requests in sufficient time to receive responses before this deadline. Counsel may

---

[1] Community Health Network, Inc.; Community Health Network Foundation, Inc.; Community Physicians of Indiana, Inc.; Visionary Enterprises, Inc.; North Campus Surgery Center, LLC; South Campus Surgery Center, LLC; East Campus Surgery Center; Hamilton Surgery Center, LLC; Howard Community Surgery Center; Northwest Surgery Center, LLC; Hancock Surgery Center; Indianapolis Endoscopy Center, LLP; Community Endoscopy Center, LLC; and North Campus Office Associates, L.P.

not serve discovery requests within the 30-day period before this deadline[.]" (*Id.* at 12).

On July 24, 2023, CHN served its Second Request for Production ("RFP") on the United States, (Dkt. 826-1), and on August 1, 2023, it served its Third RFP on the United States, (Dkt. 826-2). Shortly thereafter, the parties engaged in the first of a series of settlement conferences. (*See* Dkts. 650, 672, 706). As settlement negotiations continued, the Court granted the United States' request to extend the deadline for the United States to respond to CHN's RFPs to October 31, 2023. (Dkt. 656). The day before that deadline, on October 30, 2023, the United States and CHN informed the Court that they had reached an agreement in principle and requested a 45-day stay while they finalized the settlement agreement. (Dkt. 686). The Court granted the request and stayed all dates and deadlines pertaining to the United States and Defendants, until December 14, 2023. (*Id.*). On December 20, 2023, the United States and Defendants filed a Joint Notice of Settlement, (Dkt. 709), and the Court vacated "all previously ordered dates relating to discovery, filings, schedules, conferences, and trial[,]" (Dkt. 710). On January 22, 2024, the United States and Defendants filed a Joint Stipulation of Dismissal. (Dkt. 729). The Court dismissed the United States' Complaint in Intervention on April 1, 2024. (Dkt. 788).

On February 1, 2024, the Court granted Relator's Consent Motion to Amend Limited Case Management Deadlines, (Dkt. 739), which, in pertinent part, extended the non-expert discovery deadline from March 1, 2024, to June 3, 2024. (Dkt. 740).

## B.     Discovery Dispute

On February 23, 2024, CHN "wrote to the United States to request deposition dates for certain CMS personnel . . . and request that the United States respond to certain of [CHN]'s outstanding document requests." (Dkt. 827 at 4). On March 8, 2024, the United States asserted that it was no longer a party to the case and any discovery requests would need to be submitted as *Touhy*[2] requests. (*Id.*). Accordingly, on April 30, 2024, CHN issued Rule 45 subpoenas and corresponding *Touhy* requests to HHS-OIG and CMS "seeking documents and deposition testimony needed to defend against Relator's claims in this action." (*Id.*). In addition to 30(b)(6)[3] depositions, CHN "sought the testimony of three [individual] CMS witnesses[.]" (*Id.*).

On May 6, 2024, both HHS-OIG and CMS sent objections to CHN regarding its *Touhy* requests for documents, (Dkts. 826-7 (HHS-OIG); 826-8 (CMS)). On May 17, 2024, CMS denied CHN's *Touhy* request for deposition testimony, (Dkt. 826-11), and on May 21, 2024, HHS-OIG followed suit, (Dkt. 826-12). The next day, CHN, the United States, HHS-OIG, and CMS met and conferred regarding the timeliness of CHN's document requests, but the dispute was not resolved. (Dkt. 827 at 5–6).

On June 3, 2024, Relator and Defendants filed a joint motion for leave to take depositions outside of the CMP and to amend remaining limited case management

---

[2] *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468–70 (1951) (upholding regulation prohibiting agency employees from releasing documents without consent of agency head); *see also* 45 C.F.R. Part 2 (outlining the procedures that must be followed when testimony or documents are requested from the Department of Health and Human Services).

[3] Fed. R. Civ. P. 30(b)(6) pertains to subpoenas directed to organizations, including governmental agencies.

deadlines, (Dkt. 822), a request which the United States partially opposed, (Dkt. 823). The Court took the motion under advisement as it pertained to the CMS fact witnesses and the HHS-OIG and CMS 30(b)(6) witnesses. (Dkt. 825). The Court gave CHN until June 10, 2024, "to inform the Court of their position on the United States' Partial Opposition to the Motion." (*Id.*). In response, on June 10, 2024, CHN filed the instant Motion to Compel, (Dkt. 826), seeking to compel HHS-OIG, CMS, and certain agency employees to comply with its Rule 45 subpoenas and to produce documents and testimony, (*id.* at 1). Responses and replies followed. (Dkts. 830, 841). The Court heard oral argument on the Motion at a July 9, 2024, hearing, at which CHN, the United States, and Relator were represented. (Dkt. 842). The Motion to Compel is now ripe for the Court's decision.

## II.   Legal Standard

### A.   Administrative Procedures Act

The Court reviews an agency's decision not to authorize a subpoena, made pursuant to a *Touhy* request, under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq. Est. of Belbachir ex rel Belbachir v. United States*, No. 08 C 50193, 2010 WL 3239444, at *2 (N.D. Ill. Aug. 13, 2010) ("the Department's refusal to comply with plaintiffs' subpoena, which was made pursuant to its *Touhy* regulations, is, as *Edwards* [*v. U.S. Dept. of Justice*, 43 F.3d 312 (7th Cir. 1994)] instructs, to be reviewed by the court under the standard set forth in the APA."); *see also United States v. SuperValu, Inc.*, No. 11-3290, 2019 WL 7343542, at *2 (C.D.

Ill. Dec. 31, 2019) ("The Court reviews [the United States'] decision not to authorize [the witness] to testify under the [APA].").

Under such review, the Court shall "compel agency action unlawfully withheld or unreasonably delayed" and "set aside agency action, findings, and conclusions" if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706; *see also SuperValu, Inc.*, 2019 WL 7343542, at *2 (citing 5 U.S.C. § 706(2)(A)) (explaining that 5 U.S.C. § 701 *et seq.* states a Court may set aside the United States' decision if it was arbitrary and capricious). As the Supreme Court has explained,

> [t]he scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S. Ct. 239, 245–246, 9 L. Ed. 2d 207 (1962). In reviewing that explanation, we must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight System, supra,* 419 U.S., at 285, 95 S. Ct., at 442; *Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S., at 416, 91 S. Ct., at 823. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S. Ct. 1575, 1577, 91 L. Ed. 1995 (1947). We will, however, "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp. Inc. v. Arkansas-Best Freight System, supra,* 419 U.S., at 286, 95 S. Ct., at 442. *See also Camp v. Pitts,* 411 U.S. 138, 142–143, 93 S. Ct. 1241, 1244, 36 L. Ed. 2d 106

(1973) (per curiam).

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463
U.S. 29, 43 (1983).

An agency's decision is presumed to be valid; however, "we must nevertheless
engage in a 'substantial inquiry,' or in other words, 'a thorough, probing, in-depth
review.'" *Pozzie v. U.S. Dep't of Hous. & Urb. Dev.*, 48 F.3d 1026, 1029 (7th Cir.
1995) (citation omitted).

**B.     Rule 45**

With certain limitations, Rule 45 allows a party to command (a) production of
documents or electronically stored information in a non-party's possession, custody,
or control and/or (b) the non-party's attendance at a deposition. Fed. R. Civ. P. 45. A
subpoena may command production only "at a place within 100 miles of where the
person resides, is employed, or regularly transacts business in person[.]" Fed. R.
Civ. P. 45(c)(2)(A). The served party may object to production by serving the party
or attorney named on the subpoena with a written objection no later than 14 days
after the subpoena is served. Fed. R. Civ. P. 45(d)(2)(B). In response to the
objection(s), the serving party "may move the court for the district where
compliance is required for an order compelling production." Fed. R. Civ. P.
45(d)(2)(B)(i).

"A party or attorney responsible for issuing and serving a subpoena must
take reasonable steps to avoid imposing undue burden or expense on a person
subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45 requires the court where

compliance is required to quash or modify a subpoena based on a timely motion if

the subpoena "fails to allow a reasonable time to comply; . . . requires disclosure of

privileged or other protected matter, if no exception or waiver applies; or subjects a

person to an undue burden." Fed. R. Civ. P. 45 Rule 45(d)(3)(A)(i), (iii), (iv). To

determine whether a subpoena is unduly burdensome, a Court may consider "non-

party status, relevance, the issuing party's need for the discovery, and the breadth

of the request." *Donald v. Outlaw*, No. 2:17-CV-32-TLS-JPK, 2020 WL 2899689, at

*7 (N.D. Ind. Jun. 2, 2020) (citation omitted). The opposing party "bears the burden

of proving that it is unduly burdensome." *Id.* (citation omitted).

### C.    *Touhy* Regulations

The so-called *Touhy* regulations set forth the procedures that a party must

follow when subpoenaing a government witness. *See SuperValu, Inc.*, 2019 WL

7343542, at *1 (citing 45 C.F.R. §§ 2.1-2.6) ("Federal regulations require agency

authorization before an employee or former employee of [an agency] may testify

concerning information acquired in the course of performing official duties."). To

determine whether an agency should disclose documents or testimony, the agency

must determine, "after consultation with the Office of General Counsel, that

compliance with the request would promote the objectives of the Department." 45

C.F.R. § 2.3.

III.   **Discussion**

A.    **Preliminaries**

Before turning to the merits of the dispute, the Court pauses to address some areas of agreement between the parties. First, despite the government's equivocation in its brief, the government clarified at the hearing that it agrees this Court has jurisdiction over the present Motion.[4] Disagreement continues, however, as to which standard—the APA or Rule 45—governs the Court's review. (Dkts. 827 at 7–10; 830 at 15–17).

Second, the parties agree as to the documents to be reviewed, should the Court proceed under the APA framework. Specifically, the *Touhy* requests appear at CHN Exhibits 5 and 6, while the agencies' responses to said requests present at Exhibits 7 (HHS-OIG document request response), 8 (CMS document request response), 11 (CMS testimony request response), and 12 (HHS-OIG testimony request response). (Dkts. 826-5 at 2–60; 826-6 at 2–78; 826-7 at 2–6; 826-8 at 2–5; 826-11 at 2–5; 826-12 at 2–3). Under the APA, the Court's review of the agencies' actions is limited to the four corners of the documents constituting the agencies' responses, *i.e.*, Exhibits 7, 8, 11, and 12. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43 (citation omitted) (explaining that Courts "may not supply a reasoned basis for the agency's action that the agency itself has not given.").

---

[4] The government also agreed that as an alternative to the present Motion to Compel, CHN could have brought a separate civil action to challenge the agencies' decisions under the APA. While all appear to agree that such an action would not have been the most efficient course, they also agree that such an action would have been timely. This fact, in the Court's view, renders moot the government's argument with respect to the timeliness of CHN's Motion to Compel, (*see* Dkt. 830 at 7–9).

Third, the parties agree that it is both appropriate and necessary for the agency to consider the entire context and history of the present litigation when conducting its *Touhy* review. The caselaw supports this position. *See id.* ("an agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency"; "Congress required . . . that agency findings under the [APA] would be supported by 'substantial evidence on the record considered as a whole.'").

With these preliminaries out of the way, the Court now proceeds to the heart of the inquiry.

## B.    Document Requests

The Court begins with the agencies' responses to CHN's requests for documents. As set forth in the subpoenas attached to CHN's *Touhy* requests, CHN is seeking a variety of documents from both HHS-OIG and CMS. (Dkts. 826-5 at 14–28; 826-6 at 14–28). The broad scope of the subpoenas is not lost on this Court. (*See, e.g.*, Dkt. 826-5 at 15 ("[t]he relevant time period for [the government's] responses to these document requests, unless otherwise stated, is January 1, 2008 to the present")). In support of its two requests, CHN asserted that it "could not obtain the documents . . . from other equivalent means," argued against the agencies' anticipated invocation of the deliberative process privilege, and asserted that compliance with the subpoenas would further the agencies' interests. (Dkts. 826-5 at 3–4; 826-6 at 3–5).

10

The agencies responded to the document requests by letters dated May 6, 2024.[5] (Dkts. 826-7 at 2–6; 826-8 at 2–5). In their letters, both HHS-OIG and CMS stated, in no uncertain terms, that they did "not intend to respond to [the document requests] absent a Court order." (Dkts. 826-7 at 2–3; 826-8 at 3). These unequivocal refusals to act were tied to the alleged untimeliness of the document requests under this Court's CMP. (Dkts. 826-7 at 2; 826-8 at 3). For good measure, both agencies added a series of eight objections to production, most of which employed the language of Federal Rules of Civil Procedure 26 and 45. (*See, e.g.*, Dkts. 826-7 at 4–5 ("vague, ambiguous, overly broad, unduly burdensome, and not proportional to the needs of the case," "beyond the scope of permitted discovery under Federal Rule of Civil Procedure 26(b)(1)," "seeks information or documents protected from disclosure by privilege"); 826-8 at 4–5 ("beyond the scope of permitted discovery under Federal Rule of Civil Procedure 26(b)(1)," "the time provided to produce the requested records is unreasonable" under Fed. R. Civ. P. 45(d)(3)(A)(i), "seeks information or documents protected from disclosure by privilege")).

The Court pauses here to note an important aspect of both letters. HHS-OIG stated: "We are continuing to review both the Touhy Document Request and the Touhy Testimony Request, and we reserve the right to supplement our written objections after further review of them." (Dkt. 826-7 at 3; *see also id.* at 4 ("We reserve our right to assert any additional objections that may be warranted once we have completed our review of the Touhy Document Request and Touhy Testimony

---

[5] In their letters, the agencies stated they would respond to the deposition requests separately. (Dkts. 826-7 at 2 n.2; 826-8 at 1–2 n.3).

Request.")). CMS did the same. (Dkt. 826-8 at 3 ("Because our review of the Touhy request continues, we reserve the right to supplement these objections in the future.")). This unambiguous language indicates to the recipient, *i.e.*, CHN, that both agencies were continuing their review of the merits of the subpoena requests. Although CHN stated (at the hearing) that it treated or understood these letters as denials, the Court views them differently. In limiting its review to the letters' four corners, the Court concludes that the agencies' reviews of the document requests were ongoing. Therefore, the "agency actions" under review are not so much outright denials of CHN's document subpoena requests, but rather the agencies' ultimate "failure to act" on said requests. *See* 5 U.S.C. §§ 701(b)(2), 551(13) (defining "agency action" to include "failure to act"). To the extent the agencies finalized their denial at some later point (*e.g.*, perhaps at or after the May 22, 2024, meet and confer, (Dkt. 827 at 5–6)), that decision is not a part of the record before the Court.

Having defined the requests and responses at issue, the Court proceeds to analyze the agencies' actions. As noted, the parties debate whether the correct standard of review resides in the APA or Rule 45, (*id.* at 7–10; Dkt. 830 at 15–17), a disagreement that is mirrored in caselaw, *see, e.g.*, *Taylor v. Gilbert*, No. 2:15-cv-00348-JMS-MJD, 2018 WL 1334935, at *2 (S.D. Ind. Mar. 15, 2018). The Court refrains from deciding this question because it does not appear to be "the district

where compliance is required."[6] Fed. R. Civ. P. 45(d)(2)(B)(i); *see Westfield v. Simpson*, No. 1:20-CV-01747-TWP-MG, 2022 WL 4131681, at *2 (S.D. Ind. Sept. 12, 2022) ("Fed. R. Civ. P. 45(d)(2)(B)(i) requires that any subpoena-related motions be filed in the district where compliance is required."). Although neither party raised this issue and Rule 45 contemplates the transfer of a subpoena-related motion, no transfer has occurred here. Therefore, absent one or both parties submitting persuasive authority that the Court has the power to decide the current dispute under Rule 45, it declines to do so.[7]

---

[6] The subpoenas require testimony and document production in Washington, D.C. (Dkt. 826-5 at 31–33, 58–60; Dkt. 826-6 at 31–33, 58–60, 64–66, 70–72, 76–78).

[7] Because the Court is proceeding under the APA as opposed to Rule 45, it need not determine whether CHN's requests were timely under the CMP. To the extent said question is somehow relevant to the APA analysis—which this Court does not believe to be the case—the Court answers that question now.

The CMP required parties to "complete their responses to all document requests, interrogatories, and requests for admission (including production of all documents) by September 1, 2023; non-expert discovery shall be completed by March 1, 2024[.]" (Dkt. 533 at 13). The Court and all parties understood that the deposition phase would continue through at least March 1, 2024. (*Id.* ("non-expert discovery shall be completed by March 1, 2024"); *see also* Dkt. 740 (extending the non-expert discovery deadline to June 3, 2024)). CHN satisfied the CMP deadline when it subpoenaed the United States, which was unquestionably still a party at that time, for certain documents on or about July 24, 2023, (Dkt. 826-1 (CHN's Second RFP on the United States)), and August 1, 2023, (Dkt. 826-2 (CHN's Third RFP on the United States)). The Court continued discovery response deadlines while the parties attempted to negotiate a resolution of their claims. CHN and the United States were successful in doing so by handshake in October 2023 and by formal agreement in December 2023. (Dkt. 709). Still wanting the HHS-OIG and CMS documents to advance its defense against Relator's claims, CHN asked the United States for its discovery responses. (Dkt. 827 at 4). Even though the Court did not dismiss its claims until April 1, 2024, (Dkt. 788), the United States asserted that it was no longer a party and directed CHN to follow the *Touhy* process, (Dkt. 826-4). CHN subsequently did, resulting in the Motion now under consideration.

The United States now maintains that the *Touhy* document subpoenas were untimely under the CMP, because they were not served before August 2, 2023. (Dkt. 826-7 at 3). But CHN could not have submitted *Touhy* requests in August 2023, because the United States was still a party at that time. To the extent CHN should have moved this Court for leave to send "late" subpoenas to HHS-OIG and CMS and established good cause for its request, the Court excuses any failure to do so and finds such good cause now. The United States did not indicate that it would argue that the document subpoenas would be untimely when directing CHN to follow the *Touhy* process. (Dkt. 826-4 at 2). Had it done so, CHN could have presented that issue to the Court at an earlier juncture and avoided the delay that followed.

Limiting its lens to the APA, the Court finds that the agencies' actions were arbitrary and capricious. Both HHS-OIG and CMS stated, unequivocally, that their refusals to act were based on the asserted untimeliness of CHN's requests under the CMP. At oral argument, the United States characterized the timeliness objection as a "threshold" issue. But, again, limiting its review to the four corners of the agencies' responses, the Court finds no reason to adopt this view. The letters make clear that the timeliness issue was determinative. (*See supra*).

The timeliness of CHN's subpoenas under the CMP authored by (and enforced by) this Court is not an appropriate factor for the agencies to consider in their *Touhy* analyses. The United States has not provided any convincing argument to the contrary. (Dkt. 830 at 9–13). And the Court, on its own, cannot discern a reason why timeliness under the CMP would have been an appropriate consideration. It has no obvious connection to whether the requests would promote the interests of the agencies. *See* 45 C.F.R. § 2.3 (before allowing an employee to provide testimony or produce documents, the agency must determine whether "compliance with the request would promote the objectives of the Department"). And to the extent that the alleged untimeliness somehow did inform that assessment, the agencies should have said so. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 52 ("The agency must explain the evidence which is available, and must offer a 'rational connection between the facts found and the choice made.'"). Here, the agencies did nothing of the sort. HHS-OIG quoted the C.F.R. and advanced the eight general objections discussed above. (Dkt. 826-7 at 4–5). But that

discussion came *after* its assertion that absent a court order, it would refuse to act because of the untimeliness. (*Id.* at 2). HHS-OIG made no attempt to link its conclusion regarding the CMP to the promotion of its interests. CMS followed a nearly identical approach. (*See* Dkt. 826-8 at 3 (stating CHN's "request for documents is clearly untimely . . . [i]n any event, we do not intend to respond to the requests for documents absent a Court order"); *id.* at 3–4 (listing the same eight objections as HHS-OIG)).

The decision-making articulated in the agencies' responses to CHN's document requests falls short of what is expected and required under the APA. This conclusion is reinforced by the fact that the May 6, 2024, letters do not even constitute final denials of the requests. To assert a refusal to act short of a court order while simultaneously maintaining the review is ongoing is confusing at best, and disingenuous at worst. Either circumstance necessitates this Court's intervention. While this Court has been careful not to "substitute its judgment for that of the agency," so too must the agencies refrain from substituting their judgment for that of the Court by grounding a refusal to proceed with a *Touhy* review on their interpretation of this Court's case management directives.

Before concluding this section, the Court makes one final comment. CHN, HHS-OIG, and CMS failed to engage in a meaningful meet and confer on the present dispute. Indeed, the agencies made their unwillingness to do so clear. (*See, e.g.*, Dkt. 834 at 10–11 (The government notes that it intends to "exhaust the fight on this one because we think [CHN is] not entitled to this, and we simply won't

15

compromise"; "to the extent [CHN] made a proposal, it's our obligation to hear what it is. We have heard it . . . and we are declining it.")). This reluctance to meaningfully engage with CHN further cements the Court's decision regarding the arbitrary nature of the agencies' actions. A refusal to consider a proposed compromise—no matter its contours—does not signify that the agencies have established a "rational connection" between the facts before them and their ultimate decisions. A meaningful meet and confer will address this concern by providing an opportunity for the agencies and CHN to explore the possibility of a reasoned compromise.

For the foregoing reasons, the Court **GRANTS IN PART** the Motion to Compel with respect to the document requests. The Court **VACATES** the actions of HHS-OIG and CMS documented in the May 6, 2024, letters.

The Court **ORDERS** CHN, HHS-OIG, and CMS to meet and confer regarding the document subpoenas within 7 days of this Order. The Court further **ORDERS** HHS-OIG and CMS to provide an amended response to CHN's document requests that accords with the principles described herein within 14 days of this Order.

### C.    Testimony Requests

The Court next turns to CHN's requests for testimony. CHN requested 30(b)(6) depositions from both HHS-OIG and CMS, listing 21 topics to be covered during each of the depositions. (Dkts. 826-5 at 55–57; 826-6 at 55–57). CHN also subpoenaed testimony from three individual CMS witnesses: Lisa Wilson (Senior

Technical Advisor), Matthew Edgar (Acting Director/Health Insurance Specialist),

and Laura Dash (Deputy Director, Division of Technical Payment Policy). (Dkt. 826-

6 at 61–78). Although CHN did not attach an enumerated list of topics to the

individual witness subpoenas, (*see id.* at 61–63), its *Touhy* request provided a

general overview of anticipated deposition topics, (*see id.* at 3–4). CHN requested

that CMS let the company know if it "require[d] additional information in order to

process the *Touhy* request." (*Id.* at 4).

  HHS-OIG and CMS denied the testimony requests. On May 17, 2024, CMS

sent CHN a three-page letter in which it articulated the following four reasons for

rejecting the 30(b)(6) and individual witness subpoenas:

1. Scope of testimony:
   - "For the three named individuals," CHN failed to "state the nature of the requested testimony in the form of enumerated topics." (Dkt. 826-11 at 2).
   - For the 30(b)(6) witness, the "listed 21 topics for examination . . . appear to overlap with the testimony [CHN] seek[s] from the named witnesses." (*Id.* at 3).
2. "CMS is not the appropriate source for information about" the AKS "and/or the drafting or approval of related regulatory guidance." (*Id.*).
3. A number of the topics are improper because they are "designed to elicit" privileged information, seek testimony about a legal conclusion (*e.g.*, "the materiality standard as to the allegations of this FCA case"), or seek information that is publicly available. (*Id.* at 4).
4. "Providing four witnesses, on duplicative topics, is not an efficient use of limited agency resources." (*Id.*).

In concluding, CMS stated:

> Based on the foregoing, your request does not adequately state the nature of the requested testimony as to each of the four witnesses and your request fails to satisfy the requirement of establishing that the information is not otherwise available. . . . In addition, the testimony requests are vague, overbroad, duplicative, unduly burdensome and not

proportional to the needs of the case such that it would not promote an interest of the Department.

(*Id.*).

HHS-OIG sent its denial four days later, on May 21, 2024. (Dkt. 826-12).

After briefly citing the C.F.R., the agency articulated its rationale, which is set forth

in full below:

> We do not believe that compliance with your Testimony Request would be in the best interest of the Department, and you have provided no convincing evidence to the contrary. The Testimony Request would be a significant burden on OIG and would disrupt the official functions of the agency because of the time and effort necessary to prepare for it. The Testimony Request seeks privileged information, seeks information that is publicly available, and seeks information from OIG that does not fall within OIG's purview. Given the foregoing, the Testimony Request is denied.

(*Id.* at 2–3).

With the agencies' denials clearly defined, the Court proceeds to examine

those decisions under the APA framework.

### 1.    HHS-OIG Testimony Request

HHS-OIG's denial of CHN's request to depose a 30(b)(6) witness, (Dkt. 826-12), falls well short of the APA standard. As set forth above, the agency's decision was limited to a single paragraph and amounts to little more than conclusory statements regarding what does, or does not, promote the agency's interests. With only this barebones explanation, the Court cannot conclude that the agency "examine[d] the relevant data" or "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Burlington Truck Lines*, 371 U.S. at 168. A requestor in receipt of such a

letter would be similarly hard pressed to tell which of its topics were objectionable. For a particular topic, was CHN pursuing testimony that was publicly available, subject to one or more privileges, or pertaining to a subject about which the agency has no authority or knowledge? Impossible to say. Nor can the Court say with any confidence that the agency "consider[ed] an important aspect of the problem," *i.e.*, the magnitude of the present case. As noted, the United States acknowledges that this is an appropriate, and necessary, factor for the agency to consider. Indeed, HHS-OIG itself used facts from the present case – *i.e.*, the CMP – to reject the document request. For all these reasons, the Court finds that HHS-OIG's denial of CHN's testimony request was arbitrary and capricious.

Based on the foregoing reasons, the Court **GRANTS IN PART** the Motion to Compel with respect to the subpoena for HHS-OIG testimony. The Court **VACATES** HHS-OIG's May 21, 2024, denial of CHN's request.

The Court **ORDERS** CHN and HHS-OIG to meet and confer regarding the 30(b)(6) subpoena within 7 days of this Order. The Court further **ORDERS** HHS-OIG to provide an amended response to CHN's testimony request that accords with the principles described herein within 14 days of this Order.

### 2.  CMS Testimony Requests

CMS's denial of CHN's testimony requests, (Dkt. 826-11), contrasts with HHS-OIG's barebones denial and, as such, fares slightly better. In denying the request for testimony from the three individuals, CMS emphasizes that CHN offers no distinction between what it seeks from each of the individuals. (*Id.* at 2–3).

Although the Court disagrees with CMS in terms of the extent to which CHN did or did not "state[ ] the nature of the requested testimony," (*id*. at 2), it does agree that CHN failed to provide any detail as to what it seeks from Witness A versus Witness B or C. This fact constitutes a sufficient rationale for the agency's denial of the testimony request as to the three individuals. The agency's letter also makes clear that it considered the history and background of the case at hand, (*see id*. at 4 (referencing allegations in the case)), even if it remains unclear how much weight the agency gave this factor. All in all, the Court cannot conclude that the denial of the three individual depositions was arbitrary or capricious.

The rejection of the 30(b)(6) subpoena requires a closer look. Once one removes the problem of duplicative testimony, the reasons for the agency's denial of the 30(b)(6) deposition collapse to: (1) CMS does not have authority over the AKS; and (2) some of the proposed deposition topics risk encroaching on privileged information or seek testimony about publicly-available information or legal conclusions. CHN challenges the validity of Reason #1. (*See* Dkt. 827 at 18). But putting that aside and accepting the agency's assertion on its face, that reason relates only to those portions of the request that pertain strictly to the AKS (although which topics CMS considers those to be remains unclear). Indeed, CMS does not appear to contest that it has authority over the Stark Law, which CHN also included in its enumerated topics. (Dkt. 826-6 at 57 ("Your understanding of whether, and conditions under which, a violation of the . . . Stark Law . . . can form

the foundation for a claim under federal [FCA].")) As such, this portion of CMS's denial does not speak to CHN's desired deposition topics about the Stark Law.

CMS's remaining objections are even more open-ended, are conclusory in nature, and fail to specify to which topics they apply. For example, the agency simultaneously objects that the requested testimony seeks publicly available information and privileged information. Cleary, these two positions conflict; one, but not both, can be true. Without more narrowly tailored objections, this Court cannot conduct a meaningful review.[8] CHN is left to guess which of the 21 topics, if any, are the focus of these objections and, if removed, would increase the chances of the request meeting the agency's approval. The Court can speculate as to the answer, but that is neither its desire nor its job. To reiterate, the Court is not here to second-guess the agency; but nevertheless, the agency must "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Burlington Truck Lines*, 371 U.S. at 168. And while an agency undertaking a *Touhy* analysis need not provide a perfect articulation of its rationale, it nevertheless must provide enough detail to enable the Court to trace its reasoning. Particularly given the magnitude and significance of this case for all parties involved, the explanation offered here needs more detail before the Court can conclude with confidence that CMS has met its burden under

---

[8] At the hearing, the United States suggested that if a *Touhy* request encompasses any document or testimony subject to a legitimate objection, then the agency could reject the entire request. If true, this procedure would place requestors in a tricky position: if they do not draft their request in an extremely narrow and circumspect manner, they risk rejection in full. Although the Court need not decide this issue here, it is not convinced that this was the process envisioned by Congress.

the APA. For example, Proposed Topic #1—the agency's knowledge of the allegations in Relator's Second Amended Complaint—is not, on its face, publicly available, likely to invade on privileged matters, or seeking legal conclusions. What is the basis for the agency's rejection of this testimony request? In short, the Court cannot conclude that CMS sufficiently considered the full scope of CHN's 30(b)(6) request.

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Compel with respect to the subpoenas for CMS testimony. The Court **DENIES** the Motion with respect to CMS's May 17, 2024, rejection of the individual testimony requests.

The Court **GRANTS** the Motion in so far as the Court **VACATES** the May 17, 2024, denial of the 30(b)(6) testimony request.

The Court **ORDERS** CHN and CMS to meet and confer regarding the 30(b)(6) subpoena within 7 days of this Order. The Court further **ORDERS** CMS to provide an amended response to CHN's 30(b)(6) request that accords with the principles described herein within 14 days of this Order.

IV.   **Conclusion**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN

PART CHN's Motion to Compel, Dkt. [826].

**No later than August 5, 2024**, CHN and the United States shall file a joint

status report regarding the outcome of the Court-ordered meet and confers.

So ORDERED.

Date: 07/24/2024

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via CM/ECF.